IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **GARLOCK SEALING TECHS. LLC, et al.,** | ) | Case No. 10-BK-31607 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| **GARLOCK SEALING TECHS. LLC, et al.** Plaintiffs, | ) ) ) | |
| v. | ) ) | Adversary No. 14-AP-3037 |
| **SIMON GREENSTONE PANATIER BARTLETT, APLC, et al.** Defendants. | ) ) ) | |

**BRIEF IN SUPPORT**
**OF MOTION TO WITHDRAW THE REFERENCE**

Defendants, Simon Greenstone Panatier Bartlett, APLC, Jeffery B. Simon, David C. Greenstone, the Estate of Ronald C. Eddins, and Jennifer L. Bartlett (together, "Simon Greenstone" or "Defendants"), submit this brief in support of their motion to withdraw the bankruptcy court reference for what all parties agree is a non-core adversary proceeding.

**SUMMARY OF ARGUMENT**

Garlock Sealing Technologies LLC and Garrison Litigation Management Group Ltd. (together, "Garlock") tread unchartered waters by claiming that a law firm and its attorneys have engaged in racketeering and fraud by vigorously representing their terminally ill clients in tort suits brought against asbestos-product manufacturers. These novel claims have received widespread press coverage and raise significant policy issues about legal ethics, the constitutional and statutory privileges and immunities afforded litigants and their attorneys, and the adversary system in general. The bankruptcy court has no special expertise in these complex

{N2779091.6}

legal questions and is ill-suited, in comparison to this Court, to make decisions that will potentially have far-reaching ramifications for not only the asbestos plaintiffs represented by Simon Greenstone Defendants but all mass-tort victims.

Practical considerations also weigh heavily in favor of revoking the bankruptcy-court reference. All parties agree that this is a non-core proceeding and that the trial will be conducted before a jury. As such, absent the consent of the parties,[1] the bankruptcy court lacks constitutional and statutory authority to decide dispositive motions or conduct the trial on the merits. Judge Hodges has also recently indicated that he plans to transfer all Garlock bankruptcy proceedings to Judge Whitley, who handled the first-day motions in the underlying bankruptcy but had no further involvement in the case until now. Withdrawing the reference at this early stage of the case will eliminate the need for Judge Whitley to immerse himself in the matter and avoid the needless waste of judicial resources and increased litigation expense that will follow from the duplication of effort associated with having this case proceed in two forums. It will allow this Court to manage the progression of this case from the outset and define the scope of the facts and legal issues to be tried. At the same time, given the lack of experience the incoming bankruptcy judge has with the case, and the fact that the legal issues are novel, complex, and unrelated to the Garlock bankruptcy, there are no compelling reasons for the bankruptcy court to handle any pretrial matters.

In sum, while all cases are important to the parties involved, this litigation raises novel and complex issues that deserve the full attention of this Court. Maintaining the bankruptcy-court reference, even for pretrial purposes, will make this case more difficult to manage over time and disrupt the orderly progress of the proceeding. Neither the judicial system nor the

---

[1] Both Garlock and the Simon Greenstone Defendants do not consent to the referral of this case to the bankruptcy court for trial purposes.

2

{N2779091.6}

parties benefit from the delays or increased costs involved in such an approach. For these reasons, the Court should withdraw the bankruptcy-court reference in this case for all purposes.

## FACTUAL BACKGROUND

Garlock filed for bankruptcy in 2010. From the commencement of the bankruptcy, Garlock and the committee charged with representing the interests of asbestos claimants have disagreed over how much money should be set aside in trust for present and future asbestos claims. On January 5, 2014, the bankruptcy court issued an order in which it largely sided with Garlock, holding that $125 million (as opposed to the $1.2 billion estimated by the asbestos-claimants committee) would be sufficient to satisfy future claims. The preceding evening, Garlock filed this adversary proceeding asserting RICO and state-law fraud and civil conspiracy claims.[2]

Throughout the bankruptcy proceedings, Garlock boasts that it has always denied liability in asbestos cases and claims that its products are demonstrably safe and could not have caused disease. Nonetheless, Garlock accuses the Simon Greenstone Defendants—the attorneys who represented the victims of Garlock-manufactured asbestos products—of causing Garlock to adopt a litigation strategy of settling cases for more than they were allegedly worth.

Garlock has repeatedly claimed that they were compelled to pay inflated amounts in settlement because the plaintiffs in those cases failed to disclose other potential sources of asbestos exposure during discovery. Garlock does not allege that it was denied an opportunity to conduct its own discovery or take the cases to trial. Rather, Garlock claims that during the course of defending the mesothelioma lawsuits, it became economically more attractive for

---

[2] In addition to this case, Garlock has filed separate adversary proceedings against three other groups of attorneys who represented plaintiffs that filed other asbestos-related lawsuits against Garlock. These cases have not been consolidated and concern alleged conduct in different lawsuits than those at issue in this case.

3

{N2779091.6}

Garlock to settle for increased amounts rather than spend greater sums demonstrating it had little or no liability.

The proposition that the Simon Greenstone Defendants caused Garlock to adopt a litigation strategy of settling regardless of its actual liability is facially implausible. Garlock had the full opportunity to conduct whatever discovery it needed, including the ability to depose the plaintiffs and challenge their credibility. Garlock also could have taken the cases to trial, challenged the credibility of the plaintiffs, and argued alternative sources of exposure to a jury. Instead, as the bankruptcy court found, "the overwhelming majority of [Garlock] cases were settled in groups without regard to liability and virtually entirely for cost avoidance." (Bankr. Rec. Doc. 3296 at 39). In an adversary system, Garlock has no one to blame but its own officers, directors, defense attorneys, and outside consultants for adopting a failed litigation strategy.[3]

Garlock has demanded a trial by jury and characterizes its lawsuit against the Simon Greenstone Defendants as a non-core proceeding. The Simon Greenstone Defendants agree that this case represents a non-core proceeding and also demand a jury trial. The Simon Greenstone Defendants also anticipate that they will move in the immediate future to transfer this case to the United States District Court for the Northern District of Texas for the convenience of the parties and, alternatively, to dismiss based on Garlock's failure to state a viable cause of action. These motions and any other dispositive motions will need to be decided by an Article III court. As such, there is no reason to delay withdrawing the bankruptcy-court reference in this case.

## LEGAL ARGUMENT

This Court maintains a standing order that refers all bankruptcy-related matters originating in this district to the bankruptcy court for adjudication. (July 30, 1984 Order of

---

[3] The failure of Garlock to name the officers, directors, defense attorneys, and outside consultants responsible for developing and approving a failed litigation strategy as additional defendants will be addressed in due course through an appropriate motion or the assertion of third party claims.

Reference). It also maintains a standing order referring all pretrial proceedings to the bankruptcy court in adversary proceedings with a jury demand. (May 17, 2011 Order of Reference, attached as Ex. 1). Despite these standing orders, a district court may exercise its discretion to withdraw a bankruptcy-court reference at any time on its own motion or on timely motion of any party "for cause shown." 28 U.S.C. § 157(d); *Dwyer v. First Nat'l Bank (In re O'Brien)*, 414 B.R. 92, 97 (S.D. W. Va. 2009); *see Mason v. Ivey*, 498 B.R. 540, 549 (M.D.N.C. 2013) (holding that a "district court has broad discretion to determine whether to withdraw the reference upon a finding of 'cause'").

The Fourth Circuit has not addressed what constitutes "cause" to withdraw a bankruptcy-court reference. However, most "circuits are in agreement that the following factors should be considered: (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy proceedings; (3) expediting the bankruptcy process and promoting judicial economy; (4) the efficient use of the resources of the debtors and creditors; (5) reduction of forum shopping; and (6) the preservation of the right to a trial by jury." *ACC Retail Prop. Dev. & Acquisition Fund, LLC v. Bank of Am., N.A.*, No. 5:12–CV–361, 2012 WL 8667572, at *2 (E.D.N.C. Sept. 28, 2012); *Guy v. Franklin Am. Mortg. Co.*, No. 1:11–mc–00138, 2013 WL 6628550, at *1-2 (S.D. W. Va. Dec. 10, 2013) (same). As set forth below, applying these factors in this case supports withdrawing the bankruptcy-court reference.

All parties agree that this action is a "non-core proceeding." The status of this case as a non-core proceeding weighs heavily in favor of withdrawing the bankruptcy-court reference because the bankruptcy court lacks the constitutional and statutory authority to enter a final judgment in the case absent the consent of the parties. *See* 28 U.S.C. § 157(c)(1)-(2); *Stern v. Marshall*, 131 S. Ct. 2594, 2607-09 (2011). Here, the parties do not consent to the bankruptcy

5

court entering final judgment. As such, the bankruptcy judge will at most be able to submit proposed findings of fact and conclusions of law to the district court for its de novo review. 28 U.S.C. § 157(c)(1); *Campbell v. Bender (In re ESA Envtl. Specialists, Inc.)*, No. 3:09CV465–V, 2010 WL 324412, at *1 n.3 (W.D.N.C. Jan. 20, 2010).

Leaving the reference in place for the bankruptcy court to issue proposed findings of fact and conclusions of law makes no sense because the claims raised by the Complaint fall outside the bankruptcy court's expertise and will only lead to duplicative filings. Indeed, many courts have held that this factor is the "most important" of the six because "efficiency, uniformity and judicial economy concerns are largely subsumed within it." *Gecker v. Marathon Fin. Ins. Co.*, 391 B.R. 613, 615 (N.D. Ill. 2008) (quoting *CDX Liquidating Trust v. Venrock Assocs.*, No. 04C7236, 2005 WL 3953895, at *1 (N.D. Ill. Aug. 10, 2005)); *see also Campbell*, 2010 WL 324412, at *1 (holding that when a defendant "does not consent to the jurisdiction of the bankruptcy court for purposes of adjudicating [plaintiff's claims], cause exists to withdraw the reference.").

Additionally, nothing about this case implicates the uniform administration of bankruptcy proceedings. The claims in this case do not stem from the bankruptcy itself. Nor are they claims that are integrally related to bankruptcy's claims-allowance process. Rather, the RICO and state-law claims asserted raise complex legal issues that are alien to Garlock's underlying bankruptcy. Furthermore, with Judge Whitley replacing Judge Hodges, the presiding bankruptcy judge does not have a wealth of factual experience to draw upon here.[4] Thus, this action does not require the bankruptcy court's experience or expertise, and it does not generally implicate "the uniform administration of bankruptcy proceedings." *See ACC Retail*, 2012 WL 8667572, at *2.

---

[4] The unfamiliarity of the presiding bankruptcy judge with the facts of this case and the presence of complex legal issues alien to the underlying bankruptcy make this case distinguishable from the Court's recent decision in *Blue Cross & Blue Shield of N.C. v. Jemsek Clinic, P.A.*, No. 3:13-cv-00674 (W.D.N.C. Mar. 11, 2014).

Withdrawing the reference will also promote the efficient administration of justice by eliminating the duplication of effort that will follow from two courts having to educate themselves about this case and consider the same sets of motions.  Judge Reidinger recently confronted this issue in *Harleysville Mutual Ins. Co. v. Hill (In re The Hammocks, LLC)*, No. 1:10cv22, 2010 WL 3783952 (W.D.N.C. Sept. 28, 2010).  In that case, a debtor sued an insurer for failing to pay a claim for a loss under the policy.  *Id.* at *2.  Judge Reidinger concluded that the case was a non-core proceeding, and noted that the insurer had "unequivocally stated that it will not consent to having a trial before the Bankruptcy Court." *Id*. at *4.  Judge Reidinger rejected the debtor's argument that the Court "may continue the referral for pre-trial matters," concluding that this would not be "an efficient use of judicial resources" because "[s]uch a scenario could lead to repeated requests for *de novo* review by this Court and thus give rise to unnecessary costs and delay." *Id*. at *4 (citing *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2nd Cir. 1993)).

Other courts have similarly concluded that the duplication of effort and waste of judicial resources associated with two courts handling the same case should lead to a decision withdrawing the reference.  *Guy*, 2013 WL 6628550, at *2 (ordering the reference withdrawn because the bankruptcy court could only submit proposed findings of fact and conclusions of law to the district court, and "the district court then would [have to] review de novo the bankruptcy court's conclusions [in order to] enter a final order or judgment"); *Antioch Co. Litig. Trust v. Morgan*, No. 3:10–cv–156, 2012 WL 5845003, at *2 (S.D. Ohio Nov. 19, 2012) (ordering the reference withdrawn at the close of fact discovery, before dispositive motions filed, "so that this Court can define the scope of facts and issues to be tried"); *Travelers Ins. Co. v. Goldberg*, 135 B.R. 788, 793 (D. Md. 1992) (denying motion to refer matter to bankruptcy court because "the

7

effect of plaintiffs' jury demand, combined with the non-core nature of this action work to make referral to the Bankruptcy Court a limited and inefficient tool").

Importantly, the parties also will benefit from the efficiencies associated with having this case reside in a single forum. If two judges hear all dispositive motions, the expense of this litigation will increase dramatically for all parties. Garlock is particularly at risk of suffering increased litigation expenses. In addition to this case, Garlock has filed three other adversary proceedings against attorneys who represented plaintiffs who suffered asbestos-related injuries. Each of those cases involves a different set of defendants and raises distinct factual issues. Each also represents yet another case in which Garlock will be confronted with duplicative proceedings unless the reference to the bankruptcy court for those cases is withdrawn.

Additionally, no one can reasonably claim that the Simon Greenstone Defendants are engaged in forum shopping. The claims in this case must be resolved by an Article III court. The only role the bankruptcy court can play in these proceedings is to provide reports and recommendations to this Court—a duplicative and inefficient practice. This motion is concerned with the authority of the judge overseeing the proceedings, not his identity. And only a member of the Article III judiciary has the power to resolve this case. Thus, the reference should be withdrawn.

Finally, both sides of this case seek a trial by jury. Bankruptcy courts are statutorily and constitutionally prohibited from conducting jury trials absent the express consent of the parties. 28 U.S.C. § 157(e); *Campbell*, 2010 WL 324412, at *1; *see also Offic. Comm. of Unsecured Creditors ex rel. Estate of Stansbury Poplar Place, Inc. v. Schwartzman (In re Stansbury Poplar Place, Inc.)*, 13 F.3d 122, 128 (4th Cir. 1993) (As a constitutional issue, "we hold that bankruptcy judges are not authorized to conduct jury trials[.]"). No consent exists in this case.

8

{N2779091.6}

As such, the bankruptcy-court reference will need to be withdrawn at some point in order to preserve the right to a jury trial. Withdrawing the reference now will permit the Court to closely manage these proceedings from the outset and to define the scope of the facts and legal issues to be tried while preserving the limited resources of the judicial system and parties.

## CONCLUSION

For the reasons set forth above, the Simon Greenstone Defendants requests that the Court withdraw the reference to the bankruptcy court for this adversary proceeding.

This the 14th day of March, 2014.

>/s/ Sara W. Higgins
>Sara W. Higgins
>N.C. Bar Number 22111
>Raymond E. Owens, Jr.
>N.C. Bar Number 8439
>Higgins & Owens, PLLC
>5925 Carnegie Blvd., Suite 530
>Charlotte, NC 28209
>Phone: (704) 366-4607
>Fax: (704) 749-9451
>shiggins@higginsowens.com
>rowens@higginsowens.com
>
>and
>
>Michael W. Magner
>La. Bar Number 1206
>Mark A. Cunningham
>La. Bar Number 24063
>Jones Walker LLP
>201 St. Charles Avenue, Suite 5100
>New Orleans, Louisiana 70170
>Phone: (504) 582-8316
>Fax: (504) 589-8316
>mmagner@joneswalker.com
>mcunningham@joneswalker.com
>(admitted pro hac vice)
>
>*Attorneys for Simon Greenstone Panatier Bartlett, APLC, Jeffery B. Simon, David C.*

9

{N2779091.6}

*Greenstone, the Estate of Ronald C. Eddins and Jennifer L. Bartlett*

## CERTIFICATE OF SERVICE

In accordance with Local Rule 5.3(C), the undersigned attorney for Defendants certifies that a copy of the foregoing Brief in Support of Motion to Withdraw the Reference has been served on the following attorneys for the parties in this action by electronic filing in the CM/ECF system as follows:

    Louis A. Bledsoe, III (lbledsoe@rbh.com)
    Garland S. Cassada (gcassada@rbh.com)
    Jonathan C. Krisko (jkrisko@rbh.com)
    D. Blaine Sanders (bsanders@rbh.com)
    Richard C. Worf (rworf@rbh.com)

This 14th day of March, 2014.

                                            /s/ Sara W. Higgins
                                            Sara W. Higgins

{N2779091.6}