**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE:<br><br>GARLOCK SEALING TECHNOLOGIES LLC,[1] *et al.*,<br><br>               Debtors. | Case No. 10-BK-31607<br><br>Chapter 11<br><br>Jointly Administered |
| GARLOCK SEALING TECHNOLOGIES LLC, *et al.*,<br><br>               Plaintiffs,<br><br>     v.<br><br>SIMON GREENSTONE PANATIER BARTLETT, APLC, *et al.*,<br><br>               Defendants. | Case No. 3:14-cv-00116-MOC<br><br>Adversary Proceeding No. 14-AP-03037 |

**SUBMISSION OF RECENT CLAIMANT COMMITTEE'S ARGUMENT AT ODDS
WITH SIMON GREENSTONE DEFENDANTS' MOTION TO WITHDRAW THE
REFERENCE**

      Garlock Sealing Technologies LLC and Garrison Litigation Management Group, Ltd.

(collectively, "Garlock") submit this newly acquired information in opposition to Defendants

Simon Greenstone Panatier Bartlett, APLC, Jeffrey B. Simon, David C. Greenstone, the Estate of

Ronald C. Eddins and Jennifer L. Bartlett's (collectively, "Simon Greenstone" or "Defendants")

Motion to Withdraw the Reference.[2]

---

[1]  The three debtors in these jointly administered cases are Garlock Sealing Technologies LLC; Garrison Litigation Management Group, Ltd.; and The Anchor Packing Company.

[2] This submission refers to Defendants' Memorandum of Law in Support of Motion to Withdraw the Reference (Docket No. 2) as the "Simon Brief."

The parties completed the briefing of Simon Greenstone's motion last month. Last week, however, the Official Committee of Asbestos Personal Injury Claimants (the "Committee")—on which Simon Greenstone serves—made contentions in the Bankruptcy Court so fundamentally inconsistent with Simon Greenstone's argument in support of the pending motion that this Court should be aware of them.

Simon Greenstone submitted its original brief to the Bankruptcy Court on March 14, 2014. In this brief, it argued:

> Additionally, nothing about this case implicates the uniform administration of bankruptcy proceedings. The claims in this case do not stem from the bankruptcy itself. Nor are they claims that are integrally related to bankruptcy's claims-allowance process.

Simon Brief at 6.

By contrast, at a May 8, 2014 hearing before Bankruptcy Judge Hodges concerning its attorneys' fees, the Committee's counsel described the relationship between its work on the instant adversary proceedings and the bankruptcy case:

> That project was devoted to figuring out what the Committee could and should do faced with the express threat articulated in October by the debtors to commence litigation against some law firms where the Committee perceives a threat to the proper focus of the bankruptcy case and the reorganization effort from what, by some lights, might be characterized as the detour into complicated RICO litigation in other, in various forums with multiple issues, *all of which flow right out of the estimation and the estimation order and so have a strong nexus to the bankruptcy case and the reorganization effort*.

> Our project was, recognizing that a debtor has significant discretion over the commencement of litigation, whether we could develop an adequate theory under the Bankruptcy Code and non-bankruptcy law for invoking the power of the Court to intervene, oversee, and control the debtors' litigation agenda should there be a manifest threat to the reorganization process.

Transcript at 6 (emphasis added). The quoted transcript excerpts are attached as **Exhibit A**.

Later in the hearing, the Committee's counsel further explained the continuing

connection between the adversary proceedings and bankruptcy case:

> Now when the estimation order came out we were, frankly, very surprised. I
> think, to some extent, they were surprised, too. Necessarily shifted our priorities.
> *We chose not to interfere at that time, but we have in the ready because of the*
> *work that we devoted in November and December the means of invoking your*
> *authority should we conclude that their interest in pursuing these law firms is*
> *threatening the proper focus of the reorganization effort* and it's too early to tell.
> Those cases are in their germinal stages. There's all kinds of preliminary
> motions, as you well know, but if it goes in a certain direction we will be here
> asking you to intervene and control them. And that good—that was good and
> valuable work for the interests in our constituencies and fully compensable under
> the standards.

*Id.* at 39 (emphasis added).

Thus, Simon Greenstone is telling this Court that "nothing about this case implicates the

uniform administration of bankruptcy proceedings" while the Committee it serves on is telling

the Bankruptcy Court that this litigation has "a strong nexus to the bankruptcy case and the

reorganization effort." If Simon Greenstone's motion to withdraw the reference before this

Court "goes in a certain direction," the Committee will ask the Bankruptcy Court to "intervene

and control" the adversary proceedings because of their close connection to Garlock's

reorganization. Garlock submits that this type of advocacy will continue if the Court withdraws

the reference or transfers the adversary proceedings to different districts.[3] Accordingly, this and

the other adversary proceedings should remain in the forum that is handling the bankruptcy case,

has handled a similar adversary proceeding and is the customary site specified in the standing

Order of Reference —the Bankruptcy Court.[4]

---

[3] Indeed, the Committee perceives the prospect of litigating these adversary proceedings in "various forums" as a
"threat" to Garlock's reorganization efforts. Transcript at 6.

[4] In addition, it has come to Garlock's attention that on a Motion to Withdraw the Reference, the Court should have
the opportunity to review the Complaint. It is attached as **Exhibit B**.

This 16th day of May, 2014.

/s/ Garland S. Cassada
Garland S. Cassada
N.C. Bar No. 12352
D. Blaine Sanders
N.C. Bar No. 12541
Louis A. Bledsoe, III
N.C. Bar No. 12730
Jonathan C. Krisko
N.C. Bar No. 28625
Richard C. Worf, Jr.
N.C. Bar No. 37143

ROBINSON BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

gcassada@rbh.com
bsanders@rbh.com
lbledsoe@rbh.com
jkrisko@rbh.com
rworf@rbh.com

*Counsel to Plaintiffs Garlock Sealing
Technologies LLC and Garrison Litigation
Management Group, Ltd.*

<u>**CERTIFICATE OF SERVICE**</u>

In accordance with Local Rule 5.3(C), the undersigned attorney for Plaintiff certifies that a copy of the foregoing **Submission of Recent Claimant Committee's Argument at Odds with Simon Greenstone Defendants' Motion to Withdraw the Reference** has been served on the following attorneys for the parties in this action by electronic filing in the CM/ECF system as follows:

Sara W. Higgins (shiggins@higginsowens.com)
Raymond E. Owens, Jr. (rowens@higginsowens.com)
Michael W. Magner (mmagner@joneswalker.com)
Mark A. Cunningham (mcunningham@joneswalker.com)

This 16th day of May, 2014.

/s/ Garland S. Cassada
Garland S. Cassada

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE:<br><br>GARLOCK SEALING TECHNOLOGIES LLC,[1] *et al.*,<br><br>           Debtors. | Case No. 10-BK-31607<br><br>Chapter 11<br><br>Jointly Administered |
| GARLOCK SEALING TECHNOLOGIES LLC, *et al.*,<br><br>           Plaintiffs,<br><br>   v.<br><br>SIMON GREENSTONE PANATIER BARTLETT, APLC, *et al.*,<br><br>           Defendants. | Case No. 3:14-cv-00116-MOC<br><br>Adversary Proceeding No. 14-AP-03037 |

**APPENDIX TO SUBMISSION OF RECENT CLAIMANT COMMITTEE'S ARGUMENT AT ODDS WITH SIMON GREENSTONE DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE**

| Exhibit Number | Description |
|---|---|
| Exhibit A | Transcript from May 8, 2014 hearing in *In re Garlock Sealing Technologies LLC*, Case No. 10-31607 (Bankr. W.D.N.C.) (excerpts) |
| Exhibit B | Complaint filed January 9, 2014 in *Garlock Sealing Technologies LLC v. Simon Greenstone Panatier Bartlett, APLC*, Case No. 14-AP-03037 (Bankr. W.D.N.C.) |

---

[1]  The three debtors in these jointly administered cases are Garlock Sealing Technologies LLC; Garrison Litigation Management Group, Ltd.; and The Anchor Packing Company.

# EXHIBIT A

1    UNITED STATES BANKRUPTCY COURT
     WESTERN DISTRICT OF NORTH CAROLINA
2            CHARLOTTE DIVISION

3    IN RE:                    :    Case No. 10-31607

4    GARLOCK SEALING TECHNOLOGIES  :    Chapter 11
     LLC, ET AL.,
5                              :    Charlotte, North Carolina
          Debtors.                  Thursday, May 8, 2014
6                              :    9:00 a.m.

7    : : : : : : : : : : : : : : : : : : : : : : : : : : :

8

          TRANSCRIPT OF 2ND CONTINUED HEARING ON
9        (3463) MOTION FOR ELEVENTH INTERIM APPLICATION OF
           CAPLIN & DRYSDALE, CHARTERED FOR ALLOWANCE OF
10        COMPENSATION AND REIMBURSEMENT OF EXPENSES WITH
          RESPECT TO SERVICES RENDERED AS CO-COUNSEL TO
11     THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY
          CLAIMANTS FOR PERIOD NOV. 1, 2013 to Feb. 28, 2014
12             BEFORE THE HONORABLE GEORGE R. HODGES,
               UNITED STATES BANKRUPTCY JUDGE
13
     APPEARANCES:
14
     For the Debtors:          Robinson Bradshaw & Hinson, P.A.
15                             BY:  GARLAND S. CASSADA, ESQ.
                               101 N. Tryon Street, Suite 1900
16                             Charlotte, NC  28246

17                             Rayburn Cooper & Durham, P.A.
                               BY:  JOHN R. MILLER, JR., ESQ.
18                             227 West Trade St., Suite 1200
                               Charlotte, NC  28202
19

20   Audio Operator:          BARBARA J. SIFFORD

21
     Transcript prepared by:   Janice Russell Transcripts
22                             1133 Tanager Trail
                               Virginia Beach, VA  23451
23                             (757) 422-9089
                               trussell31@cox.net
24
     Proceedings recorded by electronic sound recording; transcript
25   produced by transcription service.

1    APPEARANCES (Continued):

2
     For Creditor, Future              Grier, Furr & Crisp, P.A.
3    Asbestos Claimants:               BY:  JOSEPH W. GRIER, III, ESQ.
                                       101 N. Tryon Street, Suite 1240
4                                      Charlotte, NC  28246

5    For Official Committee            Caplin & Drysdale, Chartered
     of Asbestos Personal              BY:  TREVOR W. SWETT, ESQ.
6    Injury Claimants:                 One Thomas Circle, NW, Suite 1100
                                       Washington, DC  20005
7
                                       Moon Wright & Houston, PLLC
8                                      BY:  TRAVIS W. MOON, ESQ.
                                       227 West Trade Street, Suite 1800
9                                      Charlotte, NC  28202

10   For Interested Party,             Moore & Van Allen PLLC
     Coltec Industries, Inc.:          BY:  DANIEL G. CLODFELTER, ESQ.
11                                     100 N. Tryon St., Suite 4700
                                       Charlotte, NC  28202

12

13   APPEARANCES (via telephone):

14   For Interested Party,             McGuireWoods LLP
     Ford Motor Company:               BY:  K. ELIZABETH SIEG, ESQ.
15                                     One James Center
                                       901 East Cary Street
16                                     Richmond, VA  23219-4030

17

18

19

20

21

22

23

24

25

1                            <u>INDEX</u>

2

3    <u>EXHIBITS</u>:                              <u>Marked</u>     <u>Received</u>

4        1      Comparison                        23          42

5        2      Affidavit re: Asbestos conference
6                 CD                              27          42

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           P R O C E E D I N G S

2       (Call to Order of the Court)

3           THE COURT:  Good morning.  Have a seat.

4           MR. SWETT:  Good morning, Your Honor.

5           MR. CASSADA:  Good morning, Your Honor.

6           THE COURT:  All right.  Mr. Cassada, why don't we

7    start over here and go across.  Start with the Mayor and --

8           MR. CLODFELTER:  Morning, Your Honor.  Dan Clodfelter

9    representing Coltec Industries.

10          MR. CASSADA:  Good morning, Your Honor.  Garland

11   Cassada here for the debtors.

12          MR. MILLER:  Morning, Your Honor.  Jack Miller,

13   Rayburn Cooper & Durham, also for the debtors.

14          MR. SWETT:  Good morning, Your Honor.  Trevor Swett,

15   Caplin & Drysdale, counsel to the Official Committee of

16   Asbestos Personal Injury Claimants, along with Tom Moon, Moon

17   Wright & Houston.

18          MR. MOON:  Morning, Your Honor.

19          THE COURT:  Okay.

20          MR. GRIER:  Morning, Your Honor.  Joe Grier, Future

21   Claims Representative.

22          THE COURT:  That it?

23          All right.  We're here on the fee application, I

24   guess.  So --

25          MR. SWETT:  Yes, Your Honor.  This is Caplin &

1    Drysdale's 11th interim fee application covering the period

2    November of 2013 through February 2014.

3         I'm going, for my opening, I'm going to largely stand

4    on our papers because we're under some time pressure.

5    Mr. Miller has to be out of here by 10:30.

6         So I'll just summarize briefly and then give him the

7    floor and then come back and respond to his points.

8         There are several matters set out in the application

9    that has prompted objections.  One is efforts devoted to the

10   Legal Newsline appeal and to the Aetna-Rawlings application for

11   access to 2019 exhibits.  The Legal Newsline appeal remains

12   pending.  The Aetna-Rawlings application resulted in an Order

13   in their favor subject to your decree that the exhibits not be

14   shared or transferred and to certain other protections that we

15   negotiated in a form of order.  There was no appeal.

16        The other specific objection made by the debtors has

17   to do with something that we labeled the Litigation Project.

18   The objection was that the general description of the matter

19   was insufficient to allow the debtors to evaluate the

20   appropriateness of the charges.  The problem there, of course,

21   is that it is litigation.  Work product protection does apply.

22   At the same time, the lawyers are obliged to meet the fee

23   application standards, as we fully recognize.  The upshot was

24   that we set forth in -- in our -- in our application an

25   explanation of that project that went beyond what we think is

1   appropriately required of us under that balance, but we didn't

2   want to have to get hung up on that fight over the adequacy of

3   the descriptions and so we came forth with what I think is an

4   all-to-generous description of what we were about.

5          That project was devoted to figuring out what the

6   Committee could and should do faced with the express threat

7   articulated in October by the debtors to commence litigation

8   against some law firms where the Committee perceives a threat

9   to the proper focus of the bankruptcy case and the

10  reorganization effort from what, by some lights, might be

11  characterized as the detour into complicated RICO litigation in

12  other, in various forums with multiple issues, all of which

13  flow right out of the estimation and the estimation order and

14  so have a strong nexus to the bankruptcy case and the

15  reorganization effort.

16         Our project was, recognizing that a debtor has

17  significant discretion over the commencement of litigation,

18  whether we could develop an adequate theory under the

19  Bankruptcy Code and non-bankruptcy law for invoking the power

20  of the Court to intervene, oversee, and control the debtors'

21  litigation agenda should there be a manifest threat to the

22  reorganization process.

23         That's a complicated endeavor.  It was a substantial

24  project.  It was under time pressure because of the timing

25  expressed in the debtors' threats.  It is integral to this

1  bankruptcy case given the nature of it, as defined by the
2  debtors from Day 1 in their information brief, where the
3  struggle between the debtors and the tort claimants has been
4  postured by the debtors as, in large measure, one pitting the
5  debtors against certain law firms.  But their purpose in
6  pitching it that way is to devalue the claims and produce, in
7  the end, the best possible deal for Garlock in a plan of
8  reorganization making it entirely appropriate, we submit, for
9  the Committee to have its counsel devote efforts to appropriate
10 countermeasures pushed back and counterforce to ensure that
11 whatever plan emerges from this case, this highly contentious,
12 litigation-intensive case, is a fair and balanced one from the
13 point of view of the asbestos claimants, not the lawyers, but
14 the claimants, who, after all, are the very reason why Garlock
15 is in bankruptcy.

16        And so we hope that the explanation given of that
17 project in the application cures whatever deficiency there may
18 have been in the original descriptions of the time submitted.
19 And I'm not conceding that there were deficiencies.  I think
20 that we did an appropriate job of, first of all, protecting the
21 thoughts, theories, and impressions of counsel, which are
22 immune from disclosure, while also being quite particular about
23 the nature of the tasks being carried out.  We specify in the
24 line items of the time entries whether the work was devoted to
25 formulating strategy, legal research, drafting of internal

1   memos, drafting of pleadings, and so forth.

2           So there's no mystery surrounding the nature of the

3   activities that we were about.  The label, Litigation Project,

4   was adopted in order to mask appropriately the work product

5   that was the focus of our thinking in deploying those efforts.

6   That seems to me to have been appropriate.  They objected,

7   however, and, as I mentioned, we didn't want to get hung up on

8   the question of adequate description so we went further than we

9   were required to do.

10          The legal standard is a subject that I think bears

11  comment in this, in this brief opening.  In their original

12  objection the debtors seemed to suggest that the standard

13  should be whether our activities conferred a benefit on them

14  and their estate and we countered that that's not right, that

15  this is a case pitting the interest of large creditor

16  constituency against the debtors and our duty runs to that

17  constituency, not to the debtors or their estate, and the

18  question is whether what we were doing was appropriately aimed

19  at fostering and promoting the interests of our constituency.

20          They then responded in their supplemental objection

21  that, putting forth a standard that they get out of an

22  unpublished Sixth Circuit decision.  And I'm not going to

23  embrace that standard as definitive for all purposes, but I'm

24  certainly willing to have this application considered under it.

25  That standard is whether the activities were undertaken in the

1   inevitably, invoked.

2           The Litigation Project, turn to that.  It serves the

3   debtors' interest to suppose that the estimation order answers

4   all questions.  Nothing remains, but the imposition of a plan

5   highly favorable to the debtors.  That is not our view of the

6   world.  You'll recall that when you declined Legal Newsline's

7   application to open the courtroom for all phases of the

8   estimation trial you recognized that the estimation was not a

9   dispositive proceeding, but a simple step towards formulation

10  of a plan.  It's also the order is interlocutory.  It is not

11  now properly appealable.  It depends, in large measure, on what

12  they try to do with it.  One of the things they're trying to do

13  with it right now is to solidify their position and leverage

14  the decision through these lawsuits against the law firms.

15  They hope that that will enhance their position for the endgame

16  of the plan, once again implicating quite clearly the interest

17  of our constituency.

18          So that when we set out faced with these threats that

19  were uttered in the context of discussion between the Committee

20  and the debtors to sue lawyers who represent large numbers of

21  our constituents, we had a vital interest in seeing whether

22  there were appropriate grounds.  And this is a novel issue.

23  Case law here is sparse for persuading you, if and when we

24  decided it was the right thing to do, to come in and control

25  their litigation agenda and prevent the litigation meltdown.

1    Now when the estimation order came out we were,

2  frankly, very surprised.  I think, to some extent, they were

3  surprised, too.  Necessarily shifted our priorities.  We chose

4  not to interfere at that time, but we have in the ready because

5  of the work that we devoted in November and December the means

6  of invoking your authority should we conclude that their

7  interest in pursuing these law firms is threatening the proper

8  focus of the reorganization effort and it's too early to tell.

9  Those cases are in their germinal stages.  There's all kinds of

10  preliminary motions, as you well know, but if it goes in a

11  certain direction we will be here asking you to intervene and

12  control them.  And that good -- that was good and valuable work

13  for the interests of our constituencies and fully compensable

14  under the standards.

15    This notion that they detect no evidence of a

16  constituency-wide interest in issues when the Committee is here

17  and active is a little bit of a bootstrap.  The remote parties

18  look to the Committee to address the constituency-wide interest

19  and, therefore, are less active than they might otherwise be

20  and to say that that level of passivity on the part of the

21  remote parties is evidence that there is no real interest in

22  the issues is just illogical and false.

23    We happen to believe that the bringing of those

24  lawsuits is bad for the reorganization process.  Stated

25  differently, if it was such a good idea why didn't they do it

1   before bankruptcy?  They're using the bankruptcy for a

2   protected haven from litigation efforts aimed at producing a

3   good plan for them.

4       As for their implicit pretense that those lawsuits

5   have nothing to do with the plan or with the reorganization

6   case, I can tell you this, and I think it says it all.  Had

7   there been a deal last fall there would be no such lawsuits.

8   Those lawsuits are the direct outgrowths of the estimation.

9   The allegations in those complaints could have been taken from

10  their, from their estimation briefs.  They are hand in glove.

11  And to the extent they tried to use those lawsuits to leverage

12  the estimation order and impose a bad plan, we're going to be

13  in there pitching against it.

14      (Pause)

15      MR. SWETT:  A few specifics for joinders.  They say

16  that the constituency has no proper interest in the 2019

17  exhibits being accessed by strangers to the case.  Well, Judge

18  Stark, who gave Garlock access to 2019s in 12 cases; by the

19  way, in proceedings in which we were full participants contrary

20  to the suggestion of Mr. Miller.  He recognized that, yes,

21  there are confidentiality interests here.  There are privacy

22  interests in this information, limited though it be, that weigh

23  against disclosure.  He did not find them controlling.  In the

24  balance of considerations he thought those materials should be

25  provided to Garlock, albeit for strictly limited purposes, but

1                          CERTIFICATE

2            I, court approved transcriber, certify that the

3       foregoing is a correct transcript from the official electronic

4       sound recording of the proceedings in the above-entitled

5       matter.

6       /s/ *Janice Russell*                              May 12, 2014

7       Janice Russell, Transcriber                       Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25