JEFFREY B. SIMON (NY, TX)
RON C. EDDINS (CA, TX)
DAVID C. GREENSTONE (CA, NY, TX)

ASSOCIATES
JENNIFER L. BARTLETT (CA)
CLAY B. CARROLL (TX)



**SIMON, EDDINS & GREENSTONE, LLP**



JES...
ROBE...
H.W. TR...
SAAR S...

CHARLES W. BRANHAM, III (CA)
JAMIE A. NEWBOLD (CA)

PLEASE RESPOND TO THE TEXAS OFFICE

August 16, 2006

**VIA LEXISNEXIS**
**TO ALL COUNSEL OF RECORD:**

Re:   *Charles White, et al v. Buffalo Pumps, Inc., et al;* Cause No. 2006-41943; In the
      11th Judicial District Court of Harris County, Texas
      ***TRANSFERRED FROM***
      *Charles White, et al v. Buffalo Pumps, Inc., et al;* Cause No. 06-06970-E; In the
      County Court at Law No. 5 in Dallas County, Texas.

Dear Counsel:

Attached please find Plaintiffs Charles White and Barbara Lorton's ***Third Supplemental
Answers to Master Discovery Requests*** to all Defendants in all Asbestos-Related Personal Injury
and Death Cases Filed in Harris County.

If you have any questions, do not hesitate to call.

Sincerely,

Christi Chapman
*Legal Assistant*

/cfc
Attachments

**cc: All Counsel of Record via Lexis Nexis (See attached counsel list)**

TEXAS OFFICE:
3232 MCKINNEY AVENUE, SUITE 610
DALLAS, TEXAS 75204
TEL: 214.276.7680
FAX: 214.276.7699

ATTORNEYS & COUNSELORS AT LAW
www.seglaw.com

CALIFORNIA OFFICE:
211 E. OCEAN BLVD., SUITE 200
LONG BEACH, CALIF. 90802
TEL: 562.590.3400
FAX: 562.590.3411

GST-EST-0181717

# CLIENT CHECKLIST - WHITE, CHARLES MDL CN#2006-41943

| Counsel Name | Firm Name | Address | Phone | Fax | Party(s) Represented | E-mail |
|---|---|---|---|---|---|---|
| James H. Powers | Powers & Frost | 2400 One Houston Center 1221 McKinney St. Houston, TX 77010 | 713-767-1555 | 713-767-1799 | Buffalo Pumps, Inc. | jpowers@powersfrost.com |
| Nathan Bosio | Dogan & Wilkinson | 734 Delmas Ave. Pascagoula, MS 39568 | 228-762-2272 | 228-762-3223 | Carver Pump Co. | nbosio@doganwilkinson.com |
| Michael J. Ramirez | Kirkpatrick & Lockhart Nicholson Graham, LLP | 2828 N. Harwood St., Ste. 1800 Dallas, TX 75201 | 214-939-4900 | 214-939-4949 | Crane Co. | mramirez@klng.com |
| Susan Ashmore | DeHay & Elliston | 901 Main St., Ste. 3500 Dallas, TX 75202 | 214-210-2400 | 214-210-2500 | Certainteed, Inc. Union Carbide Corp. | sashmore@dehay.com |
| Raymond Harris | Schachter Harris, LLP | 2300 Plaza of the Americas, 600 N. Pearl, LB 133 Dallas, TX 75201 | 214-999-5700 | 214-999-5747 | Garlock Sealing Tech. | rharris@schachterharris.com |
| John D. Carlos | Prichard Hawkins McFarland & Young | 10101 Reunion Pl., Ste. 600 San Antonio, TX 78216 | 210-477-7400 | 210-477-7450 | General Motors Corp. | jcarlos@phmy.com |
| L. Hayes Fuller, III | Naman Howell Smith & Lee | 900 Washington, 7th Floor P.O. Box 1470 Waco, TX 76703 | 254-755-4100 | 254-754-3172 | Goulds Pumps, Inc. Goulds Pumps (NY), Inc. | fuller@namanhowell.com |
| Robert Wilkinson William Farrell | Dogan & Wilkinson | 734 Delmas Ave. Pascagoula, MS 39568 | 228-762-2272 | 228-762-3223 | Guard-Line, Inc. | rwilkinson@doganwilkinson.com |
| J. Michael Jordan | Gardere Wynne Sewell | 1000 Louisiana, Ste. 3400 Houston, TX 77002 | 713-276-5569 | 713-276-6569 | IMO Industries, Inc. | mjordan@gardere.com |
| Laura Frase | Forman Perry Watkins Krutz & Tardy | 2001 Bryan St., Ste. 1300 Dallas, TX 75201 | 214-678-5541 | 214-905-3976 | Ingersoll Rand Co. | lafrase@fpwk.com |
| Laura Kugler | Bailey Crowe & Kugler | 6550 Bank of America Plaza, 901 Main St., Ste. 4600 Dallas, TX 75202 | 214-231-0555 | 214-231-0556 | John Crane, Inc. | |
| Billy D. Anderson | Kent, Good, Anderson & Bush | Woodgate I, Ste. 200 1121 ESE Loop 323 Tyler, TX 75701 | 903-579-7500 | 903-581-3701 | Leslie Controls, Inc. | lkugler@bcklaw.com billva@tyler.net |

GST-EST-0181718

| Counsel Name | Firm Name | Address | Phone | Fax | Party(s) Represented | E-mail |
|---|---|---|---|---|---|---|
| Ken Rhodes | Kacal, Adams & Law | One Riverway Ste. 1200 Houston, TX 77056 | 713-529-3992 | 713-621-4072 | Met Life Insurance Co. | kdrhodes@kalpc.com |
| Brian S. Clary | The Clary Firm | 408 Staitti Humble, TX 77338 | 281-548-1100 | 281-548-1126 | Mueller, Co. | bclary@clarvfirm.com |
| Laurie B. Easter | McGinnis Lockridge & Kilgore, LLP | One Houston Center, Ste. 3200, 1221 McKinney St. Houston, TX 77010 | 713-651-8524 | 713-328-1824 | Mueller Steam Specialty PCC Flow Technologies Holdings, Inc. | leaster@mcginnislaw.com |
| Jillian J. Rensburg | DeHay & Elliston | 3500 Bank of America Plaza, 901 Main St. Dallas, TX 75202 | 214-210-2400 | 214-210-2500 | Sterling Fluid Sysesms (Peerless Pump Company) | jvr@dehav.com |
| Ken Royer | Beason Willingham | 808 Travis St., Ste. 1608 Houston, TX 77002 | 713-333-7600 | 713-333-7601 | Standco Industries, Inc. | kenr@beasonwillingham.com |
| Todd Ogden | Forman Perry Watkins Krutz & Tardy | 2001 Bryan St., Ste. 1300 Dallas, TX 75201 | 214-678-5546 | 214-905-3976 | Uniroyal Holdings, Inc. | tdogden@fpwk.com |
| Robert Thackston | Hawkins Parnell & Thackston | 4514 Cole Ave., Ste. 550 Dallas, TX 75205 | 214-780-5100 | 214-780-5200 | Warren Pumps, Inc. | rthackston@hplegal.com |
| Alan Moore | Fanning Harper & Martinson | Two Energy Square 4849 Greenville Ave., Ste. 1300 Dallas, TX 75206 | 214-369-1300 | 214-987-9649 | Yarway Corporation | amoore@fhmlaw.com |

GST-EST-0181719

| | | |
|---|---|---|
| CHARLES WHITE and spouse BARBARA LORTON, | § § § | IN THE DISTRICT COURT OF |
| VS. | § § | HARRIS COUNTY, TEXAS |
| BUFFALO PUMPS, INC., ET AL | § § | 11TH JUDICIAL DISTRICT |

**TRANSFERRED FROM**

CAUSE NO. 06-06970-E

| | | |
|---|---|---|
| CHARLES WHITE and spouse BARBARA LORTON, | § § § | IN THE COUNTY COURT |
| VS. | § § | AT LAW NO. 5 |
| BUFFALO PUMPS, INC., ET AL | § § | DALLAS COUNTY, TEXAS |

**PLAINTIFF'S THIRD SUPPLEMENTAL ANSWERS TO MASTER DISCOVERY REQUESTS TO ALL DEFENDANTS IN ALL ASBESTOS-RELATED PERSONAL INJURY AND DEATH CASES FILED IN HARRIS COUNTY**

TO: ALL DEFENDANTS, by and through their counsel of record.

COME NOW Plaintiffs, CHARLES WHITE and spouse BARBARA LORTON, Plaintiffs herein and by and through their counsel of record, file this their Third Supplemental Answers to Master Discovery Requests .

Respectfully submitted,
**SIMON, EDDINS & GREENSTONE, LLP**

DAVID C. GREENSTONE
State Bar No. 24007271
JESSICA M. DEAN
State Bar No. 24040777
3232 McKinney Avenue   Suite 610
Dallas, Texas 75204
214-276-7680
214-276-7699 Fax
**ATTORNEYS FOR PLAINTIFF**

GST-EST-0181720

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Instrument was sent via Lexis Nexis to all counsel of record on the _16_ day of August, 2006 .

_____
JESSICA M. DEAN

GST-EST-018172

## INTERROGATORIES TO PLAINTIFFS

### INTERROGATORY NO. 17:

State the plaintiff/decedent's income and the source(s) of the plaintiff/decedent's income for each year of the last five years. If the plaintiff/decedent's spouse is employed or has been employed, state his or her income for each year of the last five years.

### SUPPLEMENTAL ANSWER:

Plaintiff objects to this request to the extent that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Plaintiffs are making a claim for lost wages. In addition, Plaintiffs have ordered these records and will supplement them as soon as the returns are received, in accordance with the Texas Rules of Civil Procedure and the Case Management Order entered by this Court. Additionally, please see the attached authorization to allow defendants to order these returns. Subject to and without waiving objections, Plaintiff's income for the past five years has come from owning and operating a sign business, Admiral Signs. His spouse is employed as a teacher for Dowell Elementary School in Calvert County, Maryland. Due to Plaintiff's illness and pain, he has had to refuse most jobs that he would have otherwise taken.

### INTERROGATORY NO. 34:

If the plaintiff/decedent is making a claim for lost wages or lost earning capacity, either past or future, as a result of their alleged exposure to asbestos-containing products, please identify the factual basis for such a claim and the monetary amount claimed by the plaintiff/decedent to have been lost in the past or which they estimate will be lost in the future.



## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

### REQUEST NO. 24:

All documents that support the contention that the plaintiff/decedent lost wages or incurred lost earning capacity as a result of the matters alleged in the petition in this case.

**SUPPLEMENTAL RESPONSE:** Discovery is ongoing. Plaintiff anticipates that he will testify regarding these matters.

JEFFREY B. SIMON (NY, TX)
RON C. EDDINS (CA, TX)
DAVID C. GREENSTONE (CA, NY, TX)

ASSOCIATES
JENNIFER L. BARTLETT (CA)
CLAY B. CARROLL (TX)





JESS
ROBER          12466697
H.W. TRE
SAAR S

CHARLES W. BRANHAM... 2006
JAMIE A. NEWBOLD (CA)

SIMON, EDDINS & GREENSTONE, LLP

PLEASE RESPOND TO THE TEXAS OFFICE

September 26, 2006

**VIA FIRST CLASS MAIL
TO ALL COUNSEL OF RECORD**

Re:   *Charles White, et al v. Buffalo Pumps, Inc., et al;* Cause No. 2006-41943; In the
      11th Judicial District Court of Harris County, Texas
      ***TRANSFERRED FROM***
      *Charles White, et al v. Buffalo Pumps, Inc., et al;* Cause No. 06-06970-E; In the
      County Court at Law No. 5 in Dallas County, Texas.

Dear Counsel:

Attached please find Plaintiffs' Fourth Supplemental Answers to Master Discovery Requests to All Defendants in All Asbestos-Related Personal Injury and Death Cases Filed in Harris County and Second Supplemental Responses to all- Defendants' Rule 194 Requests for Disclosure.

Please be advised that this supplement specifically addresses all of the claimed deficiencies listed in Defendants' Oppositions & Objections to Plaintiffs' Conditional Certification and Request for Remand & Trial Date.

If you have any questions, do not hesitate to call me.

Sincerely,

Jessica M. Dean

/cfc
Attachments
cc:   All Counsel of Record (see attached list)

TEXAS OFFICE:
3232 MCKINNEY AVENUE, SUITE 610
DALLAS, TEXAS 75204
TEL: 214.276.7680
FAX: 214.276.7699

ATTORNEYS & COUNSELORS AT LAW
www.seglaw.com

CALIFORNIA OFFICE:
211 E. OCEAN BLVD., SUITE 200
LONG BEACH, CALIF. 90802
TEL: 562.590.3400
FAX: 562.590.3411

GST-EST-0181723

# COUNSEL LIST - WHITE, CHARLES MDL CN#2006-41943

| Counsel Name | Firm Name | Address | Phone | Fax | Party(s) Represented | E-mail |
|---|---|---|---|---|---|---|
| James H. Powers | Powers & Frost | 2400 One Houston Center 1221 McKinney St. Houston, TX 77010 | 713-767-1555 | 713-767-1799 | Buffalo Pumps, Inc. | jpowers@powersfrost. com |
| Nathan Bosio | Dogan & Wilkinson Kirkpatrick & Lockhart | 734 Delmas Ave. Pascagoula, MS 39568 | 228-762-2272 | 228-762-3223 | Carver Pump Co. | nbosio@doganwilkins on.com |
| Michael J. Ramirez | Nicholson Graham, LLP | 2828 N. Harwood St., Ste. 1800 Dallas, TX 75201 | 214-939-4900 | 214-939-4949 | Crane Co. Certainteed; Inc. | mramirez@klng.com |
| Susan Ashmore | DeHay & Elliston | 901 Main St., Ste. 3500 Dallas, TX 75202 | 214-210-2400 | 214-210-2500 | Union Carbide Corp. | sashmore@dehay.co m |
| Raymond Harris | Schachter Harris, LLP | 2300 Plaza of the Americas, 600 N. Pearl, LB 133 Dallas, TX 75201 | 214-999-5700 | 214-999-5747 | Garlock Sealing Tech. | rharris@schachterhar ris.com |
| L. Hayes Fuller, III | Naman Howell Smith & Lee | 900 Washington, 7th Floor P.O. Box 1470 Waco, TX 76703 | 254-755-4100 | 254-754-3172 | Goulds Pumps, Inc. Goulds Pumps (NY), Inc. | fuller@namanhowell.c om |
| Robert Wilkinson William Farrell | Dogan & Wilkinson | 734 Delmas Ave. Pascagoula, MS 39568 | 228-762-2272 | 228-762-3223 | Guard-Line, Inc. | rwilkinson@doganwilk inson.com |
| J. Michael Jordan | Gardere Wynne Sewell | 1000 Louisiana, Ste. 3400 Houston, TX 77002 | 713-276-5569 | 713-276-5569 | IMO Industries, Inc. | mjordan@gardere.co m |
| Laura Frase | Forman Perry Watkins Krutz & Tardy | 2001 Bryan St., Ste. 1300 Dallas, TX 75201 | 214-678-5541 | 214-905-3976 | Ingersoll Rand Co. | lafrase@fpwk.com |
| Laura Kugler | Bailey Crowe & Kugler | 6550 Bank of America Plaza, 901 Main St., Ste. 4600 Dallas, TX 75202 | 214-231-0555 | 214-231-0556 | John Crane, Inc. | lkugler@bckllaw.com |
| Billy D. Anderson | Kent, Good, Anderson & Bush | Woodgate 1, Ste. 200 1121 ESE Loop 323 Tyler, TX 75701 | 903-579-7500 | 903-581-3701 | Leslie Controls, Inc. | billya@tyler.net |

| Counsel Name | Firm Name | Address | Phone | Fax | Party(s) Represented | E-mail |
|---|---|---|---|---|---|---|
| Ken Rhodes | Kacal, Adams & Law | One Riverway, Ste. 1200, Houston, TX 77056 | 713-529-3992 | 713-529-8161 | Met Life Insurance Co. | kdrhodes@kalpc.com |
| Brian S. Clary | The Clary Firm | 408 Staitti, Humble, TX 77338 | 281-548-1100 | 281-548-1126 | Mueller Steam Specialty | bclary@claryfirm.com |
| Laurie B. Easter | McGinnis Lockridge & Kilgore, LLP | 1221 McKinney St., Houston, TX 77010 | 713-651-8524 | 713-328-1824 | PCC Flow Technologies Holdings, Inc. | leaster@mlcginnislaw.com |
| Jillian J. Rensburg | DeHay & Elliston | 3500 Bank of America Plaza, 901 Main St. Dallas, TX 75202 | 214-210-2400 | 214-210-2500 | Sterling Fluid Systems (Peerless Pump Company) | jvr@dehay.com |
| Ken Royer | Beason Willingham | 808 Travis St., Ste. 1608, Houston, TX 77002 | 713-333-7600 | 713-333-7601 | Standco Industries, Inc. | kent@beasonwillingham.com |
| Todd Ogden | Forman Perry Watkins Krutz & Tardy | 2001 Bryan St., Ste. 1300 Dallas, TX 75201 | 214-678-5546 | 214-905-3976 | Uniroyal Holdings, Inc. | tdogden@fpwk.com |
| Robert Thackston *Liaison Counsel* | Hawkins Parnell & Thackston | 4514 Cole Ave., Ste. 550 Dallas, TX 75205 | 214-780-5100 | 214-780-5200 | Warren Pumps, Inc. | rthackston@hplegal.com |
| Alan Moore | Fanning Harper & Martinson | Two Energy Square 4849 Greenville Ave., Ste. 1300 Dallas, TX 75206 | 214-369-1300 | 214-987-9649 | Yarway Corporation | amoore@fhmlaw.com |

GST-EST-0181725

## ASBESTOS MDL CASE
### CAUSE NO. 2006-41943

| | | |
|---|---|---|
| CHARLES WHITE and spouse BARBARA LORTON, | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| BUFFALO PUMPS, INC., ET AL | § | 11TH JUDICIAL DISTRICT |

---

### TRANSFERRED FROM

---

### CAUSE NO. 06-06970-E

| | | |
|---|---|---|
| CHARLES WHITE and spouse BARBARA LORTON, | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| VS. | § | AT LAW NO. 5 |
| | § | |
| BUFFALO PUMPS, INC., ET AL | § | DALLAS COUNTY, TEXAS |

---

### PLAINTIFF'S FOURTH SUPPLEMENTAL ANSWERS TO MASTER DISCOVERY REQUESTS TO ALL DEFENDANTS IN ALL ASBESTOS-RELATED PERSONAL INJURY AND DEATH CASES FILED IN HARRIS COUNTY AND SECOND SUPPLEMENTAL RESPONSES TO ALL DEFENDANTS' RULE 194 REQUESTS FOR DISCLOSURE

TO: ALL DEFENDANTS, by and through their counsel of record.

COME NOW Plaintiffs, CHARLES WHITE and spouse BARBARA LORTON, Plaintiffs herein and by and through their counsel of record, file this their Fourth Supplemental Answers to Master Discovery Requests and Second Supplemental Responses to Rule 194 Requests for Disclosure propounded by all defendants and also in response and supplemental response to written discovery previously propounded by the defendants to the plaintiff and responses to any and all defendants' Rule 194 Requests for Disclosure pursuant to the Texas Rules of Civil Procedure.

Respectfully submitted,

**SIMON, EDDINS & GREENSTONE, LLP**

DAVID C. GREENSTONE
State Bar No. 24007271
JESSICA M. DEAN
State Bar No. 24040777
3232 McKinney Avenue   Suite 610
Dallas, Texas 75204
214-276-7680
214-276-7699 Fax

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Instrument was sent via Lexis Nexis to all counsel of record on the _20_ day of September, 2006.

JESSICA M. DEAN

# FOURTH SUPPLEMENTAL RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 7:

State the identity of each coworker or other product identification witness who can provide product identification information, the specific site or sites at which each coworker or product identification witness worked with the plaintiff, the specific units or areas in each site at which each coworker or product identification witness worked with the plaintiff, the dates that the coworker or witness worked at each site, and the products and manufacturer, supplier and distributor of the alleged asbestos-containing products, and any other products that allegedly released asbestos in their use, that each coworker, or other product identification witness, can identify (listing the product(s) specific to each co-worker or product identification witness). [If the plaintiff/decedent alleges exposure through another person's job or occupation, please answer for that other person's job or occupation.]

## ANSWER:

The following is a list of co-workers of Mr. White:

Red Grayer
Jimmy Laubaugh
Tom Burnell

Plaintiffs do not know if these coworkers can provide product identification information.

Each coworker listed was identified in Plaintiff Charles White's deposition, none of this information should come as a surprise to Defendants, and Defendants had an opportunity to question Plaintiff regarding each coworker. Mr. Grayer was identified as the boss of the inside machine shop where Plaintiff worked on page 191 of Plaintiff's deposition. *See* deposition of Charles White, taken August 11, 2006, attached hereto as **Exhibit "A."** Mr. Laubaugh was Plaintiff's supervisor and was identified on page 191. *See id.* Mr. Burnell was identified on pages 244-246, and discussed his job duties and his current location. *See id.*

## INTERROGATORY NO. 32:

If the plaintiff/decedent has entered into any settlement agreement, or if a named defendant or any third party has agreed to make payment to the plaintiff/decedent for his/her asbestos-related condition, please state:

(a)     the full name of the party or person with whom the plaintiff/decedent entered into an agreement;

(b)     the date of the agreement; and

(c)     the amount of money each person or party has paid or agreed to pay.

**ANSWER:**     Plaintiff objects to this Interrogatory to the extent it requests confidential information that is not relevant to the pending litigation and not reasonably calculated to lead to the discovery of admissible evidence. *See i.e., Ford Motor Co. v. Leggat,* 904 S.W.2d 643 (Tex.1995). Subject to, and without waiving this objection, Plaintiffs have entered into confidential settlement agreements with General Electric Company, Georgia Pacific

ANSWERS TO MASTER DISCOVERY                                                          Page 3
Q:\Asbestos\Dallas Office\Active Cases\WHITE, CHARLES\Discovery\4th Supps (various).doc

GST-EST-0181728

Corporation and Ingersoll Rand Company for an aggregate amount of $475,000.00. Plaintiffs will supplement this response as necessary.

## INTERROGATORY NO. 33:

Please list all medical expenses, if any, incurred as a result of the plaintiff/decedent alleged exposure to asbestos-containing products and the approximate date such expenses were incurred. "Medical expenses" includes, but is not limited to, all charges for care, treatment or diagnosis by a physician, nurse, or other health care specialist; all hospital costs, charges, and expenses; and all medication expenses

**ANSWER:**     Please see copies of the billing records currently in Plaintiffs' possession, attached hereto as **Exhibit "B."** Plaintiffs have incurred approximately $200,000 to $225,000 in medical expenses as a result of Mr. White's asbestos-related disesase. Plaintiff continues to undergo and incur medical expenses as a result of his asbestos-related disease. Plaintiff reserves the right to supplement this Interrogatory pursuant to Texas Rules of Civil Procedure.

## INTERROGATORY NO. 34:

If the plaintiff/decedent is making a claim for lost wages or lost earning capacity, either past or future, as a result of their alleged exposure to asbestos-containing products, please identify the factual basis for such a claim and the monetary amount claimed by the plaintiff/decedent to have been lost in the past or which they estimate will be lost in the future.

**ANSWER:**     Plaintiffs are not making a claim for lost wages.

## FOURTH SUPPLEMENTAL RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**REQUEST NO. 3:**

To the extent available, using extreme diligence, any original biological samples, tissue, paraffin blocks, slides, electron micrographs, and chest x-rays from examining and/or treating physicians, hospitals, clinics or other health care providers, to the extent they are relevant to the claims asserted.

**RESPONSE:** Plaintiff's have forwarded the pathology in their possession to Defense Liaison Counsel, Robert Thackston at Hawkins Parnell & Thackston on September 21, 2006 for review in accordance with the Case Management Order. Additionally, Plaintiffs have previously provided a medical authorization executed by Plaintiff to allow defendants to obtain these materials.

**REQUEST NO. 4:**

With respect to any plaintiff/decedent asserting a claim of cancer or other malignancy, if no pathological materials are readily available from medical providers, (as referenced in Request 3 above), an agreement stating that any pathological materials may be obtained for independent evaluation at the election of the defendants. The plaintiff must notify the defendants of any procedure that may result in the collection of pathology or other diagnostic materials and any testing done by the plaintiff or plaintiff's experts. Nothing in this order precludes multiple defendants from obtaining and testing the plaintiff's pathology or obtaining the plaintiff's other medical evidence or materials.

**RESPONSE:** Plaintiff objects to this Request to the extent that it is vague, not within the scope of discovery, and is an improper request under the Texas Rules of Civil Procedure in that it calls for Plaintiffs to create a document not currently in existence in the form of an agreement. Additionally, plaintiffs object to this request to the extent it requests the plaintiffs notify defendants of any testing or procedure that may have been performed by purely consulting experts who will not testify, and on whose opinions a testifying expert will not rely. Subject to and without waiving this objection, Plaintiff's have forwarded the pathology in their possession to Defense Liaison Counsel, Robert Thackston at Hawkins Parnell & Thackston on September 21, 2006 for review in accordance with the Case Management Order.

**REQUEST NO. 5:**

Payroll and employment records relating to employment identified in the plaintiff's work history to present time; including military service records.

**RESPONSE:** Plaintiffs object to this request to the extent that it is overly broad and unduly burdensome in that it does not limit the scope of those records requested. Subject to and without waiving this objection, plaintiffs have ordered these records and will supplement them as soon as they are received in accordance with the Texas Rules of Civil Procedure and the Case Management Order entered by this court. Plaintiffs anticipate receiving these records within the next sixty (60) days. Additionally, please see the attached authorizations to allow defendants to order these records.

## REQUEST NO. 24:

All documents that support the contention that the plaintiff/decedent lost wages or incurred lost earning capacity as a result of the matters alleged in the petition in this case.

**RESPONSE:** Plaintiff is not making a claim for lost wages.

GST-EST-018173

# SECOND SUPPLEMENTAL RESPONSES TO DEFENDANT'S MASTER REQUEST FOR DISCLOSURES FOR ALL CASES

**REQUEST NO. 194.2(d):**

The amount and any method of calculating economic damages.

**RESPONSE:** Charles White and Barbara Lorton are not making a claim for lost wages. Medical expenses will be calculated by medical bills and/or medical expert testimony. Please see copies of the billing records currently in Plaintiffs' possession, attached hereto as **Exhibit "B."** Plaintiff continues to undergo and incur medical expenses as a result of his asbestos-related disease. Plaintiff reserves the right to supplement this Interrogatory pursuant to Texas Rules of Civil Procedure.

**REQUEST NO. 194.2(f):**

For any testifying expert:

(1)     the expert's name, address, and telephone number;

(2)     the subject matter on which the expert will testify;

(3)     the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise, subject to the control of the responding party, documents reflecting such information;

(4)     if the expert is retained by, employed by, or otherwise subject to the control of the responding party:

    (a)     all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

    (b)     the expert's current resume and bibliography.

**RESPONSE:**

Dr. Jacques F. Legier
Riverside Regional Medical Center
500 J. Clyde Morris Boulevard
Newport News, Virginia 23601
757-594-2160

Dr. John C. Maddox
Riverside Regional Medical Center
500 J. Clyde Morris Boulevard
Newport News, Virginia 23601
757-594-2160

These doctors may testify, live or by deposition, concerning their review of the medical records, pathology and work history of Plaintiff and their diagnosis of asbestos-related disease in this case. These doctors may testify that Plaintiff contracted Mesothelioma as a result of exposure to asbestos. Additionally, these doctors may testify that Plaintiff's asbestos-related disease was caused by his exposure to Defendants' asbestos-containing products, the use of asbestos-containing products on Defendants' equipment or

ANSWERS TO MASTER DISCOVERY
Q:\Asbestos\Dallas Office\Active Cases\WHITE, CHARLES\Discovery\4th Supps (various).doc
Page 7

GST-EST-0181732

machinery, and/or the use of asbestos-containing products while working on Defendants' premises and/or while employed by Defendants. These experts may also testify that Plaintiff's diagnosis and symptoms were related to, and caused by, his exposure to asbestos (including minimal amounts of asbestos) and that each and every exposure contributes to asbestos-related disease. They may testify that the effects of exposure to asbestos are cumulative and that each and every exposure substantially contributed to Plaintiff's asbestos related Mesothelioma. Further, these doctors may testify concerning the increased risk of cancer faced by asbestos-exposed workers and the epidemiological link between asbestos and cancer. More specifically, these doctors may testify as to Plaintiff's increased risk of developing an asbestos-related cancer during his lifetime as a result of his exposure to Defendants' asbestos-containing products, the use of asbestos-containing products on Defendants' equipment or machinery, and/or the use of asbestos-containing products while working on Defendants' premises and/or while employed by Defendants. These doctors may testify as to the hazardous nature of asbestos and/or asbestos-containing products and as a result, that such asbestos and/or asbestos-containing products are unreasonably dangerous. These doctors may testify concerning the reasonable and necessary medical expenses that Plaintiff incurred and/or will incur in the future as a result of his asbestos-related disease. Defense counsel are in possession of numerous transcripts within which these doctors' opinions have been fully explored.

Additionally, these experts will testify about asbestos and the diseases caused by asbestos generally. These experts will testify that smoking is addictive. These experts may testify that based on epidemiological studies, Plaintiff's asbestos-related disease was caused by his exposure to Defendants' asbestos-containing products, the use of asbestos-containing products on Defendants' equipment or machinery, and/or the use of asbestos-containing products while working on Defendants' premises and/or while employed by Defendants. Additionally, these experts may testify that based on the medical and scientific literature available to Defendants, Defendants knew or should have known that asbestos-containing products could cause disease. These experts may testify as to their review of the medical and scientific literature regarding asbestos and asbestos-related diseases. These experts may testify regarding the availability of materials as substitutes for asbestos and when information concerning these substitute materials appeared in the medical and scientific literature. These experts may testify regarding exposure levels of asbestos, at what levels asbestos may cause disease, and as to when this was known in the medical and scientific literature. These experts may also testify as to their review of the documents entered into evidence in this case or reviewed pertaining to Defendants, and as to their conclusions reached therefrom that Defendants were negligent, are strictly liable, and acted with wanton and willful disregard for the rights and safety of Plaintiff. These experts may also testify as to the hazardous nature of asbestos and that asbestos-containing products are unreasonably dangerous. They may also testify that Defendants engaged in negligent and grossly negligent conduct in failing to recall their asbestos-containing products from the market or in failing to warn of the dangers of their products or the use of asbestos-containing products. Further, these experts may testify concerning the increased risk of cancer faced by asbestos-exposed workers and the epidemiological link between asbestos and cancer. More specifically, these experts may testify as to Plaintiff's increased risk of developing an asbestos-related cancer as a result of his exposure to Defendants' asbestos-containing products, the use of asbestos-containing products on Defendants' equipment or machinery, and/or the use of asbestos-containing products while working on Defendants' premises and/or while employed by Defendants and that Plaintiff's fear of cancer is a reasonable fear. These experts may testify as to what caused and/or contributed to Plaintiff's exposure to Defendants' asbestos-containing products, the use

GST-EST-0181733

of asbestos-containing products on Defendants' equipment or machinery, and/or the use of asbestos-containing products while working on Defendants' premises and/or while employed by Defendants. These experts may testify concerning fiber types of asbestos generally and that all types of asbestos fibers are capable of causing all asbestos-related diseases and all forms of asbestos-related cancers. These experts may testify regarding the asbestos content of different products and/or pieces of equipment during different periods of time. These experts may discuss the dangers of low-level exposure to asbestos and may testify that there is no safe level of exposure to asbestos. They may also testify regarding "bystander" and "household exposures" to asbestos and that these types of exposures are known to contribute to cause mesothelioma and other asbestos related diseases. These experts may testify regarding when it was known that bystander and household exposures were known to cause disease.

These doctors may testify that medical articles and journals indicated in the 1920s that asbestos could be hazardous and deadly, and in the 1930s and 1940s indicated that asbestos could cause cancer, and that it was known or knowable that asbestos was a hazardous and dangerous substance in those time frames. They may testify regarding the development of knowledge in the medical and scientific community regarding asbestos and asbestos diseases.

These doctors may testify that warnings placed on containers of asbestos-containing products, and/or asbestos equipment, and/or in technical manuals, if any, may have been inadequate to properly inform users and persons exposed of the significant hazards of asbestos inhalation.

These doctors' opinions will be based upon their review of any and all medical records and available chest x-rays and/or pathology materials, as well as their expertise in the field, including experience and training, and their review of historical and more recent medical articles and journals.

These doctors may testify that pure chrysotile asbestos, in the absence of tremolite, causes mesothelioma. These doctors may further testify that, in their opinion, chrysotile asbestos mined in the vicinity of Coalinga, California, including in Union Carbide's calidria mines, causes all of the asbestos disease caused by Canadian chrysotile.

These doctors may testify that chrysotile in asbestos-containing products is contaminated with tremolite asbestos.

Dr. Edwin Holstein
Environmental Health Associates PA
20 Park Plaza, Suite 1028
Boston MA 02116
617-357-4901

The above listed experts may testify, live or by deposition, concerning their examination of the Plaintiff and/or their review of the Plaintiff's work history, medical records, x-rays, and bills for medical services as well as their diagnosis of asbestos-related disease in this case. These doctors may testify that Plaintiff contracted Mesothelioma as a result of exposure to asbestos. They may testify concerning asbestos, the effects of asbestos on the body and any other topics related thereto. Additionally, they may testify concerning Plaintiff's increased risk of Mesothelioma as a consequence of his exposure to asbestos.

GST-EST-0181734

They may also testify that Plaintiff's asbestos-related disease was caused by his exposure to Defendants' asbestos-containing products, the use of asbestos-containing products on Defendants' equipment or machinery, and/or the use of asbestos-containing products while working on Defendants' premises and/or while employed by Defendants. They may also testify that Plaintiff incurred medical expenses as a result of his exposure to asbestos and his development of an asbestos-related disease. The doctors may testify concerning the reasonable and necessary medical expenses that Plaintiff incurred, and may incur in the future, as a result of his asbestos-related disease. They may also testify that asbestos-containing products are unreasonably dangerous due to their propensity to cause development of asbestos-related diseases. Defense counsel are in possession of numerous transcripts of the testimony within which the opinions concerning this subject have been fully explored.

These experts may testify based upon their review of Plaintiff's medical records, x-rays, and bills for medical services and that such medical bills for medical services are reasonable and necessary. These experts may testify with regard to Plaintiff's diagnosis of an asbestos-related disease, including Mesothelioma. These experts may also testify with regard to Plaintiff's increased risk of contracting lung cancer or Mesothelioma or other cancers as a result of his asbestos exposure. These experts may also testify that Plaintiff's diagnosis and symptoms were related to, and caused by, his exposure to asbestos (including minimal amounts of asbestos) and that each and every exposure contributes to asbestos-related disease. They may testify that the effects of exposure to asbestos are cumulative and that each and every exposure substantially contributed to Plaintiff's asbestos related Mesothelioma. Additionally, these experts may testify that Plaintiff's exposure to asbestos contributed to his asbestos-related disease and/or asbestos-related cancer. These experts may testify that Plaintiff required medical monitoring, treatment and/or hospitalization (and the reasonable medical expenses therefore) as a result of his exposure to asbestos, asbestos-related disease, asbestos-related cancer, the progression and/or recurrence of this cancer and general fear of cancer because of asbestos exposure.

Additionally, these experts will testify about asbestos and the diseases caused by asbestos generally. These experts will testify that smoking is addictive. These experts may testify that based on epidemiological studies, Plaintiff's asbestos-related disease was caused by his exposure to Defendants' asbestos-containing products, the use of asbestos-containing products on Defendants' equipment or machinery, and/or the use of asbestos-containing products while working on Defendants' premises and/or while employed by Defendants. Additionally, these experts may testify that based on the medical and scientific literature available to Defendants, Defendants knew or should have known that asbestos-containing products could cause disease. These experts may testify as to their review of the medical and scientific literature regarding asbestos and asbestos-related diseases. These experts may testify regarding the availability of materials as substitutes for asbestos and when information concerning these substitute materials appeared in the medical and scientific literature. These experts may testify regarding exposure levels of asbestos, at what levels asbestos may cause disease, and as to when this was known in the medical and scientific literature. They may also testify regarding "bystander" and "household exposures" to asbestos and that these types of exposures are known to contribute to cause mesothelioma and other asbestos related diseases. These experts may testify regarding when it was known that bystander and household exposures were known to cause disease. These experts may also testify as to their review of the documents entered into evidence in this case or reviewed pertaining to Defendants, and as to their conclusions reached therefrom

GST-EST-0181735

that Defendants were negligent, are strictly liable, and acted with wanton and willful disregard for the rights and safety of Plaintiff. These experts may also testify as to the hazardous nature of asbestos and that asbestos-containing products are unreasonably dangerous. They may also testify that Defendants engaged in negligent and grossly negligent conduct in failing to recall their asbestos-containing products from the market or in failing to warn of the dangers of their products or the use of asbestos-containing products. Further, these experts may testify concerning the increased risk of cancer faced by asbestos-exposed workers and the epidemiological link between asbestos and cancer. More specifically, these experts may testify as to Plaintiff's increased risk of developing an asbestos-related cancer as a result of his exposure to Defendants' asbestos-containing products, the use of asbestos-containing products on Defendants' equipment or machinery, and/or the use of asbestos-containing products while working on Defendants' premises and/or while employed by Defendants and that Plaintiff's fear of cancer is a reasonable fear. These experts may testify as to what caused and/or contributed to Plaintiff's exposure to Defendants' asbestos-containing products, the use of asbestos-containing products on Defendants' equipment or machinery, and/or the use of asbestos-containing products while working on Defendants' premises and/or while employed by Defendants. These experts may testify concerning fiber types of asbestos generally and that all types of asbestos fibers are capable of causing all asbestos-related diseases and all forms of asbestos-related cancers. These experts may testify regarding the asbestos content of different products and/or pieces of equipment during different periods of time. These experts may discuss the dangers of low-level exposure to asbestos and may testify that there is no safe level of exposure to asbestos.

These doctors may testify that medical articles and journals indicated in the 1920s that asbestos could be hazardous and deadly, and in the 1930s and 1940s indicated that asbestos could cause cancer, and that it was known or knowable that asbestos was a hazardous and dangerous substance in those time frames. They may testify regarding the development of knowledge in the medical and scientific community regarding asbestos and asbestos diseases.

These doctors may testify that warnings placed on containers of asbestos-containing products, and/or asbestos equipment, and/or in technical manuals, if any, may have been inadequate to properly inform users and persons exposed of the significant hazards of asbestos inhalation.

These doctors' opinions will be based upon their review of any and all medical records and available chest x-rays and/or pathology materials, as well as their expertise in the field, including experience and training, and their review of historical and more recent medical articles and journals.

These doctors may testify that pure chrysotile asbestos, in the absence of tremolite, causes mesothelioma. These doctors will further testify that, in their opinion, chrysotile asbestos mined in the vicinity of Coalinga, California, including in Union Carbide's calidria mines, causes all of the asbestos diseases caused by Canadian chrysotile.

These doctors may testify that chrysotile in asbestos-containing products is contaminated with tremolite asbestos.

GST-EST-018173

Frank M. Parker, III, C.I.H.
Environmental Technologies, Inc
200 Brantley Lane
Magnolia, Texas 77353-0210
281-356-6038

Dr. Edwin Holstein
Environmental Health Associates PA
20 Park Plaza, Suite 1028
Boston MA 02116
617-357-4901

The above experts are Certified Industrial Hygienists, Professional Engineers and/or Occupational Medicine Doctors who may testify about industrial hygiene and occupational medicine principles related to the circumstances of Plaintiff's exposure to Defendants' asbestos-containing products, the use of asbestos-containing products on Defendants' equipment or machinery, and/or the use of asbestos-containing products while working on Defendants' premises and/or while employed by Defendants.

These experts may testify regarding Plaintiff's exposures to asbestos at different times and may testify concerning their assessment of the various risks which were associated with such exposures. They may also testify regarding the material and characteristics of Defendants' asbestos products, release of asbestos fibers from Defendants' products, industry and regulatory protocols, constituent analysis with respect to the nature of the materials and the identity of the manufacturer of the materials, product formulae and product identification. They may further testify regarding the availability of materials as substitutes for asbestos and when information concerning these substitute materials appeared in the medical and scientific literature. These experts may also testify regarding the asbestos content of different products and/or pieces of equipment during different periods of time.

These experts may further testify concerning the conditions at Plaintiff's asbestos exposure sites based on testimony of the Plaintiff, co-workers, documents, discovery responses and/or conversations with workers. They may testify concerning asbestos hazards resulting from maintenance, repair and construction operations taking place at those sites and Defendants' failure to respond adequately or appropriately to those hazards. They may further testify that Defendants' actions constituted negligence, gross negligence, conscious indifference to others and/or indicate that defendants were aware of the substantial certainty that their actions could or would result in significant illnesses and/or deaths. They may further testify that Defendants were in violation of asbestos regulations promulgated by state governments and the United States Government, and that Defendants violated their duties under the Occupational Safety and Health Act and its implementing regulations. They may testify that Defendants' failure to comply with these laws, regulations and standards constitutes negligence and gross negligence, and was a cause of Plaintiff's injuries. They may further testify that Defendants were aware, or should have been aware, of the hazards of asbestos by the time of Plaintiff's exposure to their products, the use of asbestos-containing products on Defendants' equipment or machinery, and/or the use of asbestos-containing products while working on Defendants' premises and/or while employed by Defendants as a result of medical, scientific and industrial hygiene literature available to all Defendants.

GST-EST-0181737

These experts may also testify, based on their experience, training and education, as to the health risks associated with exposure to asbestos. They may testify regarding bystander exposure to asbestos, to asbestos and "fiber drift," and specifically that these are occupational hazards associated with asbestos and that they were significant contributing factors in the Plaintiff's asbestos exposure. They may also testify regarding "household exposures" to asbestos and that these types of exposures are known to contribute to cause mesothelioma and other asbestos related diseases. These experts may testify regarding when it was known that bystander and household exposures were known to cause disease. They may testify that the cumulative dose of asbestos that a person receives is what increases the risk of asbestos related diseases, including mesothelioma. They may testify that all exposures are substantial contributing factors to an individual's disease, and that all of Plaintiff's exposures contributed to the development of Plaintiff's mesothelioma. They may also testify that asbestos products are toxic and unreasonably dangerous, and that they are more dangerous than would be contemplated by the ordinary user with ordinary skills and characteristics common to the community. They may also testify that there are no safe levels of exposure to asbestos dust in that there is no level of exposure to asbestos that has been proven too low to cause the disease mesothelioma. They may testify further that all types of asbestos represent occupational hazards and that in the science of industrial hygiene, all types of commercial asbestos and tremolite asbestos are understood to cause all asbestos diseases, including but not limited to, malignant mesothelioma. They may testify that "dose reconstruction" or similar efforts to specifically quantify and model in numeric terms the Plaintiff's total and/or relative asbestos exposure, in the absence of measurements taken at the Plaintiff's exposure sites during the relevant periods of time, are without adequate foundation or generally accepted methodology to be considered reliable.

These experts may testify regarding the general background levels of asbestos release, bystander levels of exposure of the fiber release, and fiber release and contamination on clothing and other personal contamination. They may also testify regarding results of dust studies by analysis of using both particles per cubic foot and fibers per cubic centimeter, as well as current and past techniques used to analyze asbestos content in dust. They may testify that the levels of asbestos dust to which the Plaintiff was exposed during his working career would have likely exceeded established TLVs and PELs in many instances. These experts may discuss the dangers of low-level exposure to asbestos and may testify that there is no safe level of exposure to asbestos.

These experts have examined studies of the amount of asbestos fibers released into the breathing zone during ordinary and foreseeable operations of asbestos products. They may testify that during foreseeable uses of Defendants' asbestos products that those products released asbestos fibers into the breathing zone of workers, including but not limited to, Plaintiff, in levels that are above background. These asbestos products include dry powders that are mixed with water and sanded, pre-mixed pastes that are sanded, thermal insulation products that are cut, sawed and/or torn out, adhered gaskets that are removed in whole or in part by brushing or sanding, boards or flat sheets or tiles or siding that are cut or scored or abraded, brake linings that are ground, filed or sanded and/or blown out of drums with supplied air, and products scrap that is swept or blown or vacuumed or ripped out. They may testify that impregnated and/or encapsulated products, when disturbed or abraded, can release asbestos fibers into the breathing zone of workers, like Plaintiff, in levels that are above background. They may compare and contrast the findings with other scientific findings. They may offer opinions concerning

GST-EST-0181738

testing which has been performed on behalf of Defendants or the lack of testing on Defendants' products.

These experts may testify that dust levels measured in testing one Defendants' asbestos product would be similar to the results from another Defendant's similar product with similar ingredients.

It is anticipated, that these experts will testify that asbestos exposure of the Plaintiff arising from Defendants' asbestos products or activities involving the use of asbestos or asbestos products were substantial contributing factors in Plaintiff's overall asbestos exposure and were the result of Defendant's failure to exercise appropriate industrial hygiene controls for suppressing or reducing exposures to asbestos, including but not limited to adequately warning Plaintiff of the dangers associated with asbestos and means to protect himself. They will testify that these failures by Defendants were knowing and/or unreasonable in the time and place in which they occurred given the information that was available to Defendants, medical and scientific literature, statutes, regulations and/or based on the Defendant's actual knowledge. These experts' opinions may be based upon their review of any and all records and materials, published and or expressed opinions of other experts in the field, corporate documents, as well as their expertise in the field, including experience and training, and their review of historical and more recent scientific articles and journals as well as government regulations.

These doctors may testify that medical articles and journals indicated in the 1920s that asbestos could be hazardous and deadly, and in the 1930s and 1940s indicated that asbestos could cause cancer, and that it was known or knowable that asbestos was a hazardous and dangerous substance in those time frames. They may testify regarding the development of knowledge in the medical and scientific community regarding asbestos and asbestos diseases.

These experts may testify that pure chrysotile asbestos, in the absence of tremolite, represents an industrial hygiene hazard for all asbestos-related diseases that need to be controlled. These doctors may further testify that, in their opinion, chrysotile asbestos mined in the vicinity of Coalinga, California, including in Union Carbide's calidria mines, causes all of the asbestos disease caused by Canadian chrysotile.

These experts may testify that chrysotile in asbestos-containing products is contaminated with tremolite asbestos.

Captain William A. Lowell, USNR (Ret.)
45 Sixth Avenue
Augusta, ME 04330

Captain Lowell is an expert in the construction, operation, repair, and maintenance of naval vessels. He may testify live, or by deposition taken in this case. He may testify in plaintiffs' case in chief or in rebuttal as to U.S. Naval vessel construction, overhaul, repair and maintenance. Mr. Lowell is familiar with Navy manuals and specifications for construction and overhaul and repair of U.S. Navy vessels. He is knowledgeable concerning the use of asbestos-containing materials on board ship, work practices regarding the use of insulation products and the types of asbestos products required by various Navy specifications and manuals. Mr. Lowell may testify as to the particular products and/or equipment that was aboard the vessels upon which the plaintiff worked

GST-EST-0181739

and/or that were present at ███████████████████ ░, and as to the likelihood of exposure to asbestos from those particular products. Specifically, he will provide opinions as to the likelihood of the plaintiff's exposure to various equipment manufactured and supplied to the U.S. Navy. Mr. Lowell is familiar with and may testify concerning Navy and military specifications for the types and quantities of materials used in naval construction and repair including insulation materials. Mr. Lowell may also provide testimony regarding departure reports and ship histories regarding specific ships.

Mr. William Lowell may also testify as to the methods, manner and procedures for maintaining and repairing the propulsion plant, boilers, turbines, pumps, valves and other associated and auxiliary equipment aboard Naval vessels, including ███████████ ████████. Mr. William Lowell may testify about plaintiff's actual and potential exposure to asbestos from products and equipment aboard various ships, both military and commercial. Mr. William Lowell may testify concerning the forseeability to manufacturers of Naval equipment that its equipment would be insulated with asbestos. He may also testify regarding plaintiff's asbestos exposure to products and equipment attributable to the Defendants named in this case.

Arnold R. Brody, Ph.D.
Tulane University Medical Center
School of Medicine
Department of Pathology & Laboratory Medicine SL79
1430 Tulane Avenue
New Orleans, Louisiana 70112-2699
504-588-5224

Dr. Brody may testify as to the physiological design and function of the lungs, the effect of asbestos on the lungs and other parts of the body, and on the body's defense mechanisms. He may also testify about the irreversible effects of asbestos-related diseases and the prognosis for an asbestos-exposed individual. He may also testify concerning the scientific and medical literature on the biological and toxicological effects of asbestos written by him and others. He may testify regarding historical literature relating to asbestos related diseases, and when it was known and accepted in the medical and scientific community that asbestos could cause various diseases. He may also testify about the body's biologic responses to brief exposures to asbestos, the pathogenic effects produced by various asbestos fiber types, including chrysotile, and mechanisms of asbestos-induced diseases including fibrosis and carcinogenesis. He may further testify concerning asbestos deposition and migration in and through the lungs and body. He will discuss all types of cancer risks from asbestos exposure, including mesothelioma. He will define what "injury" means and that asbestos-related diseases are injuries. Dr. Brody may further testify as to facts and circumstances regarding the nature of the injuries and damages that are the subject of this action. Dr. Brody may testify that all exposures are substantial contributing factors to an individual's disease. Dr. Brody will testify that products which release asbestos fibers are unreasonably dangerous and that fibers will remain in the lungs until death. Dr. Brody may testify from hypothetical sets of facts and may give opinions regarding whether certain types of exposures would have substantially contributed to cause asbestos related disease, including mesothelioma. Dr. Brody may discuss the dangers of low-level exposure to asbestos and may testify that there is no safe level of exposure to asbestos. He may also testify regarding "bystander" and "household exposures" to asbestos and that these types of exposures are known to contribute to cause mesothelioma and other asbestos related diseases. He may testify regarding when it was

GST-EST-0181740

known that bystander and household exposures were known to cause disease. He will testify that smoking is addictive. Dr. Brody's testimony is based on his review and knowledge of medical literature, his education and work experience, his research, and the research of others.

Dr. Brody may also testify that it has been known for decades that asbestos can cause asbestos related diseases, including mesothelioma.

Dr. Brody's opinions will be based upon his expertise in the field, including experience and training, and his review of historical and more recent medical and scientific articles and journals.

Dr. Brody may testify that pure chrysotile asbestos, in the absence of tremolite, causes mesothelioma. Dr. Brody may further testify that, in his opinion, chrysotile asbestos mined in the vicinity of Coalinga, California, including in Union Carbide's calidria mines, causes all of the asbestos disease caused by Canadian chrysotile.

Dr. Brody may testify that chrysotile in asbestos-containing products is contaminated with tremolite asbestos.

Dr. Brody will utilize teaching slides during his testimony. These slides have been produced to defendants in asbestos cases on numerous occasions. Additional copies can be made available upon reasonable request.

Captain Francis J. Burger, USNR (ret)
3101 Les Arbres Lane
Ocean Springs, Mississippi 39564

Captain Burger is a retired U.S. Navy Line Officer and Engineer and Engineering Duty Officer, as well as an Engineer/Project Manager in Naval Architecture and Marine Engineering. He is knowledgeable of and may testify to the use of asbestos-containing materials on board ship, work practices regarding the use of insulation and other asbestos-containing products and the types of asbestos products required by various manufacturer specifications and manuals, as well as work performed in naval shipyards. He is familiar with and may testify regarding the types and quantities of materials used in naval construction and repair including insulation, gaskets and packing materials. Captain Burger will testify regarding the use of asbestos in the United States Navy, and aboard vessels. He may testify regarding the use of asbestos in all different kinds of equipment used on Naval ships and other vessels. He may testify that different pieces of equipment used on these ships and vessels were, in fact, asbestos products. He may testify that asbestos was a component of various pieces of equipment and was necessary for the proper operation of the equipment. He may testify that asbestos insulation, asbestos gaskets and asbestos packing were component parts of different pieces of equipment. Captain Burger may further testify that manufacturers of Naval equipment specified and required the use of asbestos on their equipment. He may testify that these manufactures would have known and foreseen that asbestos was a required component of their equipment. He may further testify that these pieces of equipment were not complete products without the asbestos components. Mr. Burger may testify as to U.S. Naval vessel construction, overhaul, repair and maintenance. Mr. Burger is familiar with Navy manuals and specifications for construction and overhaul and repair of U.S. Navy vessels.

GST-EST-018174

Captain Burger will further testify regarding Naval practices and procedures. He may testify that the Navy relied on the expertise of the manufacturers of products and equipment when determining what was used on Naval vessels. He may testify that that manufacturers instructed the Navy on how much asbestos was necessary for their particular equipment and often created drawings and instructions that specified the asbestos insulation and asbestos gaskets and packing requirements for each piece of equipment. He may testify that the manufacturers were also required by the Navy to provide technical manuals with their equipment, and that these manuals were supposed to contain warnings regarding all potential dangers associated with the equipment and its components. He may testify that the manufacturers should have included warnings regarding the dangers of asbestos in these technical manuals. He may testify that equipment manufactures could have always warned about the dangers of asbestos, had they wanted to do so.

Mr. Burger is expected to offer testimony regarding U.S. Navy ship design and engineering, particularly with regard to the use of asbestos containing insulation, gaskets and packing, aboard ship and in various applications in marine engineering operations, including without limitation, boilers, turbines, valves, pumps, distilling plants, steam lines, insulation, and auxiliary systems and equipment. Mr. Burger may also testify as to the authenticity and meaning of records, specifications, and other documents pertaining to naval ship construction and operation. He may offer the opinion that Navy inspection reports, Navy Bureau of Ships documents and other similar records are reliable and authoritative sources of information for establishing the manufacturers of various pieces of equipment aboard a particular U.S. Navy vessel or class of vessels. Mr. Burger may also provide general testimony concerning the field of marine engineering and machinery in general as it relates to the subject of the manufacture, design, construction, maintenance, and overhaul of U.S. Navy and commercial vessels, shipyard operations, including major ship construction and overhaul, as well as the use of asbestos and asbestos containing materials during such activities. In addition, Mr. Burger may also offer testimony concerning the level of supervision and control exercised by the U.S. Navy over the design and manufacture of equipment intended for installation on U.S. Navy vessels.

Mr. Burger may also testify regarding the construction and operation of the United States Navy ships, ████████████████████████████████████████████████████████ ████████████████████████████████████████. Mr. Burger may also testify regarding ████████████          █    █████ ████████████████████████f.

Mr. Burger may also testify as to the methods, manner and procedures for maintaining and repairing the propulsion plant, boilers, turbines, pumps, distilling plants, valves and other associated and auxiliary equipment aboard Naval vessels, ████████████ █████████████████████████████ Mr. Burger may testify about Plaintiff's actual and potential exposure to asbestos in the Navy and aboard various ships, both military and commercial. Mr. Burger may testify concerning the forseeability to manufacturers of Naval equipment that its equipment would be insulated with asbestos. He may also testify regarding Plaintiff's asbestos exposure to products and equipment attributable to the Defendants named in this case.

GST-EST-0181742

Mr. Burger also may testify as to the specifications, including the types and grades, of which insulation, gasket and packing materials were used on naval vessels. Mr. Burger may testify regarding departure reports and ship histories regarding specific ships.

He may testify regarding the working conditions on Naval vessels and the procedures and conditions involved in work on and around equipment. He may testify based on his personal experience that work on different pieces of Naval equipment involved the disturbance of asbestos insulation, and asbestos gaskets and packing. He may testify that disturbance of the asbestos components of these pieces of equipment would release visible dust into the air, and into the breathing zone of workers in the area.

He may testify regarding the Plaintiffs particular job duties and responsibilities and explain how these responsibilities may have involved the disturbance of asbestos components on various different pieces of equipment. He may also testify about the characteristics of Naval vessels in general and the particular vessels that Plaintiff was aboard. ███████████

Captain Burger's testimony will be based upon his experience and training and may also be based on his review of Naval documents and his review of depositions of the Plaintiff, co-workers, or other individuals.

**Corporate Witnesses and Other Witnesses:** The following witnesses may offer expert as well as factual testimony

Theodore Cichocki (deceased)
35 Woodhollow Drive
Schererville, Indiana 46375

Mr. Cichocki, a pipefitter for forty (40) years that worked regularly with Garlock asbestos-containing gaskets, may testify by deposition taken on July 17, 2001, regarding the matters described in that deposition. These matters include, but are not limited to, the nature of and frequency of adherence of Garlock asbestos-containing gaskets onto the surfaces of pipe flanges, the methods required or involved in the removal of adhered Garlock asbestos-containing gaskets, the conditions visibly created by the removal of Garlock asbestos-containing gaskets from the flanges of steam pipes, Mr. Cichocki's physical and emotional condition with pleural mesothelioma proximately caused by exposure to Garlock asbestos-containing gaskets. Mr. Cichocki, through his work with Garlock asbestos-containing gaskets over four decades, has expertise regarding Garlock asbestos-containing gaskets arising through skill, experience, acquired knowledge and training. Counsel for Garlock, Inc. has a copy of this deposition of Mr. Cichocki that it took. Mr. Cichocki will testify that Garlock asbestos-containing gaskets strongly adhere to the surfaces of pipe flanges. He will testify that in working with Garlock asbestos-containing gaskets, use of vigorous wire brushing is necessary to remove adhered Garlock asbestos gaskets. He will testify that studies purporting to show Garlock asbestos-containing gaskets being removed from pipe flanges in one piece (rather than in pieces separated and adhered onto opposite sides of pipe flange surfaces, do not accurately reflect and are not substantially similar to the conditions of Garlock asbestos-containing gaskets after their use in high-temperature industrial applications. He will testify that a videotape conducted by MAS, and described in the deposition, that reflects a pipefitter's use of wire brushing to remove adhered Garlock asbestos-containing gaskets,

GST-EST-0181743

is an accurate portrayal of the conditions of Garlock asbestos-containing gaskets encountered in the field, the methods necessary for removing them, and visible dust created by the removal of Garlock asbestos-containing gaskets.

William "Bill" Plummer (deceased)
413 East Springdale
Grand Prairie, Texas 75052

Mr. Plummer, a machinist mate for twenty-six (26) years who regularly worked with Garlock asbestos-containing gaskets, may testify by trial testimony give on August 22, 2001, and August 29, 2001, regarding the matters described in the trial transcript. These matters include, but are not limited to, the nature and frequency of adherence of Garlock asbestos-containing gaskets onto the surfaces of pipe flanges, the methods required or involved in the removal of adhered Garlock asbestos-containing gaskets, the conditions visibly created by the removal of Garlock asbestos-containing gaskets from the flanges of low temperature and low pressure pipe lines. Mr. Plummer may also testify as to his physical, mental and emotional condition resulting from pleural mesothelioma caused by his exposure to Garlock asbestos-containing gaskets. Mr. Plummer, through his work with Garlock asbestos-containing gaskets over a twenty-six (26) year period has expertise regarding Garlock asbestos-containing gaskets arising through skill, experience, acquired knowledge and training. He will testify that studies purporting to show Garlock asbestos-containing gaskets being removed from pipe flanges in one piece do not accurately reflect and are not substantially similar to the conditions of Garlock asbestos-containing gaskets after their use in high temperature applications. He will testify that a videotaped simulation conducted by Fred Boelter, viewed by Mr. Plummer during trial, that allegedly reflects the typical procedures to remove adhered Garlock asbestos-containing gaskets, is an inaccurate portrayal of the conditions of Garlock asbestos-containing gaskets encountered in the Navy, the methods necessary for removing the, and visible dust created by the removal of Garlock asbestos-containing gaskets.

William Cunningham
4028 Swarthmore,
Houston, Texas 77005
713-661-6509.

Mr. Cunningham will testify regarding the matters in his deposition taken on May 31, 1989, In Re: All Asbestos Litigation, Master File, No. 86-L-1827 In the Circuit Court for Madison County, Illinois, which is available for inspection and copying upon reasonable request.

Thomas Patrick Norris
c/o Union Carbide Corp
Mr. Norris will testify regarding his experience with Union Carbide. Please see his deposition in Gravitt v. Bondex International, No 48 191131 02, Tarrant County, Texas, August 7, 2002.

The following are Union Carbide persons with knowledge of relevant facts, who will appear by **prior written deposition** at any all trials against Union Carbide, some of whom will offer expert testimony and some of whom will offer factual testimony. Most of the transcripts were provided by Union Carbide counsel of record as witness statements, party opponent admissions or admissions against interest. Many of the

GST-EST-018174

witnesses are unavailable for trial, but the most recent contact information would be within the care, custody or control of Union Carbide. They may be contacted by and through the attorney of record who represented them at the deposition:

Siobhan Handley
Orrick, Herrington & Sutcliffe, LLP
666 Fifth Avenue
New York, New York 10103-0001
212-506-5000 (telephone)
212-506-5151 (facsimile)

| | | |
|---|---|---|
| John Meyers | Carl Martino | Robert E. Peele |
| Mark Van Baalen | Howard Stephens | Myron Bennett |
| Newell Bolton | Paul Spoonamore | Edward T. Kleber |
| Ed DeBor | Richard J. Sexton | James Rawlings |
| Carl Durnehl | Gran Townsend | Harrison Rhodes |
| Allen Gibbs | William Paul Woods | Ian Sayers |
| Herb Giffens | Bert K. Barton | William Thurber |
| Thomas Hall | Joseph O. Keeler | John Walsh |
| Edward Ilgren | Roy E. Joyner | Paul W. McDaniel |
| Blair Ingalls | Sam L. Footer | Leonel Trevino |
| Newton Ketchum | William Neal | Douglas Merrill |
| Hilton Lewinsohn | Thomas Norris | Robert E. Byrne |

Anthony Pantaleoni
c/o Crane Co.
Mr. Pantaleoni, corporate representative of Crane Co, will testify regarding his experience with Crane Co., Crane Co. knowledge and conduct, and Crane Co. products. Please see his deposition in Robert Baxter v. Alfa Laval Inc, et al, CA NO – 05-4314, Commonwealth of Massachusetts, Middlesex, SS, June 14, 2006.

Alan West
C/O: Yarway Corporation.
Mr. West, corporate representative of Yarway, will testify regarding his experience with Yarway, Yarway knowledge and conduct, and Yarway products. Please see his deposition in Robert Baxter v. Alfa Laval Inc, et al, CA NO – 05-4314, Commonwealth of Massachusetts, Middlesex, SS, June 1, 2006.

Robert Marecek (Librarian & Custodian of Records for the N.S.C.)
National Safety Council Office
1121 Spring Lake Drive
Itasca, Illinois 60143-3201
630-285-1121

Mr. Marecek will testify live or by deposition regarding the storage retention, authenticity and business records and/or ancient nature of National Safety Council (NSC) documents as well as different companies who were members of the National Safety Council. He may also testify regarding the distribution of NSC documents to members of the NSC. Copies of Mr. Marecek's prior deposition testimony in Plaintiff's possession will be made available for inspection upon request. Please see, for example, his deposition in

GST-EST-0181745

Anderson v. Amoco, et al, cause number 00-10-06613, February 7th, 2003, In the 9th Judicial District, Montgomery County, Texas.

Sally J. Wilke (Custodian of IHF documents)
Industrial Health Foundation
34 Penn Circle West
Pittsburgh, PA 15206

Ms. Wilke will testify live or by deposition regarding the storage, retention, authenticity and business records and/or ancient nature of Industrial Hygiene Foundation (FKA Air Hygiene Foundation, NKA Industrial Health Foundation, collectively referred to here as IHF) documents as well as different companies who were members of the IHF. She may also testify regarding the distribution of IHF documents to members of the IHF. Copies of Ms. Wilke's prior deposition testimony in Plaintiff's possession will be made available for inspection upon request. Please see her depo in King v. Allied Signal, et al, cause number 2424C-03, January 8th, 2000, in the Circuit Court for the City of Newport News, Virginia.

Doris Fagan (Custodian of ATI documents)
c/o Asbestos Textile Institute

Ms. Fagan will testify live or by deposition regarding the storage retention, authenticity and business records and/or ancient nature of Asbestos Textile Institute (ATI) documents as well as different companies who were members of the ATI. She may also testify regarding the distribution of ATI documents to members of the ATI. Copies of Ms. Fagan's prior deposition testimony in Plaintiff's possession will be made available for inspection upon request. Please see her deposition in In Re Asbestos Cases, NO. 76-1206-2-D, District Court, County of Boulder, State of Colorado, May 23, 1979.

All witnesses listed by all Defendants.

All witnesses listed in Plaintiff's Answers to Interrogatories and any and all supplements and/or amendments thereto.

All witnesses deposed in this case.

All witnesses listed in any deposition taken in this case.

Any physician who has examined and/or treated Plaintiff.

Any and all records custodians, live or by deposition upon written questions.

Any witness necessary for rebuttal.

GST-EST-0181746

08/05/2006 11:07 FAX                  ☒002/

LEXISNEXIS' FILE & SERVE
12466697
E-SERVICE
Sep 26 2006
4:10PM

## AFFIDAVIT OF AUTHENTICATION OF BILLING RECORDS
## AND OF REASONABLENESS AND NECESSITY OF SERVICES

**RECORDS PERTAINING TO:** CHARLES WHITE; DOB: ▮1942; SS#: ▮5981

**RECORDS REQUESTED:** ANY AND ALL BILLING RECORDS FROM ALL DATES OF TREATMENT

**CUSTODIAN:** CHARLES W. BENNETT, M.D. - BILLING

BEFORE ME, the undersigned authority personally appeared _____*Charles Bennett*_____
who, being by me duly sworn, deposed as follows:

My name is _____*Charles Bennett*_____ I am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts therein stated.

I am the custodian of records of CHARLES W. BENNETT, M.D. - BILLING

I am the custodian of Billing Records for CHARLES W. BENNETT, M.D. - BILLING. Attached to this affidavit are records that provide an itemized statement of the service and the charge for the service that CHARLES W. BENNETT, M.D. - BILLING provided to the above named individual. The attached records are part of this affidavit. These records are kept in the regular course of business, and it was the regular course of business for an employee or representative of CHARLES W. BENNETT, M.D. - BILLING, with knowledge of the information recorded, to make the record or transmit information thereof to be included in such record. The records were made at or near the time or reasonably soon after the time that the service was provided.

The full amount of charges on these records for treatment rendered for the time period requested was $ *as noted*. These charges were necessary in connection with the treatment of the above named person.
*on records $1,965.00 ⊕*

I am familiar with the charges rendered in the vicinity in which they were incurred. I consider these charges to be reasonable and customary for like or similar services. The amount charged for the service was reasonable at the time and place that the service was provided. The records attached hereto are the original or exact duplicates of the original.

THE RECORDS ATTACHED HERETO ARE TRUE, CORRECT AND COMPLETE.

_____*Charles Bennett*_____
CUSTODIAN OF RECORD

SWORN TO AND SUBSCRIBED before me on the __8__ day of __June__, 20_06_.

_____
NOTARY PUBLIC IN AND FOR THE STATE OF MD
My Commission expires __8-1-06__

Order No. 01-34768-004

*[Notary seal: CALVERT CO. NOTARY PUBLIC THERESA H. BROUILLETTE]*

PLAINTIFF'S
EXHIBIT
B
blumberg

06/07/86

PATIENT PROCEDURE HISTORY BY DT SERVICE
DRS. BENNETT AND BATONE P.A.
Accounts 5693 - 5693   All Dates
File : atprohist.dat

Page   1

| Acct | Date | Dep # | Name | Dr # | Procedure | Diag | Units | Charge |
|------|------|-------|------|------|-----------|------|-------|--------|



34768-4

Charles W. Bennett, M.D. - Billing-00001

GST-EST-0181748

| Acct | Date | Dep # | Name | Dr # | Procedure | Diag | Units | Charge |
|------|------|-------|------|------|-----------|------|-------|--------|

34768-4

| Acct | Date | Dep # | Name | Dr # | Procedure | Diag | Units | Charge |
|------|------|-------|------|------|-----------|------|-------|--------|



GST-EST-0181750

## AFFIDAVIT OF AUTHENTICATION OF BILLING RECORDS
## AND OF REASONABLENESS AND NECESSITY OF SERVICES

**RECORDS PERTAINING TO: CHARLES WHITE; DOB:** ▮1942; **SS#:** ▮S981

**RECORDS REQUESTED:** ANY AND ALL BILLING RECORDS FROM ALL DATES OF TREATMENT

**CUSTODIAN: M. BLAIR MARSHALL, M.D. - BILLING**

BEFORE ME, the undersigned authority personally appeared _STEPHANIE MARTIN_
who, being by me duly sworn, deposed as follows:

My name is _STEPHANIE MARTIN_ I am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts therein stated.

I am the custodian of records of M. BLAIR MARSHALL, M.D. - BILLING

I am the custodian of **Billing Records** for **M. BLAIR MARSHALL, M.D. - BILLING.** Attached to this affidavit are records that provide an itemized statement of the service and the charge for the service that **M. BLAIR MARSHALL, M.D. - BILLING** provided to the above named individual. The attached records are part of this affidavit. These records are kept in the regular course of business, and it was the regular course of business for an employee or representative of **M. BLAIR MARSHALL, M.D. - BILLING,** with knowledge of the information recorded, to make the record or transmit information thereof to be included in such record. The records were made at or near the time or reasonably soon after the time that the service was provided.

The full amount of charges on these records for treatment rendered for the time period requested was $_____. These charges were necessary in connection with the treatment of the above named person.

I am familiar with the charges rendered in the vicinity in which they were incurred. I consider these charges to be reasonable and customary for like or similar services. The amount charged for the service was reasonable at the time and place that the service was provided. The records attached hereto are the original or exact duplicates of the original.

THE RECORDS ATTACHED HERETO ARE TRUE, CORRECT AND COMPLETE.

_Stephanie Martin_
CUSTODIAN OF RECORD

SWORN TO AND SUBSCRIBED before me on the 28TH day of JUNE , 20 06 .

_Abel Jill_
NOTARY PUBLIC IN AND FOR THE STATE OF DC
My Commission expires ᴍᵃᵧ 31, 2011 .

[Notary seal: SARAH L. TILLMAN — NOTARY PUBLIC — DISTRICT OF COLUMBIA]

Order No. 01-34768-006

CHARLES WHITE                0.00

05/27/06   6480601

BC/BS MD

CHARLES WHITE
████████████
HOLLYWOOD, MD 20636



CONTINUED ON NEXT PAGE

34768-6

M. Blair Marshall, M.D.-Billing-00001

GST-EST-0181752

CHARLES WHITE                    0.00

06/27/06    6480601

BC/BS MD

CHARLES WHITE

HOLLYWOOD, MD 20636



CONTINUED ON NEXT PAGE

34768-6

M. Blair Marshall, M.D.-Billing-00002

GST-EST-0181753

CHARLES WHITE                    0.00

06/27/06    6480601

2C/BS MD

CHARLES WHITE
████████████████
HOLLYWOOD, MD 20636



CONTINUED ON NEXT PAGE

M. Blair Marshall, M.D.-Billing-00003

GST-EST-0181751

CHARLES WHITE          0.00

06/27/06    6480601

BC/BS MD

CHARLES WHITE

HOLLYWOOD,MD 20636



CONTINUED ON NEXT PAGE

34768-6

M. Blair Marshall, M.D.-Billing-00004

GST-EST-0181755

CHARLES WHITE                 0.00

06/27/06    6489601

BC/BS MD

CHARLES WHITE

HOLLYWOOD, MD 20636



CONTINUED ON NEXT PAGE

M. Blair Marshall, M.D.-Billing-00005

GST-EST-0181756

CHARLES WHITE                    0.00

06/27/06    6480601

BC/BS MD

CHARLES WHITE

HOLLYWOOD,MD 20636



CONTINUED ON NEXT PAGE

34768-6

M. Blair Marshall, M.D.-Billing-00006

GST-EST-0181757

CHARLES WHITE                0.00

06/27/06      5480601

BC/BS MD

CHARLES WHITE

HOLLYWOOD, MD 20636



CONTINUED ON NEXT PAGE

34768-6

M. Blair Marshall, M.D.-Billing-00007

GST-EST-0181758

CHARLES WHITE                    0.00

06/27/06    6480601

BC/BS MD

CHARLES WHITE ███████
HOLLYWOOD, MD 20636



CONTINUED ON NEXT PAGE

M. Blair Marshall, M.D.-Billing-00008

GST-EST-0181759

CHARLES WHITE                    0.00

05/27/06    6480601

BC/BS MD

CHARLES WHITE ████████████
HOLLYWOOD,MD 20636



CONTINUED ON NEXT PAGE

34768-6

M. Blair Marshall, M.D.-Billing-00009

GST-EST-0181760

CHARLES WHITE                    0.00

06/27/06    6480601

BC/BS MD

CHARLES WHITE ████████
HOLLYWOOD, MD 20636



GST-EST-018176



GEORGETOWN UNIVERSITY HOSPITAL
PO BOX 631805
BALTIMORE, MD
410-555-2424
TBI # 522518584

| TYPE OF BILL | DATE OF BILL | DATE OF PREV. BILL |
|---|---|---|
| CYCLE INS. | 02/21/06 | 02/16 |

B   R   PATIENT NAME
WHITE , CHARLES

GUARANTOR NAME AND ADDRESS

CHARLES WHITE
HOLLYWOOD MD 20636

| | INSURANCE COMPANY NAME | GROUP NUMBER | POLICY NUMBER |
|---|---|---|---|
| 1 | BC CFS MD BSC | 2 | KWB90104304 |

MARSHALL, BLAIR

FOR PATIENT QUESTIONS REGARDING THIS BILL
PLEASE CONTACT CUSTOMER SERVICE 202-444-1400.

| PATIENT NUMBER | PLEASE REFER TO PATIENT NUMBER ON ALL INQUIRIES AND CORRESPONDENCE. | ADDITIONAL PATIENT BILLING MAY BE NECESSARY FOR ANY CHARGES NOT POSTED WHEN THIS STATEMENT WAS PREPARED, OR IF INSURANCE CARRIERS DO NOT PAY ANY PART OF THE AMOUNTS SHOWN UNDER ESTIMATED INSURANCE COVERAGE. |
|---|---|---|

GEORGETOWN UNIVERSITY HOSPITAL
BALTIMORE, MD

GST-EST-0181762



| TYPE OF BILL | DATE OF BILL | DATE OF PREV. BILL | | GEORGETOWN UNIVERSITY HOSPITAL<br>PO BOX 631095<br>BALTIMORE, MD<br>410-833-2424<br>FED # 528219526 | | PAGE NO.<br>1 |
|---|---|---|---|---|---|---|
| CYCLE | 02/16/06 | | | | | HOSP. NO. |
| INS. | | | | | | |

B   R   PATIENT NAME
WHITE , CHARLES

| GUARANTOR NAME AND ADDRESS | CHARLES WHITE<br>HOLLYWOOD MD 20636 | | INSURANCE COMPANY NAME | GROUP NUMBER | POLICY NUMBER |
|---|---|---|---|---|---|
| | | | BC CFS MD BSC | 2 | KWB90104304 |
| | | | MARSHALL, BLAIR | | |

AMOUNT OF PAYMENT   $

| DATE OF SERVICE | DESCRIPTION OF HOSPITAL SERVICES | SERVICE CODE | TOTAL CHARGES | EST. COVERAGE INS.CO. NO. 1 | EST. COVERAGE INS.CO. NO. 2 | EST. COVERAGE INS.CO. NO. 3 | EST. COVERAGE INS.CO. NO. 4 | PATIENT AMOUNT |
|---|---|---|---|---|---|---|---|---|

FOR PATIENT QUESTIONS REGARDING THIS BILL
PLEASE CONTACT CUSTOMER SERVICE 202-444-1400.

| PATIENT NUMBER | PLEASE REFER TO PATIENT NUMBER ON ALL INQUIRIES AND CORRESPONDENCE. | | ADDITIONAL PATIENT BILLING MAY BE NECESSARY FOR ANY CHARGES NOT POSTED WHEN THIS STATEMENT WAS PREPARED, OR IF INSURANCE CARRIERS DO NOT PAY ANY PART OF THE AMOUNTS SHOWN UNDER ESTIMATED INSURANCE COVERAGE. | | |
|---|---|---|---|---|---|

GEORGETOWN UNIVERSITY HOSPITAL
BALTIMORE, MD



| | | | GEORGETOWN UNIVERSITY HOSPITAL | | | | PAGE NO. |
|---|---|---|---|---|---|---|---|
| TYPE OF BILL | DATE OF BILL | DATE OF PREV.BILL | PO BOX 631505 BALTIMORE, MD 410 933-2424 REF # 522288864 | | | | 1 |
| FINAL | 06/14/06 | | | | | | RMEP.NO. |
| INS. | | | | | | | |

| B S | PATIENT NAME |
|---|---|
| WHITE ,CHARLES | |

| GUARANTOR NAME AND ADDRESS | CHARLES WHITE HOLLYWOOD MD 20636 | | INSURANCE COMPANY NAME | GROUP NUMBER | POLICY NUMBER |
|---|---|---|---|---|---|
| | | | BC CFS MD BSC | 2 | KWB90104304 |
| | | | | | |

| | AMOUNT OF PAYMENT | $ |
|---|---|---|

| DATE OF SERVICE | DESCRIPTION OF HOSPITAL SERVICES | SERVICE CODE | TOTAL CHARGES | EST. COVERAGE INS.CO. NO. 1 | EST. COVERAGE INS.CO. NO. 2 | EST. COVERAGE INS.CO. NO. 3 | EST. COVERAGE INS.CO. NO. 4 | PATIENT AMOUNT |
|---|---|---|---|---|---|---|---|---|

| PATIENT NUMBER | PLEASE REFER TO PATIENT NUMBER ON ALL INQUIRIES AND CORRESPONDENCE. | ADDITIONAL PATIENT BILLING MAY BE NECESSARY FOR ANY CHARGES NOT POSTED WHEN THIS STATE-MENT WAS PREPARED, OR IF INSURANCE CARRIERS DO NOT PAY ANY PART OF THE AMOUNTS SHOWN UNDER ESTIMATED INSURANCE COVERAGE. |
|---|---|---|

34768-6

M. Blair Marshall, M.D.-Billing-00013

GST-EST-0181764



| | GEORGETOWN UNIVERSITY HOSPITAL | | PAGE NO. |
| | PO BOX 631605 | | 2 |
| TYPE OF BILL | DATE OF BILL | DATE OF PREV.BILL | BALTIMORE, MD | | | HOSP.NO. |
| FINAL | 06/14/06 | | 410-983-2424 | | | |
| INS. | | | FED # 522218387 | | | |

B    S    PATIENT NAME
WHITE , CHARLES

| | | INSURANCE COMPANY NAME | GROUP NUMBER | POLICY NUMBER |
| GUARANTOR NAME AND ADDRESS | CHARLES WHITE | BC CFS MD BSC | 2 | XWB90104304 |
| | HOLLYWOOD MD 20636 | | | |

| | | | | | AMOUNT OF PAYMENT | $ |

| DATE OF SERVICE | DESCRIPTION OF HOSPITAL SERVICES | SERVICE CODE | TOTAL CHARGES | EST. COVERAGE INS.CO. NO. 1 | EST. COVERAGE INS.CO. NO. 2 | EST. COVERAGE INS.CO. NO. 3 | EST. COVERAGE INS.CO. NO. 4 | PATIENT AMOUNT |

PATIENT NUMBER    PLEASE REFER TO PATIENT NUMBER ON ALL INQUIRIES AND CORRESPONDENCE.

ADDITIONAL PATIENT BILLING MAY BE NECESSARY FOR ANY CHARGES NOT POSTED WHEN THIS STATEMENT WAS PREPARED, OR IF INSURANCE CARRIERS DO NOT PAY ANY PART OF THE AMOUNTS SHOWN UNDER ESTIMATED INSURANCE COVERAGE.

34768-6

M. Blair Marshall, M.D.-Billing-00014

GST-EST-0181765



GEORGETOWN UNIVERSITY HOSPITAL
PO BOX 631805
BALTIMORE, MD
410-955-2424
REF # 522218584

PAGE NO. 3

HOSP.NO.

| TYPE OF BILL | DATE OF BILL | DATE OF PREV.BILL |
|---|---|---|
| FINAL | 06/14/06 | |
| INS. | | |

B S PATIENT NAME
WHITE ,CHARLES

| GUARANTOR NAME AND ADDRESS | | INSURANCE COMPANY NAME | GROUP NUMBER | POLICY NUMBER |
|---|---|---|---|---|
| CHARLES WHITE | 1 | BC CFS MD BSC | 2 | KWB90104304 |
| HOLLYWOOD MD 20636 | | | | |

AMOUNT OF PAYMENT $

| DATE OF SERVICE | DESCRIPTION OF HOSPITAL SERVICES | SERVICE CODE | TOTAL CHARGES | EST. COVERAGE INS.CO. NO. 1 | EST. COVERAGE INS.CO. NO. 2 | EST. COVERAGE INS.CO. NO. 3 | EST. COVERAGE INS.CO. NO. 4 | PATIENT AMOUNT |
|---|---|---|---|---|---|---|---|---|

PATIENT NUMBER — PLEASE REFER TO PATIENT NUMBER ON ALL INQUIRIES AND CORRESPONDENCE.

ADDITIONAL PATIENT BILLING MAY BE NECESSARY FOR ANY CHARGES NOT POSTED WHEN THIS STATEMENT WAS PREPARED, OR IF INSURANCE CARRIERS DO NOT PAY ANY PART OF THE AMOUNTS SHOWN UNDER ESTIMATED INSURANCE COVERAGE.

34768-6

M. Blair Marshall, M.D.-Billing-00015

GST-EST-0181766



GEORGETOWN UNIVERSITY HOSPITAL
PO BOX 631905
BALTIMORE, MD
410 955-2424
FEI # -522219584

| TYPE OF BILL | DATE OF BILL | DATE OF PREV.BILL |
|---|---|---|
| FINAL | 06/14/06 | |
| INS. | | |

PAGE NO. 4

HOSP.NO.

B  S  PATIENT NAME
WHITE ,CHARLES

GUARANTOR NAME AND ADDRESS

CHARLES WHITE

HOLLYWOOD MD 20636

| | INSURANCE COMPANY NAME | GROUP NUMBER | POLICY NUMBER |
|---|---|---|---|
| 1 | BC CFS MD BSC | 2 | KWB90104304 |

AMOUNT OF PAYMENT   $

| DATE OF SERVICE | DESCRIPTION OF HOSPITAL SERVICES | SERVICE CODE | TOTAL CHARGES | EST. COVERAGE INS.CO. NO. 1 | EST. COVERAGE INS.CO. NO. 2 | EST. COVERAGE INS.CO. NO. 3 | EST. CONTRACT INS.CO. NO. 4 | PATIENT AMOUNT |
|---|---|---|---|---|---|---|---|---|

PATIENT NUMBER

PLEASE REFER TO PATIENT NUMBER ON ALL INQUIRIES AND CORRESPONDENCE.

ADDITIONAL PATIENT BILLING MAY BE NECESSARY FOR ANY CHARGES NOT POSTED WHEN THIS STATEMENT WAS PREPARED, OR IF INSURANCE CARRIERS DO NOT PAY ANY PART OF THE AMOUNTS SHOWN UNDER ESTIMATED INSURANCE COVERAGE.

34768-6

M. Blair Marshall, M.D.-Billing-00016

GST-EST-0181767



| ACT # | | | GEORGETOWN UNIVERSITY HOSPITAL | | | PAGE NO. |
|---|---|---|---|---|---|---|
| TYPE OF BILL | DATE OF BILL | DATE OF PREV.BILL | PO BOX 631905 | | | 3 |
| FINAL | 06/14/06 | | BALTIMORE, MD | | | PROF.ID. |
| INS. | | | 410-933-2424 | | | |
| | | | FED # 522114584 | | | |

| B | S | PATIENT NAME |
|---|---|---|
| WHITE ,CHARLES | | |

| | | | | | | OTHER | INSURANCE COMPANY NAME | GROUP NUMBER | POLICY NUMBER |
|---|---|---|---|---|---|---|---|---|---|
| GUARANTOR NAME AND ADDRESS | CHARLES WHITE | | | | | 1 | BC CFS MD BSC | 2 | KWB90104304 |
| | HOLLYWOOD MD 20636 | | | | | | | | |

| | | | | | | | AMOUNT OF PAYMENT | $ | |

| DATE OF SERVICE | DESCRIPTION OF HOSPITAL SERVICES | SERVICE CODE | TOTAL CHARGES | EST. COVERAGE INS.CO. NO. 1 | EST. COVERAGE INS.CO. NO. 2 | EST. COVERAGE INS.CO. NO. 3 | EST. COVERAGE INS.CO. NO. 4 | PATIENT AMOUNT |
|---|---|---|---|---|---|---|---|---|

| PATIENT NUMBER | PLEASE REFER TO PATIENT NUMBER ON ALL REQUISITES AND CORRESPONDENCE. | | ADDITIONAL PATIENT BILLING MAY BE NECESSARY FOR ANY CHARGES NOT POSTED WHEN THIS STATE-MENT WAS PREPARED, OR IF INSURANCE CARRIERS DO NOT PAY ANY PART OF THE AMOUNTS SHOWN UNDER ESTIMATED INSURANCE COVERAGE. | | | | | |

34768-6

M. Blair Marshall, M.D.-Billing-00017

GST-EST-0181768



| | | | GEORGETOWN UNIVERSITY HOSPITAL | | | | | | | | | MODE NO. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | PO BOX 631905 | | | | | | | | | 0 |
| TYPE OF BILL | DATE OF BILL | DATE OF PREV.BILL | BALTIMORE, MD | | | | | | | | | |
| FINAL | 06/14/06 | | 410 938-2424 | | | | | | | | | HOSP.NO. |
| INS. | | | FEI # 522218584 | | | | | | | | | |

| B | S | PATIENT NAME | | |
|---|---|---|---|---|
| WHITE, CHARLES | | | | |

| GUARANTOR NAME AND ADDRESS | CHARLES WHITE | INSURANCE COMPANY NAME | GROUP NUMBER | POLICY NUMBER |
|---|---|---|---|---|
| | HOLLYWOOD MD 20636 | BC CFS MD BSC | 2 | KWB90104304 |

| | | | | | | | | AMOUNT OF PAYMENT | 3 | |
|---|---|---|---|---|---|---|---|---|---|---|

| DATE OF SERVICE | DESCRIPTION OF HOSPITAL SERVICES | SERVICE CODE | TOTAL CHARGES | EST. COVERAGE INS.CO. NO. 1 | EST. COVERAGE INS.CO. NO. 2 | EST. COVERAGE INS.CO. NO. 3 | EST. COVERAGE INS.CO. NO. 4 | PATIENT AMOUNT |
|---|---|---|---|---|---|---|---|---|

| PATIENT NUMBER | PLEASE REFER TO PATIENT NUMBER ON ALL INQUIRIES AND CORRESPONDENCE. | ADDITIONAL PATIENT BILLING MAY BE NECESSARY FOR ANY CHARGES NOT POSTED WHEN THIS STATEMENT WAS PREPARED, OR IF INSURANCE CARRIERS DO NOT PAY ANY PART OF THE AMOUNTS SHOWN UNDER ESTIMATED INSURANCE COVERAGE. | | | | |
|---|---|---|---|---|---|---|

GEORGETOWN UNIVERSITY HOSPITAL
BALTIMORE, MD

34768-6

M. Blair Marshall, M.D.-Billing-00018

GST-EST-0181769



GEORGETOWN UNIVERSITY HOSPITAL
PO BOX 631905
BALTIMORE, MD
410-933-2421
FET # 522180592

| TYPE OF BILL | DATE OF BILL | DATE OF PREV.BILL |
|---|---|---|
| FINAL | 06/14/06 | |
| INS. | | |

PAGE NO. 1

HOSP.NO.

B S   PATIENT NAME
WHITE ,CHARLES

GUARANTOR NAME AND ADDRESS
CHARLES WHITE

HOLLYWOOD MD 20636

| | INSURANCE COMPANY NAME | GROUP NUMBER | POLICY NUMBER |
|---|---|---|---|
| 1 | BC CFS MD BSC | 2 | XWB90104304 |

AMOUNT OF PAYMENT   0

| DATE OF SERVICE | DESCRIPTION OF HOSPITAL SERVICES | SERVICE CODE | TOTAL CHARGES | EST. COVERAGE INS.CO. NO. 1 | EST. COVERAGE INS.CO. NO. 2 | EST. COVERAGE INS.CO. NO. 3 | EST. COVERAGE INS.CO. NO. 4 | PATIENT AMOUNT |
|---|---|---|---|---|---|---|---|---|

FOR PATIENT QUESTIONS REGARDING THIS BILL
PLEASE CONTACT CUSTOMER SERVICE 202-444-1400.

| PATIENT NUMBER | PLEASE REFER TO PATIENT NUMBER ON ALL INQUIRIES AND CORRESPONDENCE. | ADDITIONAL PATIENT BILLING MAY BE NECESSARY FOR ANY CHARGES NOT POSTED WHEN THIS STATEMENT WAS PREPARED, OR IF INSURANCE CARRIERS DO NOT PAY ANY PART OF THE AMOUNTS SHOWN UNDER ESTIMATED INSURANCE COVERAGE. |
|---|---|---|

GEORGETOWN UNIVERSITY HOSPITAL
BALTIMORE, MD