IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| GARLOCK SEALING TECHNOLOGIES, LLC; GARRISON LITIGATION MANAGEMENT GROUP, LTD., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:14-cv-116 |
| SIMON GREENSTONE PANATIER BARTLETT, A PROFESSIONAL CORPORATION; JEFFERY B. SIMON; DAVID C. GREENSTONE; ESTATE OF RONALD C. EDDINS; JENNIFER L. BARTLETT, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# ORDER

**THIS MATTER** is before the Court upon Defendants' Motion to Transfer Venue (Doc. No. 53) and Memorandum in Support (Doc. No. 54), Plaintiffs' Response in Opposition (Doc. No. 64), and Defendants' Reply (Doc. No. 69), as well as Defendants' Motion to Abstain (Doc. No. 59) and Memorandum in Support (Doc. No. 60), Plaintiffs' Response in Opposition (Doc. No. 65), and Defendants' Reply (Doc. No. 71). This is one of four cases currently pending before this Court that originated in bankruptcy as adversary proceedings. Plaintiffs brought these claims against a number of lawyers who allegedly engaged in fraud in settling their clients' mesothelioma claims with Garlock. The allegations echo findings made by the bankruptcy judge, Hon. George R. Hodges, in conjunction with his estimation order of January 10, 2014. *See In re Garlock Sealing Techs., LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014). Judge Hodges conducted a hearing for the purpose of making a reasonable and reliable aggregate estimate of Garlock's liability for future and present mesothelioma claims, and after hearing evidence from fifteen

1

settled cases, found that Garlock's prior mesothelioma settlements were not a reliable predictor of liability because misrepresentation had infected them:

> [T]he fact that *each and every one of them* contains such demonstrable misrepresentation is surprising and persuasive. More important is the fact that the pattern exposed in those cases appears to have been sufficiently widespread to have a significant impact on Garlock's settlement practices and results.

*Id.* at 85. That court went on to describe the plaintiffs' lawyers' conduct in these cases as forming a "startling pattern of misrepresentation." *Id.* at 86. These findings apparently led the bankruptcy estate to bring the instant lawsuits, which allege claims for common law fraud and civil conspiracy as well as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.

On July 23, 2014, Hon. Max O. Cogburn issued an order withdrawing the reference to bankruptcy in these cases. (*See* Case No. 3:13-cv-464, Doc. No. 90). Judge Cogburn found that these were non-core proceedings which could not be tried in bankruptcy court without the consent of all the parties; as that consent was not forthcoming, Judge Cogburn removed the reference pursuant to 28 U.S.C. § 157(d). These cases were subsequently assigned to the undersigned on October 24, 2014.

## DISCUSSION

### A. Motion to Transfer Venue

Having successfully removed the reference to bankruptcy court, Defendants now seek transfer to the Northern District of Texas, or alternatively, to the Central District of California, pursuant to 28 U.S.C. § 1412.[1] That section provides that "[a] district court may transfer a case

---

[1] The Court notes that the law in the Fourth Circuit is not entirely settled as to whether 28 U.S.C. § 1412 or 28 U.S.C. § 1404 is the appropriate statute under which to seek transfer of a case that is "related to" a case under Title 11, as this one is. This Court has previously grappled with this issue and determined that the § 1412 analysis is most appropriate. *See Coffey Creek Assocs. Ltd. P'ship v. Guardian Prot. Servs., Inc.*, 2010 WL 1849023, at *5

or proceeding under title 11 to a district court for another district, in the interest of justice or for convenience of the parties." 28 U.S.C. § 1412. Generally, the party moving for change of venue under this section bears the burden of proof and must show by a preponderance of the evidence that either the interest of justice or convenience of the parties would be served by transfer. *Coffey Creek Assocs. Ltd. P'ship v. Guardian Prot. Servs., Inc.*, 2010 WL 1849023, at *5 (W.D.N.C. May 7, 2010). A sufficient showing of either justifies transfer. *Id.*

As to the "interest of justice" prong, courts typically consider (1) the economic administration of the bankruptcy estate; (2) the presumption in favor of trying proceedings related to a bankruptcy case in the court in which the bankruptcy is pending; (3) judicial efficiency; (4) ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders; (6) enforceability of any judgment rendered; and (7) the plaintiff's original choice of forum. *See id.* (citing *In re Velocita Corp.*, 285 B.R. 188, 190 (Bankr. M.D.N.C. 2002)). The Court finds that nearly all of these factors weigh heavily against transfer.

To begin, the Court finds that there are substantial efficiencies to be gained in one court hearing all of these actions. Plaintiffs' claims, while asserted against different Defendants, concern the same basic conduct—alleged "double dipping" on the part of plaintiffs' lawyers, who made claims against Garlock in the state court system (and denied or minimized exposure to other asbestos products) while also filing claims against other asbestos companies' trusts in the bankruptcy system. Likewise, the claims asserted are nearly identical—common law fraud, civil conspiracy, and RICO violations. If Defendants' respective motions to change venue are granted, three or four separate district courts would have to assess the complex litigation history associated with these claims, and separately evaluate the pattern of misconduct alleged by

---

(W.D.N.C. May 7, 2010). The Court adopts that same reasoning here, but also notes that the outcome would not be different under the § 1404 analysis.

3

Plaintiffs. Additionally, Plaintiffs' federal RICO claims would be interpreted under the case law of three or possibly four separate circuits, creating a heightened risk of inconsistent outcomes. Having this Court consider all of these cases at once resolves these issues.[2]

The pendency of Plaintiffs' bankruptcy in this district further supports the denial of Defendants' motion. Other courts have held that centralizing related proceedings in the district where the bankruptcy is pending benefits the economic administration of the estate. *See In re Velocita Corp.*, 285 B.R. 190-91 ("[I]t seems clear that judicial efficiency and economical administration of the bankruptcy estate will be promoted if the nine pending actions were all pending in the same venue, rather than debtors having to litigate substantially the same issues in nine different proceedings in nine different locations."). Likewise, having these claims centralized in this district promotes the economic administration of the underlying bankruptcy, as Plaintiffs would otherwise be forced to litigate substantially the same issues in three or four separate districts at substantial cost. Finally, this Court gives great weight to Plaintiffs' choice of forum. *See, e.g.*, *Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 451 (W.D.N.C. 1989); *Commercial Equip. Co., Inc. v. Barclay Furniture Co.*, 738 F. Supp. 974, 976 (W.D.N.C. 1990); *BellSouth Telecomms., Inc. v. N.C. Utilities Comm'n*, 3:05-cv-345, 2005 WL 2416204 (W.D.N.C. 2005). The Court finds no reason to diminish that choice here. The remaining factors either weigh neutrally or are inapplicable to the circumstances of this case.[3]

---

[2] Defendants assert that the state law claims would be most appropriately considered by a district within the state in question; however, this Court frequently interprets and applies various forms of state law and is confident in its ability to do so.

[3] Defendants argue that both Texas and California have a strong interest in this case because it primarily concerns businesses, professionals, and procedural rules in those states. But North Carolina has an equally strong interest in that Plaintiffs are North Carolina businesses which will likewise be affected by the outcome of these proceedings.

The Court has also considered the "convenience of the parties" prong. Factors relevant to this analysis include: (1) location of the parties; (2) ease of access to necessary proof; (3) convenience of witnesses; (4) availability of subpoena power; and (5) expenses related to obtaining witnesses. *Coffey Creek*, 2010 WL 1849023, at *7 (citing *RFF Family P'ship, LP v. Wasserman*, 2010 WL 420014, at *7 (N.D. Ohio 2010)). Defendants argue at length that most of the witnesses and materials pertinent to this dispute are located within either Texas or California, and that the events underlying this action nearly all occurred in those states. The Court has carefully considered these contentions and finds that they do not justify transfer, especially given the substantial efficiencies to be gained by centralizing these cases in this district. As the concerns Defendants raise would be most pertinent to the trial phase, the Court may consider revisiting this issue at the conclusion of all pre-trial proceedings. That notwithstanding, and for the additional reasons outlined in Plaintiffs' Response, the Court finds that Defendants have not shown that transfer is justified, and the motion will be denied.

**B. Motion to Abstain**

Defendants also ask the Court to abstain from consideration of this matter pursuant to 28 U.S.C. § 1334(c)(1),[4] "in favor of requiring Garlock to pursue its claims . . . in the state courts where the tort suit settlements that Garlock seeks to undo were perfected." (Doc. No. 60 at 1).

This Court considers the following factors in determining whether to abstain under § 1334(c)(1):

> (1) The court's duty to resolve matters properly before it; (2) the predominance of state law issues and non-debtor parties; (3) the economical use of judicial resources; (4) the effect of remand on the administration of the bankruptcy estate; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) whether the case involves questions of state law better addressed by the state court; (7)

---

[4] That section provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).

5

> comity considerations; (8) any prejudice to the involuntarily removed parties; (9) forum non conveniens; (10) the possibility of inconsistent results; (11) any expertise of the court where the action originated; and (12) the existence of a right to a jury trial.

*Pettus Props., Inc. v. VFC Partners 8, LLC (In re Pettus Props., Inc.)*, No. 10-31632, 2012 WL 956915, at *3-4 (Bankr. W.D.N.C. Mar. 20, 2012). Having carefully considered the parties' contentions in light of these factors, the Court finds that abstention is not warranted in this case. As an initial matter, "the Court begins with the presumption in favor of . . . exercising jurisdiction." *See id.* at 4 ("[A] federal court must accept the jurisdiction granted it, and only in rare occasions is discretionary abstention warranted." (quoting *Walter v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.)*, 449 B.R. 860, 879 (Bankr. M.D.N.C. 2011)). Further, the burden of proof rests on the party seeking abstention. *See id.*

Defendants characterize this action as a collateral attack on the settlements achieved in the personal injury cases, and contend that allowing this suit to go forward would "interfere[] with the state court's final judgment . . . and its continuing jurisdiction to monitor and enforce settlements." (Doc. No. 60 at 2). The Court observes that the claims in this case are for violations of RICO, as well as state law claims for fraud and civil conspiracy. The Complaint alleges a pattern of racketeering activity, the predicate acts of which are multiple alleged instances of mail and wire fraud. These acts are alleged to have occurred over a number of years and involved settlements in a number of personal injury cases. While the manner in which those settlements were accomplished will certainly be at issue in this case, the claims here are wholly separate from those asserted in the personal injury cases. Rather than seeking to "undo" personal injury settlements obtained by individual asbestos claimants, the Complaint seeks damages for fraud allegedly perpetrated by lawyers and their firms. Defendants' contentions relating to comity and inconsistent results are thus inapposite.

Defendants also contend that issues of state law predominate in this suit, but the crux of Plaintiffs' claims rests on the pattern of fraud and racketeering set forth in Plaintiffs' federal RICO claims. Questions of state law will certainly arise in this case, but this Court often considers questions of state law, and is ideally suited to consider federal RICO statutes. Further, because the Complaint alleges a pattern of fraudulent activity, these claims would be best considered by a single court. Forcing Garlock to petition each state court in Texas, California, and Florida where these cases took place would not only place undue burden on Garlock, but would essentially eviscerate its RICO claims. *See Rotella v. Wood*, 528 U.S. 549, 556 (2000) ("[T]he heart of any RICO complaint is the allegation of a *pattern* of racketeering activity." (quoting *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 154 (1987)).

For these reasons, as well as the additional reasons outlined in Plaintiffs' Response, the Court finds that Defendants have not met their burden and that abstention is not warranted.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Transfer Venue (Doc. No. 53) and Motion to Abstain (Doc. No. 59) are **DENIED.**

**SO ORDERED.**

Signed: March 9, 2015

Graham C. Mullen
United States District Judge