# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | | |
|---|---|---|
| GARLOCK SEALING TECHNOLOGIES, LLC; GARRISON LITIGATION MANAGEMENT GROUP, LTD., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:14-cv-116 |
| SIMON GREENSTONE PANATIER BARTLETT, A PROFESSIONAL CORPORATION; JEFFERY B. SIMON; DAVID C. GREENSTONE; ESTATE OF RONALD C. EDDINS; JENNIFER L. BARTLETT, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

**THIS MATTER** is before the Court upon Defendants' Motion to Dismiss Claims as Time-Barred (Doc. No. 55) and Motion to Strike and, alternatively, to Dismiss for Failure to State a Claim (Doc. No. 57), as well as the parties' attendant briefs on these motions. For the reasons set forth below, those motions are **DENIED**.

## I. BACKGROUND

This is one of four cases currently pending before this Court that originated in bankruptcy as adversary proceedings. Plaintiffs brought these claims against a number of lawyers who allegedly engaged in fraud in settling their clients' mesothelioma claims with Garlock in various state court tort actions. More specifically, the Complaint alleges that Defendants knowingly and intentionally concealed evidence of their clients' exposure to other asbestos manufacturers' products for the purpose of inflating the settlement value of their tort cases against Garlock while simultaneously pursuing or planning to pursue claims in the bankruptcy tort system against these

1

other manufacturers. These allegations echo findings made by the bankruptcy judge, Hon. George R. Hodges, in conjunction with his estimation order of January 10, 2014. *See In re Garlock Sealing Techs., LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014). Judge Hodges conducted a hearing for the purpose of making a reasonable and reliable aggregate estimate of Garlock's liability for future and present mesothelioma claims, and after hearing evidence from fifteen settled cases, found that Garlock's prior mesothelioma settlements were not a reliable predictor of liability because misrepresentation had infected them:

> [T]he fact that *each and every one of them* contains such demonstrable misrepresentation is surprising and persuasive. More important is the fact that the pattern exposed in those cases appears to have been sufficiently widespread to have a significant impact on Garlock's settlement practices and results.

*Id.* at 85. That court went on to describe the plaintiffs' lawyers' conduct in these cases as forming a "startling pattern of misrepresentation." *Id.* at 86. These findings apparently led the bankruptcy estate to bring the instant lawsuits, which allege claims for common law fraud and civil conspiracy as well as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.

On July 23, 2014, Hon. Max O. Cogburn issued an order withdrawing the reference to bankruptcy in these cases. (*See* Case No. 3:13-cv-464, Doc. No. 90). Judge Cogburn found that these were non-core proceedings which could not be tried in bankruptcy court without the consent of all the parties; as that consent was not forthcoming, Judge Cogburn removed the reference pursuant to 28 U.S.C. § 157(d). These cases were subsequently assigned to the undersigned on October 24, 2014. On March 9, 2015, this Court denied Defendants' motions to transfer venue and to abstain. (*See* Doc. No. 79).

## II. LEGAL STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, courts are instructed to "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). After "assum[ing] the veracity" of these factual allegations, the court is to "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a "complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

## III. DISCUSSION

### A. Timeliness of Claims

Defendants argue at length that Garlock's claims are time-barred because it was aware of the fraud alleged in the Complaint while it was settling the mesothelioma claims against it between 2006 and 2009. Defendants correctly note that the statute of limitations for Garlock's federal civil RICO and state law fraud claims are three and four years, respectively, and that the Complaint was not filed until January 9, 2014. Because Garlock "knew or should have known" of its injury while these settlement negotiations were taking place, Defendants argue, its claims are well outside these deadlines.

In response, Garlock argues that it did not discover Defendants' fraud until January 2013, and that the alleged fraudulent scheme is ongoing; thus the Complaint was filed well within the applicable statutes of limitations. Indeed, the Complaint alleges as much. (*See, e.g.*, Compl. ¶

12). Perhaps more importantly, Garlock notes that the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and argues that it is not appropriate for consideration on a motion to dismiss, *see Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) ("[A] motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred."). Indeed, the Fourth Circuit in *Goodman* acknowledged the "relatively rare circumstance" in which sufficient facts to rule on an affirmative defense are alleged in the complaint, but noted that "[t]his principle only applies . . . if all facts necessary to the affirmative defense clearly appear *on the face of the complaint.*" *Id.* (internal quotations omitted).

Here, the point in time when Garlock knew or should have known of the alleged fraud being committed against it is clearly in dispute. Having carefully reviewed the Complaint and the parties' arguments on this issue, the Court finds that all the facts necessary to resolve this issue do not clearly appear on the face of the complaint; thus Defendants' motion to dismiss the claims as time-barred will be denied as premature. Defendants are free to re-assert these arguments at summary judgment.

### B. Various State Court Privileges and Immunities

Defendants also attack the claims against them by attempting to assert various immunity privileges and statutes. The Court finds that these attempts are either premature or simply inapposite.

#### 1. *Noerr-Pennington* Doctrine

Defendants first assert the *Noerr-Pennington* doctrine, arguing that the state court actions at issue in this case "constitute classic petitioning activities and, therefore, cannot be collaterally

attacked" by Garlock's RICO and fraud claims. (*See* Doc. No. 58 at 18). In response, Garlock acknowledges that this doctrine has been used to bar some RICO and fraud actions, but argues that this case clearly falls into the "sham litigation" exception to this doctrine as espoused by the Supreme Court in *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972), and as more recently addressed by the Fourth Circuit in *Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27*. *See* 728 F.3d 354, 364 (4th Cir. 2013) ("[W]hen purported sham litigation encompasses a series of legal proceedings rather than a singular legal action, we conclude the sham litigation standard of *California Motor* should govern. In this context, the focus is not on any single case. Rather a district court should conduct a holistic evaluation of whether the administrative and judicial processes have been abused." (internal quotation omitted)).

More pointedly, however, Defendants note that in the Fourth Circuit "the *Noerr-Pennington* doctrine is an affirmative defense." *Id.* at 359. Again, consideration of the merits of an affirmative defense is generally not appropriate for a motion to dismiss under Rule 12(b)(6). *See Goodman*, 494 F.3d at 464; *supra* Part III.A. Accordingly, the Court declines to do so at this stage in the litigation, especially because this determination would necessarily require a careful factual evaluation of Plaintiffs' claims and the events underlying them. Defendants are once again free to assert this argument at summary judgment.

### 2. State Litigation Immunity Privileges

Defendants next assert that all the claims against them are barred by various state litigation immunity privileges and statutes. In support, they call the Court's attention to three (3) separate states' laws regarding immunity for acts taken or communications made during the course of a judicial proceeding, and argue their application because "Garlock alleges that

fraudulent misrepresentations were made in connection with lawsuits filed in California, Texas, and Florida." (*See* Doc. No. 58 at 19). Plaintiffs argue that these doctrines are not applicable here for a number of reasons, but also argue that the record in this case is not sufficiently developed to allow the Court to decide which state's laws to apply.

Federal courts apply the choice of law rules of the forum in which they sit. *See In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 205 (4th Cir. 1988). North Carolina applies the *lex loci delicti* doctrine, which looks to the place where the injury occurred to determine which forum's laws to apply. *See Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 722 (N.C. Ct. App. 2010). Garlock correctly notes that this analysis can be highly fact-intensive, in that the Court must determine where precisely the injury occurred. This is especially true in this case, where the allegations involve "conduct spread across numerous states in which the plaintiffs currently have different principal places of business and a purely pecuniary injury." (Doc. No. 62 at 20). *See also Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 387 F. Supp. 2d 521, 532 (M.D.N.C. 2005) ("[I]t is clear that Colorado law governs Defendant's fraud and misrepresentation claims because Defendant suffered any injury as a result of alleged misrepresentations in Colorado, its principal place of business."). Garlock goes on to assert its belief that New York law governs its claims in this case because that state is where both Plaintiffs resided at all times relevant to the allegations in the Complaint.

Having reviewed the parties' arguments, the Court agrees that it lacks sufficient information at this time to determine whether, and if so which, state immunity doctrines apply to Garlock's claims.[1] As such, Defendants' motion as to the application of these doctrines will be denied as premature. Defendants are free to reassert these arguments at summary judgment.

---

[1] And this choice is important. Garlock notes, for example, that Texas applies a fraud exception to its litigation immunity doctrine. *See, e.g.*, *Querner v. Rindfuss*, 966 S.W.2d 661, 670 (Tex. App. 1998) ("Fraud vitiates all

### 3. Anti-SLAPP Statutes

Finally, Defendants argue that the "anti-SLAPP" (strategic lawsuits against public participation) statutes of California and Texas also mandate dismissal of these claims. Broadly, these statutes are designed to "encourage and safeguard the constitutional rights of persons to petition . . . and . . . protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *see also* Cal. Civ. Pro. Code § 425.16(a) (declaring that participation in matters of public significance "should not be chilled through abuse of the judicial process"). To that end, these laws allow defendants to file a special motion to strike or dismiss a cause of action if the cause of action is based on a person's exercise of his right to petition the government. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003; Cal. Civ. Pro. Code § 425.16(b)(1). This generally includes "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." Cal. Civ. Pro. Code § 425.16(e)(2); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.001.

Typically, in order to animate these statutes, the moving party must show that the legal action it seeks to dismiss is "based on" the right of petition; the burden then shifts to the party bringing the action to establish that it is likely to prevail on its claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c) (noting that dismissal is not warranted where the non-moving party "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question."); *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 824-25 (noting that the California statute "requires the plaintiff to establish 'a probability that the plaintiff will prevail on the claim.'").

---

privileges. An attorney can be held liable for engaging in fraudulent acts, if proven, even if those actions are undertaken in the context of litigation."); *James v. Easton*, 368 S.W.3d 799, 803 (Tex. App. 2012) ("[I]f an attorney engages in fraudulent or malicious conduct in the course of representing his client, an opposing party may assert intentional tort claims against the attorney based upon this conduct.").

Once again, there is insufficient information in the record at this time for the Court to determine which, if any, of these statutes would apply. It appears from their arguments that Defendants themselves are not even sure which of these statutes is applicable. Yet even if the Court were to apply one of these state's laws to Garlock's claims, it appears that the analysis required by the statutes does not differ substantially from that required by Rule 12(b)(6). *See Wilcox*, 27 Cal. App. 4th at 823-24 (noting that "the requirement of establishing a substantial or reasonable probability of success means only that the plaintiff must demonstrate the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."); *In re Lipsky*, 411 S.W.3d 530, 539 (Tex. App. 2013) ("Texas courts have defined prima facie evidence as the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." (internal quotations omitted)). For the reasons set forth below, the Court finds that Garlock has adequately pled each element of each of its claims. However, in an abundance of caution, the Court will simply deny Defendants' motion on this point as premature. Defendants are free to reassert these arguments at summary judgment after the parties have had a full opportunity to engage in discovery.

### C. Failure to State a Claim

Otherwise, Defendants argue that Garlock has failed to plead facts sufficient to state claims for civil RICO, common law fraud, and civil conspiracy. The Court has carefully reviewed the Complaint and finds that it alleges more than sufficient facts to establish each element of each of the claims asserted therein.[2]

---

[2] In addition to the pleading requirements of Rule 8, FRCP 9 requires that allegations of fraud must be pled with particularity, and include the "time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Defendants' primary contention in favor of dismissing these claims is that Garlock has failed to adequately plead reliance and causation for its fraud claims. Much of this argument echoes Defendants' contentions about the timeliness of these claims; that is, that Garlock knew of the suspected fraud while it was settling the mesothelioma cases, thus it could not have possibly relied on Defendants' fraud. Nor could Defendants' alleged fraud have cause Garlock's damages, as it was fully aware of the fraud and was in the practice of settling mesothelioma clams en masse and without regard to liability.

Garlock vehemently disputes these assertions, and this is reflected in the allegations in the Complaint. Garlock alleges that Defendants themselves—not their clients—engaged in a wide-ranging, systematic, and well-concealed fraud designed to suppress evidence and inflate settlement values for mesothelioma claims. Indeed, the bankruptcy court found as much when it reviewed a number of these cases. *See* 504 B.R. at 85 (noting that "each and every one" of the cases reviewed by the court contained "demonstrable misrepresentation" which "appears to have been sufficiently widespread to have a significant impact on Garlock's settlement practices and results."). The Court takes no effort to weigh the evidence as this stage in the proceedings; rather, it will simply note that the allegations in the Complaint are pled with particularity and are more than adequate to state a claim for fraud.

So, too, does Garlock sufficiently plead a claim under RICO. Defendants broadly contend that actions in the litigation context cannot, as a matter of course, serve as predicate acts for RICO. Indeed, some courts have declined to find that routine litigation activities can serve as predicate acts of mail and wire fraud for the purposes of RICO. (*See* Doc. No. 58 at 16-17). But the Court agrees with Plaintiffs that there exists no "broad shield from RICO for attorney advocacy." *Crowe v. Smith*, 848 F. Supp. 1258, 1264 (W.D. La. 1994); *see also Living Designs,*

9

*Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 364 (9th Cir. 2005) (noting the non-existence of "any federal case which holds that a party's litigation conduct in a prior case is entitled to absolute immunity and cannot form the basis of a subsequent federal RICO claim"). The Court also notes that Defendants' conduct as alleged in the Complaint goes well past the kind of routine litigation activities that these courts have found inadequate to state a claim under RICO. Defendants are accused of committing rampant fraud over the course of several years and in numerous venues throughout the country. These allegations suffice to state a claim for civil RICO.

Once again, Defendants are free to reassert these arguments at summary judgment; however, at this early stage in the litigation, the Court finds that Plaintiffs' allegations "plausibly give rise to an entitlement to relief," *Iqbal*, 556 U.S. at 678, and the motion will be denied.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Claims as Time-Barred (Doc. No. 55) and Motion to Strike and, alternatively, to Dismiss for Failure to State a Claim (Doc. No. 57) are **DENIED.**

**SO ORDERED.**

Signed: September 2, 2015

Graham C. Mullen
United States District Judge