**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| In re:<br><br>GARLOCK SEALING TECHNOLOGIES LLC, et al.,<br><br>    Debtors. | Case No. 10-BK-31607<br><br>Chapter 11 |
| GARLOCK SEALING TECHNOLOGIES LLC and GARRISON LITIGATION MANAGEMENT GROUP, LTD.,<br><br>    Plaintiffs,<br><br>v.<br><br>SIMON GREENSTONE PANATIER BARTLETT, A PROFESSIONAL CORPORATION; JEFFREY B. SIMON; DAVID C. GREENSTONE; ESTATE OF RONALD C. EDDINS; AND JENNIFER L. BARTLETT,<br><br>    Defendants. | District Court No. 3:14-cv-116 |

**INTERVENOR-PLAINTIFF JOHN CRANE INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO INTERVENE**

Intervenor-Plaintiff John Crane Inc. ("JCI"), by counsel, hereby presents its

motion to intervene, respectfully requesting that this Court enter an Order permitting JCI

to intervene in the above-captioned case for the purpose of asserting its claims against

the Defendants.[1]

---

[1] Defendant Simon Greenstone Panatier Bartlett, PC is referred to herein as "Simon Greenstone"; the individual defendants are referred to as "the Lawyer Defendants"; and,

## I.  INTRODUCTION

The Bankruptcy Court previously recognized that the Defendants were participants in a "startling pattern of misrepresentation," "withholding," and "manipulation of exposure evidence" in asbestos litigation against Garlock.  *In re Garlock Sealing Technologies LLC*, 504 B.R. 71, 82-86 (Bankr. W.D.N.C. 2014).  JCI was a co-defendant in many of the cases the Defendants brought against Garlock.  Once JCI was permitted access to the Garlock estimation trial record and was able to conduct a thorough review and analysis, JCI learned it was defrauded in the same way as Garlock was defrauded in those and other cases.

JCI now seeks leave to intervene in the instant action to assert RICO[2], fraud, and civil conspiracy claims against the Defendants.  (*See* Ex. 1).  JCI's claims arise from the same pattern of racketeering conduct described in Garlock's complaint against the Defendants, and, in many cases, the very same cases.  (*See id.*).

These meritorious claims against Defendants and involvement in the underlying transactions create for JCI a protectable interest that justifies intervention of right pursuant to Fed. R. Civ. P. 24(a).  This same overlap means that the decisions the Court makes in this case could practically impair JCI's ability to recover against Defendants in a separate action.  Furthermore, while Garlock and JCI will share positions on many legal issues, Garlock does not adequately represent JCI's interest in this case because it is not seeking to recover damages for JCI—also an injured party—and because Garlock's position as a debtor-in-possession creates for it duties to third

---

all of the defendants are collectively referred to as "the Defendants." Jennifer Bartlett is not named as a Defendant in the JCI's proposed complaint.

[2] "RICO," as used herein, refers to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*

parties that may affect its litigation decisions.  Finally, this motion is timely because no party would be prejudiced by JCI's intervention at this early stage of litigation.

For these reasons, and those set forth below, this Court should grant JCI's motion for intervention of right pursuant to Fed. R. Civ. P. 24(a).  Alternatively, those same factors demonstrate that permissive intervention pursuant to Fed. R. Civ. P. 24(b) is appropriate.

## II.   RELEVANT PROCEDURAL HISTORY[3]

Garlock and certain of its affiliates filed voluntary Chapter 11 petitions in this District on June 5, 2010.[4]  Garlock manufactured gaskets before being forced into bankruptcy by overwhelming asbestos litigation.  Because trial on each and every asbestos claim in a bankruptcy case often is not feasible, the Bankruptcy Code establishes a mechanism for claims to be estimated in order to facilitate reorganization, and that is what happened in the Garlock bankruptcy case with respect to present and future mesothelioma claims.  On January 10, 2014—following the estimation trial and a review of a voluminous trial record that contained millions of pages of exhibits and weeks of trial testimony—the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court") entered its estimation order ("the Estimation Order") finding that Garlock's estimated liability for present and future mesothelioma claims is $125 million.  *See generally In re Garlock Sealing Techs., LLC*, 504 B.R. 71.

In the Estimation Order, the Bankruptcy Court rejected the $1.3 billion estimate

---

[3] JCI recounts only those procedural facts relevant to this intervention motion. A more complete description of the Lawyer Defendants' racketeering scheme can be found in JCI and Garlock's respective complaints.

[4] See *In re Garlock Sealing Techs., LLC*, 504 B.R. at 73-75, for additional facts regarding the Garlock bankruptcy case and the estimation trial.

based on historical settlement values asserted by the Official Committee of Asbestos

Personal Injury Claimants (the "Committee") and the Future Claims Representative (the

"FCR"), because the amount of money Garlock had historically paid out in the tort

system was not an accurate indicator of legal liability:

> [T]he last ten years [i.e., the period from 2000 through 2010] of its participation in the tort system was infected by the manipulation of exposure evidence by plaintiffs and their lawyers. That tactic, though not uniform, had a profound impact on a number of Garlock's trials and many of its settlements such that the amounts recovered were inflated.

*Id.* at 82; *see also id.* at 86–87 (holding that this practice of withholding exposure

evidence was "significant" and "sufficiently widespread" such that Garlock's settlement

and verdict history "does not reflect its true liability for mesothelioma"); *id.* at 94 (holding

that prior settlement and verdict amounts were "infect[ed] fatally" by the practice of

withholding evidence).

      The Bankruptcy Court found that the "inflated recoveries" were the product of an

"effort by some plaintiffs and their lawyers to withhold evidence of exposure to other

asbestos products and to delay filing claims against bankrupt defendants' asbestos

trusts until after obtaining recoveries from Garlock (and *other viable defendants*)," and

that this practice amounted to a "pattern." *Id.* at 83–84 (emphasis added); *see also id.*

at 87 ("[W]hile it is not suppression of evidence for a plaintiff to be unable to identify

exposures, it *is* suppression of evidence for a plaintiff to be unable to identify exposure

in the tort case, but then later (and in some cases previously) to be able to identify it in

[t]rust claims.") (emphasis in original). Significantly, and based specifically on certain

cases handled by Simon Greenstone, the Bankruptcy Court found that "[i]t was a *regular*

*practice* by many plaintiffs' firms to delay filing [t]rust claims for their clients so that the

remaining tort system defendants would not have that information." *Id.* at 84 (emphasis added). And this practice of manipulating exposure evidence had effects that "extended well beyond the individual cases involved because it was concentrated in high-dollar 'driver' cases." *Id.* at 86.

The day before the Bankruptcy Court issued the Estimation Order, Garlock filed an adversary complaint in the Bankruptcy Court against Simon Greenstone and the Lawyer Defendants. (Compl., Exhibit B to ECF No. 20). Garlock's allegations in its complaint are based on the same systematic practice discussed by the Bankruptcy Court in the Estimation Order, and the complaint asserts claims for violations of civil RICO, common law fraud, and civil conspiracy. (*Id.*). While Garlock's complaint was initially filed under seal, it was eventually unsealed in October 2014. (ECF No. 48).

In July 2014, this Court withdrew the reference of jurisdiction over the adversary proceeding. (*See* Case No. 3:13-cv-464 (W.D.N.C.), ECF No. 90). Thereafter, the Defendants filed motions to dismiss (based on untimeliness, failure to state a claim, application of state anti-SLAPP statutes, and abstention) and a motion to transfer venue. Those motions were fully briefed in December 2014 and denied by the Court in March and September 2015. (ECF Nos. 79 & 80).

On October 1, 2015, Defendants noted an interlocutory appeal of this Court's order denying the motion to dismiss. (ECF No. 84). Briefing has commenced in the appeal, and the Fourth Circuit has not yet scheduled oral argument or ruled on Garlock's pending motion to dismiss the appeal. While the appeal remains pending, the Defendants answered Garlock's complaint on November 16, 2015 and asserted a RICO counterclaim against Garlock. (ECF Nos. 91-100, 103). At this time, no scheduling

order has been entered, the parties have filed a Rule 26(f) conference report, no discovery has commenced, and Garlock has not yet responded to the Defendants' counterclaim.

## III.  ARGUMENT

**A.  JCI has a right to intervene under Fed. R. Civ. P. 24(a).**

### 1.  *Standard of Review*

Federal Rule of Civil Procedure 24(a) governs intervention of right.  The rule provides, in relevant part, that intervention must be allowed where a party timely requests intervention, "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent the interest."  Fed. R. Civ. P. 24(a)(2).  If a movant satisfies these four criteria—(i) timeliness; (ii) interest in the subject matter; (iii) impairment of the movant's ability to protect its interests if intervention is not granted; and, (iv) interests that are not adequately represented by existing parties—the court must grant intervention.  *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999); *see also Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) ("A district court must grant a timely motion to intervene that seeks to protect an interest that might be impaired by the action and that is not adequately represented by the parties."); *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009) (granting intervention as a matter of right in civil action arising under RICO).

Furthermore, in applying Rule 24, a court should consider its purpose: "to prevent [a] multiplicity of suits involving common questions of law or fact."  *TPI Corp. v. Merch.*

*Mart of S.C., Inc.*, 61 F.R.D. 684, 689 (D.S.C. 1974). Considerations of judicial economy should not, however, be weighed when determining a party's right to intervene pursuant to Fed. R. Civ. P. 24(a). *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991). The Fourth Circuit further has stated that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (internal quotation marks omitted).

> 2. *JCI's request for intervention is timely.*

The mere passage of time does not make a motion to intervene untimely for purposes of Fed. R. Civ. P. 24. *Spring Const. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) (intervention four years after complaint timely because intervenor was not in a position to intervene earlier). Instead, whether a motion is timely depends chiefly on whether the party's intervention will prejudice the existing parties. *See Nautilus Ins. Co. v. Strongwell Corp.*, No. 1:12-cv-00038, 2014 WL 2645503 at *3 (W.D. Va. June 13, 2014) (citing *Hill v. Western Elec. Co.*, 672 F.2d 381, 385–86 (4th Cir.1982)). In determining timeliness, a court should consider (i) how far the case has progressed; (ii) any prejudice that delay might cause other parties; and (iii) the reason for the tardiness in moving to intervene. *Scardelletti v. Debarr*, 265 F.3d 195, 203 (4th Cir. 2001), *rev'd on other grounds, Devlin v. Scardelletti*, 536 U.S. 1 (2002). The most important consideration is whether the delay in seeking to intervene has prejudiced the other parties. *Hill v. Western Elec. Co.*, 672 F.2d 381, 385–86 (4th Cir. 1982).

No party would be prejudiced by JCI's intervention in Garlock's adversary action against the Defendants. For purposes of determining timeliness, prejudice occurs when

intervention would cause delay and re-litigation of issues already determined. *See Simmons v. Brown*, 611 F.2d 65, 67 (4th Cir. 1979); *see also U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404 (W.D. Pa. 2006) (motion to intervene timely because case still in initial stages, no filings beyond the initial pleadings and intervention motion, and discovery not yet concluded). In this action, no scheduling order has been entered, no trial date has been set, no dispositive motions are pending,[5] no discovery has been taken, and Garlock has not yet responded to the Defendants' counterclaim. Therefore, this is not an intervention that would derail the lawsuit "within sight of the terminal," but rather one seeking to board a train that has not yet left the station. *Nautilus*, 2014 WL 2645503 at *3.

Indeed, to ensure that JCI's intervention does not delay a resolution of Garlock's RICO claims, JCI is willing to agree that any subsequently-entered discovery schedule governing Garlock's claims should also govern JCI's claims. *See Cooper Techs., Co. v. Dudas,* 247 F.R.D. 510, 516 (E.D. Va. 2007) (finding no potential for delay or prejudice when the intervenor "is prepared to abide by the existing briefing schedule if permitted to intervene.").

In assessing the timeliness of JCI's motion, it is also important to remember that JCI was only recently granted access to the sealed materials that Garlock used as the basis of its complaint, and did not have the ability to gain access to such materials from

---

[5] As noted above, the Court has already dispensed with Defendants' motions to dismiss and transfer venue. (ECF Nos. 79 & 80).

any other source. In particular, the evidence presented at the mesothelioma estimation trial discussed above was not released to the public until May 2015.[6]

In other words, JCI has had less than a year to review the incredible volume of documentation related to the systematic fraud perpetrated by the Defendants, determine what legal remedies it might have, assemble a complaint that is well-founded in the available evidence and comports with the investigatory burden imposed by Fed. R. Civ. P. 11, and file this motion and attached complaint. *See Wright v. Krispy Kreme Doughnuts, Inc.*, 231 F.R.D. 475, 478 (M.D.N.C. 2005)(finding intervention timely when intervenor took time to investigate documentary basis for intervention). Far from tardiness, examination of the relevant timeline reveals significant diligence on the part of JCI in the prosecution of its claims against the Defendants. *See Spring Const.,* 614 F.2d at 377 (granting motion for intervention filed four years after action began when "[t]t [did] not appear, . . . that [the intervenor] was in a position to intervene during the early stages of this litigation[.]").

   3.    *JCI has a significant interest in Garlock's adversary action.*

The second criteria for intervention of right is "an interest relating to the property or transaction that is the subject of the action[.]" Fed. R. Civ. P. 24(a)(2). "[A]n interest that by itself could be a case or controversy will meet the requirement[.]" *N.A.A.C.P., Inc. v. Duplin Cty., N.C.*, No. 7:88-CV-00005-FL, 2012 WL 360018, at *3 (E.D.N.C. Feb. 2, 2012) (citing *Philip Morris*, 566 F.3d at 1145-1146); *accord Patterson v. Shumate,* 912 F.2d 463 (4th Cir. 1990)("Patterson has a facially valid claim against Shumate, and the second requirement for intervention is met."). In the context of a RICO action, a

---

[6] *See* Case No. 10-31607 (Bankr. W.D.N.C.), at ECF No. 4608 (Notice of Filing of Final Redacted Estimation Record Dated May 18, 2015).

person who has suffered an injury-in-fact caused by the racketeering enterprise alleged in the underlying case has a sufficient interest to justify intervention to enforce its own rights. *See Philip Morris*, 566 F.3d at 1145-1146; *accord* 6 MOORE'S FEDERAL PRACTICE § 24.03[2][a] ("A movant who demonstrates standing is deemed to have a sufficiently substantial interest to intervene").

JCI and Garlock both claim that the Defendants defrauded them in mesothelioma litigation via the same scheme—manufacturing false exposure histories by, *inter alia*, concealing exposure evidence, submitting false discovery responses, and instructing the clients to only identify products associated with solvent companies. (*Compare, e.g.,* Exhibit B to ECF No. 20 at ¶¶ 3-4, 34-63 with Ex. 1 attached hereto at ¶¶1-114). JCI's Complaint concerns two of the same mesothelioma cases at issue in Garlock's complaint—the *Charles White case*; and, the *Eric Lange case*. In addition, Garlock was JCI's co-defendant in at least two additional mesothelioma cases alleged in JCI's complaint: the *Ronald Geist* and *Leroy Eisler* cases. (*See* Ex. 1). Far from being merely "interested" in the transactions at issue—the underlying mesothelioma cases—JCI was a party to those cases and has a basis to bring fraud-related claims for the injuries it suffered.

This closely parallels the situation examined by the District of Columbia Circuit in *Phillip Morris*. In that case, the federal government brought a civil RICO action against cigarette manufacturers and trade organizations, alleging that they formed a racketeering enterprise to deceive American consumers through a pattern of mail and wire fraud. *See* 566 F.3d at 1105-06. Tobacco-Free Kids Action Fund and five other public health organizations intervened in the case as of right, seeking their own

remedies against the defendants based on harms caused to them by the defendants' fraudulent scheme. *Id.* at 1145. The court found that, because the public health organizations had independent standing to bring their own RICO claim based on the same fraudulent conduct as was the basis for the government's claim, intervention of right was appropriate. *Id.* Having suffered its own independent damages at the hands of the fraudulent scheme undertaken by the Defendants, JCI likewise has Article III standing to bring its own claims related to the misconduct alleged by Garlock, and, therefore, a sufficiently substantial interest to support intervention by right. *See id.*

That the Court's rulings on various legal and factual issues related to Garlock's claims may have a substantial effect on JCI's ability to recover against the Defendants is a separate protectable interest justifying intervention. *See Felman Prod., Inc. v. Indus. Risk Insurers*, No. CIV.A. 3:09-0481, 2009 WL 5064058, at *3 (S.D.W. Va. Dec. 16, 2009) (finding a protectable interest where rulings in the current case would affect intervenor's future rights). As another district court in the Fourth Circuit has said, "[w]here the intervenor stands to gain or lose by the direct legal operation of the district court's judgment on the plaintiff's complaint, the intervenor's interest in the subject matter of the litigation is significantly protectable." *See Cooper Techs,* 247 F.R.D. at 515.[7]

As discussed in more detail in the following section, this Court's rulings on various factual and legal issues related to Garlock's claim will have an impact on any future

---

[7] While this argument overlaps with that of the third criteria for intervention by right—impairment of future rights—such overlap is not uncommon. *See, e.g.*, *Pac. Mut. Life Ins. Co. v. Am. Nat. Bank & Trust Co. of Chicago*, 110 F.R.D. 272, 274 (N.D. Ill. 1986)("The 'impairment' question overlaps the 'interest' issue."); *see also* 6 Moore's Federal Practice § 24.03[1][b] ("Although each of the three criteria is independent, practical application of Rule 24(a)(2) involves a balancing and blending of the independent components.").

claim made by JCI based on that same fraudulent scheme. *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 281 F.R.D. 264, 268 (E.D.N.C. 2012) (overlapping legal issues created interest sufficient to justify intervention).  Indeed, this is inevitable when JCI and Garlock were defrauded by the same scheme involving many of the same cases.  Even if it didn't raise issues of *res judicata*, a ruling against Garlock in this case would amount to a ruling against JCI in a future case because it would be on-point, highly-persuasive authority in a future court (and perhaps even have *stare decisis* effect).  *See Felman*, 2009 WL 5064058, at *3 (granting intervention of right when "a judgment favorable to [plaintiff] would force [the intervenor] into the compromising position of needing to attack this Court's decision on both legal and factual grounds"); *see also Teague v. Bakker,* 931 F.2d 259, 261 (4th Cir. 1991)(finding litigant had a significant interest when it stood "to gain or lose by the direct legal operation of the district court's judgment on ERC's complaint").  Therefore, JCI has an interest in this litigation and should have the right to intervene.

> 4.    *Denying intervention would impair JCI's ability to protect its interests.*

A party has the right to intervene if it would be subject to "practical disadvantages" that would impair its ability to protect its interests as a result of the denial of intervention.  *Newport News Shipbuilding,* 646 F.2d 117, 121 (4th Cir. 1981). "Even the adverse impact of *stare decisis* may be enough" to justify intervention. *Steinberg v. Shearson Hayden Stone, Inc.*, 598 F. Supp. 273, 280 (D. Del. 1984); *see also Francis v. Chamber of Commerce of U.S.*, 481 F.2d 192, 195 n. 8 (4th Cir. 1973) (same).

Here, JCI "could be disadvantaged by decisions reached in this case" if it is forced to re-litigate overlapping factual and legal issues in a separate action. *Nautilus*, 2014 WL 2645503 at *2. That is, if JCI must bring a separate action against the Defendants, this Court's rulings—"even if not entitled to res judicata or collateral estoppel effect"—could create for JCI "the kind of 'practical disadvantage' that has been thought sufficient to warrant intervention of right." *Newport News Shipbuilding & Drydock Co.,* 646 F.2d at 121. This is similar to the situation in another case, where an excess insurer was permitted to intervene in a coverage suit between an insured party and its primary insurer because the court's determination of issues related to coverage law could impact a future coverage suit between the insured and the excess carrier. *See Nautilus*, 2014 WL 2645503 at *2.

Put simply, JCI should have the opportunity to be heard in this Court on issues of law and fact that may impact its ability to pursue remedies against the Defendants in a separate action. *See* 6 MOORE'S FEDERAL PRACTICE § 24.03[3][a] ("It would be unfair to decide a case and prejudice a non-party without allowing the non-party to participate in the litigation."). Indeed, as the Fourth Circuit has held, "an interest in preventing conflicting orders may be sufficient for intervention as of right." *Feller*, 802 F.2d at 730.

There are a substantial number of legal and factual issues that overlap between Garlock's claims in the underlying suit and JCI's claims presented in its prospective complaint. For example, the Defendants have already asserted defenses against Garlock's claims related to the statute of limitations, certain states' litigation privilege, certain Anti-SLAPP statutes, and the *Noerr-Pennington* doctrine. (*See* ECF No. 56; ECF No. 58 at 18-24). Presumably, the Defendants will attempt to assert the same

defenses against JCI's claims. As the Court noted in its Order denying the Defendants'
Motion to Dismiss, these defenses require factual development and will continue to be
argued throughout the case. (ECF No. 80 at 4-8).

The critical issues of fact and law in common between Garlock's claims and
those of JCI go beyond defenses, of course. Given the nature of the Defendants and
their scheme, issues of attorney-client privilege and work product protection will feature
prominently during the discovery process. Determinations of the discoverability of
documents related to Defendants' scheme will be critical, and given that JCI and
Garlock were co-defendants in several of the underlying cases, it is highly probable that
their claims will be based on many of the same documents. Issues related to jury
instructions, evidentiary admissibility, and other issues will also overlap in part or
entirely between Garlock's claims and JCI's.

This Court's rulings on the many common issues between Garlock's and JCI's
claims will impact JCI's interests. If not allowed to intervene, JCI cannot protect those
interests. *See Patterson*, 912 F.2d at 463 (finding impairment when denial of
intervention would have prevented intervenor from bringing claim against defendant).
Therefore, intervention as of right is warranted so that JCI may prevent this possible
impairment of its ability to prosecute similar claims against the Defendants.

5.      *JCI's interests are not adequately represented by the existing parties to
        the litigation.*

A putative intervenor bears only a minimal burden to successfully demonstrate
that its interests are inadequately represented. *Trbovich v. United Mine Workers,* 404
U.S. 528, 538 n.10 (1972). Indeed, the intervenor need only show that the
representation of its interest "may be" inadequate. *Trbovich,* 404 U.S. at 538 n.10.

Representation "may be" inadequate under Rule 24(a)(2) when the intervenor demonstrates that the existing parties' interests are not completely identical to, and may come into conflict with, its own interests. *Id.* at 538-39. Indeed, even if the intervenor shares a legal position with an existing party, the intervenor's interests may not be adequately represented if the differences in the parties' respective situations "might foreseeably dictate different approaches to the litigation." *Cooper Techs,* 247 F.R.D. at 515.

JCI suffered independent damages at the hands of the Defendants. (*See, e.g.,* Ex. 1 at ¶ 319 (detailing JCI's damages from Defendants' RICO enterprise)). While—as discussed above—Garlock's prosecution of its case will require the resolution of many overlapping issues of fact and law, Garlock presumably will not and cannot prove the damages suffered by JCI, nor will JCI recover its damages from Defendants by virtue of a judgment for Garlock. Because this significant area "would be ignored or overlooked if the matter were left to the existing parties," JCI's intervention of right is appropriate. 6 MOORE'S FEDERAL PRACTICE § 24.03[4][a]; *see also Sierra Club,* 945 F.2d at 780 (granting intervention for government agency who represented wider class of citizens than original litigant); *Backus v. S. Carolina*, No. 3:11-CV-03120-HFF, 2012 WL 406860, at *2-3 (D.S.C. Feb. 8, 2012) (permitting intervention of representative of state senate district adjacent to district that was focus of litigation when that district's interests would otherwise be unrepresented and when legal issues overlapped).

Furthermore, although JCI and Garlock were both victims of a common scheme, they have very different theories of damages and causation. As the Defendants point out "Garlock made a considered decision to do what most civil litigants do—settle."

(ECF No. 58 at 2).  On the other hand, JCI did not settle and unless it was dismissed, took its case to trial.  (*See, e.g.*, Ex. 1 at ¶¶ 115-291).  JCI would only settle post-trial on appeal. (*Id.*).  While Garlock's damages include the settlements induced by the Defendants' fraudulent scheme, JCI's damages include payments on verdicts rendered where the Defendants' fraudulently manufactured a false exposure history and concealed evidence from JCI, the courts, and the juries.  Indeed, the difference in the type of damages Garlock alleges and JCI alleges indicates JCI's interests are not adequately protected by Garlock.  *See Philip Morris*, 566 F.3d at 1146 (lack of adequacy because of difference between scope of remedy sought by original party and intervenors).

Similarly, JCI's and Garlock's legal theories and responses to the Defendants' defenses will diverge slightly.  Garlock's claim focuses on being defrauded by concealed discovery.  JCI's claim includes those allegations, plus allegations related to the Defendants fraudulently concealing information from the court and jury at trial, and even on appeal.  (*See, e.g.*, Ex. 1 at ¶ 148-159, 182-185).  Further, a central theme of the Defendants' arguments in the Garlock case is there could be no causation because of "Garlock's decision to settle without regard to liability for cost avoidance[.]"  (ECF No. 58 at 4).  While Garlock must counter this defense, JCI will not.  These differences in legal theories of recovery means that, in addition to not proving their damages, Garlock will not fully represent JCI's legal position on the Defendants' liability.  *See Cooper Techs,* 247 F.R.D. at 515 ("different approaches to litigation" sufficient to demonstrate lack of adequacy).  Therefore, while Garlock's and JCI's claims substantially overlap, and,

indeed, concern many of the same cases, Garlock does not perfectly represent JCI's interests, and JCI has the right to intervene.

Finally, while JCI and Garlock are both notionally on the same side of many legal issues, their interests diverge significantly. *See Felman*, 2009 WL 5064058, at *3 (lack of adequacy when intervenor's "interests are not coextensive" with those of existing parties). It is indisputable that a chapter 11 debtor-in-possession such as Garlock owes fiduciary duties not only to its shareholders but also to creditors of the estate. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) (explaining that a debtor-in-possession owes fiduciary duties not just to shareholders but also to creditors of the estate); *see also Ford Motor Credit Co. v. Reynolds & Reynolds Co.* (*In re JKJ Chevrolet, Inc.*), 26 F.3d 481, 485 (4th Cir. 1994) (citing *Weintraub* and noting that a debtor-in-possession owes fiduciary duties to creditors of the estate); *In re Wynne Residential Asset Mgmt., LLC*, No. 09-50401, 2009 Bankr. LEXIS 4164, at *10-11 (Bankr. W.D.N.C. Dec. 18, 2009) (same). On the other hand, it is well settled under non-bankruptcy Delaware law (the state of JCI's incorporation) that directors and officers of corporations do *not* owe fiduciary duties to creditors. *See*, *e.g.*, *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101-103 (Del. 2007). Garlock, therefore, owes significant duties to third parties not directly involved in the litigation (its creditors); this difference in interest can be expected to affect the way that Garlock handles this litigation, and results in a litigant that may not adequately represent the interests of other victims of the Defendants' scheme.

In sum, JCI has a significant interest both in the outcome of this litigation and in the fraud-compromised mesothelioma cases that underlies it, and its ability to protect

that interest will be compromised if it is not permitted to participate in this suit. Furthermore, while Garlock's litigation position is similar, Garlock will not adequately protect JCI's interest in recovering its own independent damages and its appropriate fiduciary duties to third parties may affect the way it conducts the case. For these reasons, and because this motion is timely filed, this Court should grant JCI's request for intervention of right pursuant to Fed. R. Civ. P. 24(a).

## B.  In the alternative, this Court should permit JCI to intervene.

### 1.  *JCI's claims share common questions of law and fact with Garlock's claims.*

Federal Rule of Civil Procedure 24(b)(1) provides that: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." When the pleadings evidence a "common nucleus of facts" between the intervenor's case and the underlying case, permissive intervention is typically appropriate. *See U.S. Specialty Ins. Co. v. S. Copters, LLC*, No. 3:09-cv-313, 2009 WL 4428617 at *3 (W.D.N.C. Nov. 25, 2009), as amended (Dec. 4, 2009); *see also Defenders of Wildlife v. N. Carolina Dep't of Transp.*, 281 F.R.D. 264, 269 (E.D.N.C. 2012) (holding permissive intervention appropriate when a common defense existed between intervenor and defendants).

Indeed, when a prospective intervenor's claim significantly overlaps with a claim presented in the underlying case, the "common issue" requirement is necessarily met. *See Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 631 (M.D.N.C. 2006) (granting request for permissive joinder of owners of same allegedly defective product in products liability case); *McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989) (permitting intervention when intervenors' claims presented similar legal

issues and when the intervenors "have suffered injuries similar to those alleged by the named plaintiffs, and that all such injuries are the direct result of the" conduct involved in the underlying suit); *see also* 6 MOORE'S FEDERAL PRACTICE § 24.11 ("A common question of law or fact routinely exists if the intervenor has a claim against the defendant that is identical to a claim asserted by the existing plaintiff.").

It is indisputable that JCI's claims share common questions of law and fact with Garlock's. *See Backus*, 2012 WL 406860, at *2-3 (finding common issue requirement met when "[t]he underlying facts giving rise to the causes of action asserted by both Senator Elliott and Plaintiffs are identical."). Both companies suffered significant harm as a result of the same fraudulent scheme and pattern of racketeering conduct—that of the Defendants. *See* Section III.A.3, *supra*. The two companies were, in fact, co-defendants in many of the lawsuits in which fraudulent activity occurred. *Id.* JCI's claims are based on the same causes of action as Garlock's. (*See* Ex. 1). The Defendants will presumably raise many of the same defenses against JCI's claims as they did against Garlock's, including, but not limited to, litigation privilege and Anti-SLAPP. Overlapping discovery issues will abound, particularly in the areas of attorney-client privilege and work product protection. Overall, JCI and Garlock's claims overlap more than they differ. Therefore, the "common issue" requirement is met.

2.    *JCI's intervention would not cause delay or prejudice to any party.*

When addressing a request for permissive intervention,[8] Rule 24(b)(3) requires the Court to also consider "whether the intervention will unduly delay or prejudice the

---

[8] To the extent that this Court finds that the timeliness of JCI's application or the adequacy of Garlock's representation of JCI's interests are also at issue in respect of permissive intervention, those issues have been addressed in Sections III.A.1 and 5, *supra*.

adjudication of the original parties' rights." If the addition of the intervenor would not substantially threaten the court's schedule or expand discovery, undue delay is unlikely. *See Capacchione v. Charlotte-Mecklenburg Board of Ed.*, 179 F.R.D. 505, 509 (W.D.N.C. 1998). Typically, courts find that when the request for intervention is made prior to the beginning of discovery, no prejudice or undue delay is likely to result. *See, e.g., Town of Davis v. W. Virginia Power & Transmission Co.*, 647 F. Supp. 2d 622, 630 (N.D.W. Va. 2007) ("[T]he court can detect little, if any, prejudice to the current parties by the addition of another party at this stage… [t]here has been no discovery thus far, and no scheduling order has been entered."); *Wilfong v. Rent-A-Ctr., Inc.*, No. 00-CV-0680-DRH, 2001 WL 578262, at *2 (S.D. Ill. May 14, 2001) (no delay or prejudice when merits discovery had not begun).

The lack of prejudice or delay that would be caused by JCI's intervention has already been discussed above in Section III.A.1. Garlock's adversary action against the Defendants is still in its very early stages, and JCI agrees to be bound by any discovery scheduling order imposed on the preexisting litigants in the case. *Cf. Capacchione,* 179 F.R.D. at 509 (granting permissive intervention when intervenors worked with existing parties on discovery plan). If anything, the parties would be prejudiced by forcing JCI to litigate its claims against the Defendants separately, by introducing the possibility for multifarious decisions of law or fact.

Considerations of judicial economy also weigh in favor of intervention. Forcing JCI and the Defendants to re-litigate issues already adjudicated in this case would be wasteful. *Capacchione,* 179 F.R.D. at 509; *see also Boyd v. Koch Foods of Alabama*,

---

*See Backus*, 2012 WL 406860, at *2-3 (considering timeliness of permissive joinder request).

LLC, No. 2:11-cv-748, 2012 WL 72708 at *3 (M.D. Ala. Jan. 10, 2012) (when the movant could file an independent lawsuit, "judicial economy strongly favors granting permissive intervention.").  Adding JCI to Garlock's case would not materially delay the adjudication of the case, and it would permit those who were the primary victims of the Defendants' fraudulent scheme to efficiently litigate their claims.

## IV.  CONCLUSION

For the reasons set forth above, the Court should grant JCI's motion to intervene as of right or, in the alternative, grant JCI's request for permissive intervention enter an order in the form attached.


Dated: January 25, 2016                              Respectfully Submitted,


                                                     /s/ Kenneth D. Bell
                                                     Kenneth D. Bell (Bar No. 10800)
                                                     Susan C. Rodriguez (Bar No. 40035)
                                                     **McGuireWoods LLP**
                                                     201 North Tryon Street
                                                     Suite 3000
                                                     Charlotte, NC 28202-2106
                                                     (704) 343-2000
                                                     (704) 343-2300 (fax)
                                                     kbell@mcguirewoods.com
                                                     srodriguez@mcguirewoods.com

                                                     Jonathan R. Marx (Bar No. 35428)
                                                     **McGuireWoods LLP**
                                                     434 Fayetteville Street
                                                     Suite 2600
                                                     Raleigh, NC 27601
                                                     (919) 755-6600
                                                     (919) 755-6699 (fax)
                                                     jmarx@mcguirewoods.com

Samuel L. Tarry, Jr. (pro hac vice pending)
Mitchell K. Morris (pro hac vice pending)
K. Elizabeth Sieg (pro hac vice pending)
Richard C. Beaulieu (pro hac vice pending)
Davis M. Walsh (pro hac vice pending)
**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
(804) 775-1000
(804) 775-1061 (fax)
starry@mcguirewoods.com
mmorris@mcguirewoods.com
bsieg@mcguirewoods.com
rbeaulieu@mcguirewoods.com
dwalsh@mcguirewoods.com

*Counsel for John Crane Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 25, 2016 I filed a true and correct copy of the foregoing document on the Court's CM/ECF system, which will cause a Notice of Electronic Filing to be sent to the following counsel:

D. Blaine Sanders
Douglas M. Jarrell
Edward Francis Hennessey, IV
Garland S. Cassada
Jonathan C. Krisko
Louis A. Bledsoe, III
Matthew Felton Tilley
Richard C. Worf, Jr.
Robert Evans Harrington
Ty Edwin Shaffer
Robinson, Bradshaw & Hinson, P. A.
101 N. Tryon St., Ste. 1900
Charlotte, NC 28246

Avery B. Pardee
Mark A. Cunningham
Michael W. Magner
Jones, Walker LLP
201 St Charles Avenue #5100
New Orleans, LA 70170

Sara Wyche Higgins
Higgins & Owens, PLLC
5925 Carnegie Blvd.
Suite 530
Charlotte, NC 28209

/s/ Kenneth D. Bell
Kenneth D. Bell (Bar No. 10800)
**McGuireWoods LLP**
201 North Tryon Street
Suite 3000
Charlotte, NC 28202-2106
(704) 373-4620
(704) 343-2300 (fax)
kbell@mcguirewoods.com

*Counsel for John Crane Inc.*