# EXHIBIT C

# SUMMONS
## (CITACION JUDICIAL)

*1/31  1:00*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ALFA LAVAL LAVAL, INC. (sued individually and as
successor-in-interest to THE DELAVAL SEPARATOR
COMPANY and SHARPLES CORPORATION), et al.

[SEE ATTACHED DEFENDANTS]

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 24 2008

John A. Clarke, Executive Officer/Clerk

BY MARY GARCIA, Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DAVID KELEMEN and PAULA KELEMEN

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
LOS ANGELES SUPERIOR COURT
111 North Hill Street
111 North Hill Street
Los Angeles, CA 90012
CENTRAL DISTRICT

| CASE NUMBER: | |
|---|---|
| *(Número del Caso):* | BC384281 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jennifer L. Bartlett,                              562.590.3400
SIMON, EDDINS & GREENSTONE, LLP
301 East Ocean Blvd., Suite 1950

| DATE: | JAN 24 2008 | JOHN A. CLARKE, CLERK | , Deputy |
|---|---|---|---|
| *(Fecha)* | | *(Secretario)*  M. GARCIA | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* John Crane, Inc.

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

| SHORT TITLE: DAVID KELEMEN vs. ALFA LAVAL, INC., et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➡ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➡ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

ARMSTRONG INTERNATIONAL, INC.;
CBS CORPORATION f/k/a VIACOM, INC. (sued as successor-by-merger to CBS
CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION);
CLARK-RELIANCE CORPORATION (sued individually and as successor-in-interest to
JERGUSON GAGE & VALVE COMPANY);
COLTEC INDUSTRIES, INC. (sued individually and as successor-in-interest to
FAIRBANKS MORSE ENGINE);
CRANE CO. (sued individually and as successor-in-interest to CHAPMAN VALVE CO.);
DETROIT DIESEL CORPORATION;
DURABLA MANUFACTURING COMPANY;
FAIRBANKS MORSE PUMP CORPORATION;
FLOWSERVE US INC. (as successor-in-interest to EDWARD VALVE & MANUFACTURING);
FMC CORPORATION (sued individually and as successor-in-interest to NORTHERN PUMP
COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY);
FOSTER WHEELER ENERGY CORPORATION;
GARDNER DENVER NASH, L.L.C. f/k/a THE NASH ENGINEERING COMPANY;
GENERAL MOTORS CORPORATION;
THE GOODYEAR TIRE & RUBBER COMPANY (sued individually and as successor-in-
interest to DURABLA MANUFACTURING COMPANY);
HARDIE-TYNES, LLC (sued individually and as successor-in-interest to HARDIE-
TYNES MANUFACTURING COMPANY);
HARDIE-TYNES MANUFACTURING COMPANY;
HONEYWELL INTERNATIONAL (sued individually and as successor-in-interest to
BENDIX CORPORATION);
HOPEMAN BROTHERS INC.;
HOPEMAN BROTHERS MARINE INTERIORS a/k/a HOPEMAN BROTHERS, INC.;
ICON MANAGEMENT SYSTEMS, LLC (sued individually and as successor-in-interest to
JERGUSON GAGE & VALVE COMPANY);
IMO INDUSTRIES, INC. (sued individually and as successor-in-interest to to
DELAVAL TURBINE, INC.);
INGERSOLL RAND COMPANY;
INVENSYS SYSTEMS, INC.  (sued individually and as successor-in-interest to
EDWARD VALVE & MANUFACTURING);
ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to BELL &
GOSSETT);
JERGUSON GAGE & VALVE COMPANY;
J.T. THORPE & SON, INC.;
JOHN CRANE, INC.;

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

### ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

Legal
Solutions
Plus

| SHORT TITLE:  DAVID KELEMEN vs. ALFA LAVAL, INC., et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

➡  This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➡  If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

LESLIE CONTROLS, INC.;
M. SLAYEN AND ASSOCIATES, INC.;
McNALLY INDUSTRIES, LLC (sued individually and as successor-in-interest to
NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY);
THE NASH ENGINEERING COMPANY;
NORTHERN PUMP COMPANY (sued individually and as successor-in-interest to
NORTHERN FIRE APPARATUS COMPANY);
PARKER-HANNIFIN CORPORATION (sued individually and as successor-in-interest to
SACOMO SIERRA AND SACOMO MANUFACTURING CO.);
SEPCO CORPORATION;
SPIROL INTERNATIONAL CORPORATION (sued individually and as successor-in-interest
to U.S. GASKET CO.);
SYD CARPENTER, MARINE CONTRACTOR, INC.;
THE WILLIAM POWELL COMPANY;
TYCO FLOW CONTROL, INC. (sued individually and as successor-in-interest to THE
LUNKENHEIMER COMPANYand HANCOCK VALVES);
VELAN VALVE CORPORATION;
WEIR VALVES & CONTROLS USA, INC. f/k/a ATWOOD & MORRILL;
YARWAY CORPORATION (sued individually and as  successor-in-interest to GIMPEL
CORPORATION);
and DOES 1-450 INCLUSIVE,
Defendants.

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Legal
Solutions
Plus

1   RON C. EDDINS, CA Bar No. ██████
    JENNIFER L. BARTLETT, CA Bar No. ██████
2   SIMON, EDDINS & GREENSTONE, LLP
    301 E. Ocean Blvd., Ste. 1950
3   Long Beach, California 90802
    Telephone (562) 590-3400
4   Facsimile (562) 590-3412

5   Attorneys for Plaintiffs

6

7

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 2 4 2008

John A. Clarke, Executive Officer/Clerk
BY MARY GARCIA, Deputy

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF LOS ANGELES

10

11  DAVID KELEMEN and PAULA          )   Case No.          BC384281
12  KELEMEN,                         )
                                     )   THIS ACTION CONSTITUTES COMPLEX
13                    Plaintiffs,    )   ASBESTOS LITIGATION – SUBJECT TO THE
                                     )   GENERAL ORDERS CONTAINED IN FILE NO.
14            vs.                    )   C 700000 – DEPT. 59
                                     )
15  ALFA LAVAL, INC. (sued individually )   COMPLAINT FOR PERSONAL INJURY –
    and as successor-in-interest to THE  )   ASBESTOS (NEGLIGENCE; STRICT
16  DELAVAL SEPARATOR COMPANY        )   LIABILITY; LOSS OF CONSORTIUM)
    and SHARPLES CORPORATION);       )
17  ARMSTRONG INTERNATIONAL,         )
    INC.;                            )
18  CBS CORPORATION f/k/a VIACOM,    )
    INC. (sued as successor-by-merger to CBS )
19  CORPORATION f/k/a WESTINGHOUSE   )
    ELECTRIC CORPORATION);           )
20  CLARK-RELIANCE CORPORATION       )
21  (sued individually and as successor-in- )
    interest to JERGUSON GAGE & VALVE )
22  COMPANY);                        )
    COLTEC INDUSTRIES, INC. (sued    )
23  individually and as successor-in-interest to )
    FAIRBANKS MORSE ENGINE);         )
24  CRANE CO. (sued individually and as )
    successor-in-interest to CHAPMAN )
25  VALVE CO.);                      )
    DETROIT DIESEL CORPORATION;      )
26  DURABLA MANUFACTURING            )
27  COMPANY;                         )
    FAIRBANKS MORSE PUMP             )
28  CORPORATION;                     )

                                     1
COMPLAINT FOR PERSONAL INJURY – ASBESTOS

| | |
|---|---|
| 1 | **FLOWSERVE US INC.** (as successor-in-interest to EDWARD VALVE & |
| 2 | MANUFACTURING); |
| 3 | **FMC CORPORATION** (sued individually and as successor-in-interest to |
| 4 | NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS |
| 5 | COMPANY); |
| 6 | **FOSTER WHEELER ENERGY CORPORATION;** |
| 7 | **GARDNER DENVER NASH, L.L.C.** f/k/a THE NASH ENGINEERING COMPANY; |
| 8 | **GENERAL MOTORS** |
| 9 | **CORPORATION;** |
| 10 | **THE GOODYEAR TIRE & RUBBER COMPANY** (sued individually and as successor-in-interest to DURABLA |
| 11 | MANUFACTURING COMPANY); |
| 12 | **HARDIE-TYNES, LLC** (sued individually and as successor-in-interest to |
| 13 | HARDIE-TYNES MANUFACTURING COMPANY); |
| 14 | **HARDIE-TYNES MANUFACTURING COMPANY;** |
| 15 | **HONEYWELL INTERNATIONAL** (sued individually and as successor-in-interest to BENDIX CORPORATION); |
| 16 | interest to BENDIX CORPORATION); |
| 17 | **HOPEMAN BROTHERS INC.; HOPEMAN BROTHERS MARINE INTERIORS** a/k/a HOPEMAN |
| 18 | BROTHERS, INC.; |
| 19 | **ICON MANAGEMENT SYSTEMS, LLC** (sued individually and as successor- |
| 20 | in-interest to JERGUSON GAGE & VALVE COMPANY); |
| 21 | **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to |
| 22 | to DELAVAL TURBINE, INC.); |
| 23 | **INGERSOLL RAND COMPANY; INVENSYS SYSTEMS, INC.** (sued |
| 24 | individually and as successor-in-interest to EDWARD VALVE & |
| 25 | MANUFACTURING); |
| 26 | **ITT INDUSTRIES, INC.** (sued individually and as successor-in-interest to BELL & GOSSETT); |
| 27 | **JERGUSON GAGE & VALVE COMPANY;** |
| 28 | **J.T. THORPE & SON, INC.;** |

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

JOHN CRANE, INC.; )
LESLIE CONTROLS, INC.; )
M. SLAYEN AND ASSOCIATES, INC.; )
McNALLY INDUSTRIES, LLC (sued )
individually and as successor-in-interest to )
NORTHERN PUMP COMPANY f/k/a )
NORTHERN FIRE APPARATUS )
COMPANY); )
THE NASH ENGINEERING )
COMPANY; )
NORTHERN PUMP COMPANY (sued )
individually and as successor-in-interest to )
NORTHERN FIRE APPARATUS )
COMPANY); )
PARKER-HANNIFIN CORPORATION )
(sued individually and as successor-in- )
interest to SACOMO SIERRA AND )
SACOMO MANUFACTURING CO.); )
SEPCO CORPORATION; )
SPIROL INTERNATIONAL )
CORPORATION (sued individually and )
as successor-in-interest to U.S. GASKET )
CO.); )
SYD CARPENTER, MARINE )
CONTRACTOR, INC.; )
THE WILLIAM POWELL COMPANY; )
TYCO FLOW CONTROL, INC. (sued )
individually and as successor-in-interest to )
THE LUNKENHEIMER COMPANY and )
HANCOCK VALVES); )
VELAN VALVE CORPORATION; )
WEIR VALVES & CONTROLS USA, )
INC. f/k/a ATWOOD & MORRILL; )
YARWAY CORPORATION (sued )
individually and as successor-in-interest to )
GIMPEL CORPORATION); )
and DOES 1-450 INCLUSIVE, )
)
                    Defendants. )

## GENERAL ALLEGATIONS

COME NOW Plaintiffs **DAVID KELEMEN** and **PAULA KELEMEN** (hereinafter "Plaintiffs") and complain and allege as follows:

1.    The true names and capacities, whether individual, corporate, associate, governmental

or otherwise, of defendants DOES 1 through 450, inclusive, are unknown to Plaintiffs at this time, who

3

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

therefore sues said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

2.    At all times herein mentioned, each of the defendants was the agent, servant, employee and/or joint venture of his co-defendants, and each of them, and at all said times each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, defendants ALFA LAVAL, INC. (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION); ARMSTRONG INTERNATIONAL, INC.; CBS CORPORATION f/k/a VIACOM, INC. (sued as successor-by-merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION); CLARK-RELIANCE CORPORATION (sued individually and as successor-in-interest to JERGUSON GAGE & VALVE COMPANY); COLTEC INDUSTRIES, INC. (sued individually and as successor-in-interest to FAIRBANKS MORSE ENGINE); CRANE CO. (sued individually and as successor-in-interest to CHAPMAN VALVE CO.); DETROIT DIESEL CORPORATION; DURABLA MANUFACTURING COMPANY; FAIRBANKS MORSE PUMP CORPORATION; FLOWSERVE US INC. (as successor-in-interest to EDWARD VALVE & MANUFACTURING); FMC CORPORATION (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY); FOSTER WHEELER ENERGY CORPORATION; GARDNER DENVER NASH, L.L.C. f/k/a THE NASH ENGINEERING COMPANY; GENERAL MOTORS CORPORATION; THE GOODYEAR TIRE & RUBBER COMPANY (sued individually and as successor-in-interest to DURABLA MANUFACTURING COMPANY); HARDIE-TYNES, LLC (sued individually and as successor-in-

4

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

interest to HARDIE-TYNES MANUFACTURING COMPANY); HARDIE-TYNES MANUFACTURING COMPANY; HONEYWELL INTERNATIONAL (sued individually and as successor-in-interest to BENDIX CORPORATION); HOPEMAN BROTHERS INC.; HOPEMAN BROTHERS MARINE INTERIORS a/k/a HOPEMAN BROTHERS, INC.; ICON MANAGEMENT SYSTEMS, LLC (sued individually and as successor-in-interest to JERGUSON GAGE & VALVE COMPANY); IMO INDUSTRIES, INC. (sued individually and as successor-in-interest to to DELAVAL TURBINE, INC.); INGERSOLL RAND COMPANY; INVENSYS SYSTEMS, INC. (sued individually and as successor-in-interest to EDWARD VALVE & MANUFACTURING); ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to BELL & GOSSETT); JERGUSON GAGE & VALVE COMPANY; J.T. THORPE & SON, INC.; JOHN CRANE, INC.; LESLIE CONTROLS, INC.; M. SLAYEN AND ASSOCIATES, INC.; McNALLY INDUSTRIES, LLC (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY); THE NASH ENGINEERING COMPANY; NORTHERN PUMP COMPANY (sued individually and as successor-in-interest to NORTHERN FIRE APPARATUS COMPANY); PARKER-HANNIFIN CORPORATION (sued individually and as successor-in-interest to SACOMO SIERRA AND SACOMO MANUFACTURING CO.); SEPCO CORPORATION; SPIROL INTERNATIONAL CORPORATION (sued individually and as successor-in-interest to U.S. GASKET CO.); SYD CARPENTER, MARINE CONTRACTOR, INC.; THE WILLIAM POWELL COMPANY; TYCO FLOW CONTROL, INC. (sued individually and as successor-in-interest to THE LUNKENHEIMER COMPANYand HANCOCK VALVES); VELAN VALVE CORPORATION; WEIR VALVES & CONTROLS USA, INC. f/k/a ATWOOD & MORRILL; YARWAY CORPORATION (sued individually and as successor-in-interest to GIMPEL CORPORATION), and DOES 1-450 inclusive, were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of

5

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of Los Angeles, State of California.

3. Plaintiffs allege herein that Plaintiff DAVID KELEMEN developed malignant mesothelioma as a result of exposure to asbestos from defendants' asbestos, asbestos-containing products and/or products designed to be used in association with asbestos products ("Defendants' Products"), including: ALFA LAVAL, INC. (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY and SHARPLES CORPORATION) (for DeLaval purifiers and Sharples purifiers); ARMSTRONG INTERNATIONAL, INC. (for Armstrong steam traps); CBS CORPORATION f/k/a VIACOM, INC. (sued as successor-by-merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION) (for Westinghouse turbines, pumps and air compressors); CLARK-RELIANCE CORPORATION (sued individually and as successor-in-interest to JERGUSON GAGE & VALVE COMPANY) (for Jerguson valves); COLTEC INDUSTRIES, INC. (sued individually and as successor-in-interest to FAIRBANKS MORSE ENGINE) (for Fairbanks Morse generators and diesel engines); CRANE CO. (sued individually and as successor-in-interest to CHAPMAN VALVE CO.) (for Crane valves, Cranite gaskets and Chapman valves); DETROIT DIESEL CORPORATION (for Detroit diesel engines); DURABLA MANUFACTURING COMPANY (for Durabla gaskets); FAIRBANKS MORSE PUMP CORPORATION (for Fairbanks Morse pumps); FLOWSERVE US INC. (as successor-in-interest to EDWARD VALVE & MANUFACTURING) (for Edward valves); FMC CORPORATION (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY) (for Northern pumps); FOSTER WHEELER ENERGY CORPORATION (for Foster Wheeler distilling plants); GARDNER DENVER NASH, L.L.C. f/k/a THE NASH ENGINEERING COMPANY (for Nash pumps); GENERAL MOTORS CORPORATION (for General Motors diesel

6

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

engines); THE GOODYEAR TIRE & RUBBER COMPANY (sued individually and as successor-in-interest to DURABLA MANUFACTURING COMPANY) (for Durabla gaskets); HARDIE-TYNES, LLC (sued individually and as successor-in-interest to HARDIE-TYNES MANUFACTURING COMPANY) (for Hardie-Tynes turbines and generators); HARDIE-TYNES MANUFACTURING COMPANY (for Hardie-Tynes turbines and generators); HONEYWELL INTERNATIONAL (sued individually and as successor-in-interest to BENDIX CORPORATION) (for Bendix brakes); HOPEMAN BROTHERS INC. (for asbestos-containing Marinite and Micarta board); HOPEMAN BROTHERS MARINE INTERIORS a/k/a HOPEMAN BROTHERS, INC. (for asbestos-containing Marinite and Micarta board); ICON MANAGEMENT SYSTEMS, LLC (sued individually and as successor-in-interest to JERGUSON GAGE & VALVE COMPANY) (for Jerguson valves); IMO INDUSTRIES, INC. (sued individually and as successor-in-interest to to DELAVAL TURBINE, INC.) (for DeLaval turbines and pumps); INGERSOLL RAND COMPANY (for Ingersoll Rand pumps and compressors); INVENSYS SYSTEMS, INC. (sued individually and as successor-in-interest to EDWARD VALVE & MANUFACTURING) (for Edward valves); ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to BELL & GOSSETT) (for Bell & Gossett pumps); JERGUSON GAGE & VALVE COMPANY (for Jerguson valves); J.T. THORPE & SON, INC. (as a boiler contractor and supplier of asbestos-containing insulation); JOHN CRANE, INC. (for John Crane gaskets); LESLIE CONTROLS, INC. (for Leslie valves); M. SLAYEN AND ASSOCIATES, INC. (as a contractor and supplier of asbestos-containing insulation); McNALLY INDUSTRIES, LLC (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY) (for Northern pumps); THE NASH ENGINEERING COMPANY (for Nash pumps); NORTHERN PUMP COMPANY (sued individually and as successor-in-interest to NORTHERN FIRE APPARATUS COMPANY) (for Northern pumps); PARKER-HANNIFIN CORPORATION (sued individually and as successor-in-interest to SACOMO SIERRA AND SACOMO MANUFACTURING CO.) (for Sacomo gaskets and packing); SEPCO

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

CORPORATION (for Sepco gaskets); SPIROL INTERNATIONAL CORPORATION (sued individually and as successor-in-interest to U.S. GASKET CO.) (for U.S. Gasket gaskets); SYD CARPENTER, MARINE CONTRACTOR, INC. (as a contractor and supplier of asbestos-containing insulation and decking); THE WILLIAM POWELL COMPANY (for Powell valves); TYCO FLOW CONTROL, INC. (sued individually and as successor-in-interest to THE LUNKENHEIMER COMPANY and HANCOCK VALVES) (for Hancock valves and Lunkenheimer valves); VELAN VALVE CORPORATION (for Velan valves); WEIR VALVES & CONTROLS USA, INC. f/k/a ATWOOD & MORRILL (for Atwood & Morrill valves), and YARWAY CORPORATION (sued individually and as successor-in-interest to GIMPEL CORPORATION) (for Gimpel valves and Yarway steam traps).

4.     Plaintiffs hereby disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave, which expressly excludes U.S. Navy vessels. Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a party Defendant committed at the direction of an officer of the United States Government.

## FIRST CAUSE OF ACTION

### (Negligence)

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:

5.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the general allegations set forth above.

6.     At all times herein mentioned, each of the named defendants and DOES 1 through 450 was the successor, successor in business, successor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling,

**8**

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos, asbestos products and/or products designed to cut, saw or otherwise manipulate, and products containing asbestos, including but not limited to, those products identified in paragraph 3 above. Said entities shall hereinafter collectively be called "alternate entities." Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing, warranted, re-branded, manufactured for others and advertised asbestos, asbestos products and/or products designed to cut, saw or otherwise manipulate products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity".

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| ALFA LAVAL, INC. | SHARPLES, INC. |
| | ALFA-LAVAL SEPARATION, INC. |
| | DE LAVAL SEPARATOR COMPANY |
| CBS CORPORATION | VIACOM INC. |
| | WESTINGHOUSE ELECTRIC CORPORATION |
| | BF STURTEVANT |
| | VIACOM INTERNATIONAL, INC. |
| | VIACOM PLUS |
| CLARK-RELIANCE COPORATION | ICON MANAGEMENT SYSTEMS, LLC |
| | JERGUSON GAGE & VALVE COMPANY |
| COLTEC INDUSTRIES, INC. | FAIRBANKS MORSE ENGINE |
| CRANE CO. | CRANE ENVIRONMENTAL |

9

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

| | |
|---|---|
| 1 | CRANE PUMPS AND SYSTEMS |
| 2 | VALVE SERVICES |
| | CRANE VALVE GROUP |
| 3 | CRANE SUPPLY |
| | CHAPMAN VALVE CO. |
| 4 | DEMING PUMPS |
| | JENKINS VALVES |
| 5 | COCHRANE FEED TANKS |
| | COCHRANE DIVISION |
| 6 | CHEMPUMP |
| 7 | FLOWSERVE CORPORATION | FLOWSERVE PUMP CORPORATION |
| | EDWARD VALVE INC. |
| 8 | EDWARD VALVE & MANUFACTURING |
| | JOHNSTON PUMP COMPANY |
| 9 | BW/IP INTERNATIONAL, INC. (f/k/a |
| | BYRON JACKSON PUMP DIVISION) |
| 10 | BYRON JACKSON PUMP COMPANY |
| | PACIFIC PUMPS |
| 11 | NORDSTROM VALVES, INC. |
| | NORDSTROM AUDCO, LLC |
| 12 | MERCO-NORDSTROM VALVE COMPANY |
| | KAMMER VALVES INC. |
| 13 | KAMMER CONTROL VALVES |
| | KAMMER VENTILE |
| 14 | DURION CASTINGS COMPANY |
| | THE DURIRON COMPANY, INC. |
| 15 | DURCO INTERNATIONAL, INC. |
| | ALDRICH |
| 16 | ALDRICH DARLING VALVE |
| 17 | FMC CORPORATION | PEERLESS PUMP COMPANY |
| | McNALLY INDUSTRIES-NORTHERN PUMP |
| 18 | FMC AGRICULTURAL PRODUCTS |
| | FMC BIOPOLYMER |
| 19 | FMC LITHIUM |
| | FMC ALKALI CHEMICALS |
| 20 | FMC FORET |
| | NORTHERN PUMP COMPANY |
| 21 | FOSTER WHEELER ENERGY CORPORATION | FOSTER WHEELER BOILER CORPORATION |
| 22 | FOSTER WHEELER CONTRACTORS, INC. |
| | FOSTER WHEELER CORPORATION |
| 23 | FOSTER WHEELER DEVELOPMENT CORP. |
| | FOSTER WHEELER ENERGY RESOURCES |
| 24 | INC. |
| | FOSTER WHEELER ENERGY SERVICES, |
| 25 | INC. |
| | FOSTER WHEELER ENVIRESPONSE, INC. |
| 26 | FOSTER WHEELER ENVIRONMENTAL |
| | CORPORATION |
| 27 | FOSTER WHEELER POWER GROUP, INC. |
| | FOSTER WHEELER POWER SYSTEMS, INC. |
| 28 | FOSTER WHEELER PYROPOWER, INC. |
| | FOSTER WHEELER REALTY SERVICES, |
| | INC. |

10

**COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

| | |
|---|---|
| | FOSTER WHEELER USA CORPORATION |
| GARDNER DENVER NASH | THE NASH ENGINEERING COMPANY |
| GENERAL MOTORS CORPORATION | DELCO<br>AC-DELCO<br>AC SPARK PLUG COMPANY<br>GARWOOD INDUSTRIES, INC.<br>GENERAL MOTORS ACCEPTANCE<br>  CORPORATION<br>GENERAL MOTORS OVERSEAS<br>DISTRIBUTION CORPORATION<br>DETROIT DIESEL<br>CLEVELAND DIESEL |
| GOODYEAR TIRE & RUBBER COMPANY | DUNLOP<br>KELLY TIRES<br>$AVA<br>FULDA<br>US INDUSTRIES SUPPLY<br>DURABLA MANUFACTURING COMPANY |
| HARDIE-TYNES, LLC | HARDIE-TYNES MANUFACTURING CO. |
| HONEYWELL INTERNATIONAL, INC. | ALLIED SIGNAL, INC.<br>BENDIX CORPORATION |
| HOPEMAN BROTHERS MARINE INTERIORS | HOPEMAN BROTHERS, INC. |
| IMO INDUSTRIES, INC. | DE LAVAL TURBINE INC.<br>WARREN PUMPS, INC.<br>COLFAX CORPORATION<br>IMO PUMP<br>IMO AB<br>COLFAX PUMP GROUP<br>ALLWEILER<br>HOUTTUIN<br>C.H. WHEELER |
| INGERSOLL-RAND COMPANY | INGERSOLL-RAND ABG<br>DRESSER-RAND<br>POWERWORKS<br>THERMOKING<br>TERRY STEAM TURBINE COMPANY<br>WHITON MACHINE CO. |
| INVENSYS SYSTEMS, INC. | EDWARD VALVE & MANUFACTURING |
| ITT INDUSTRIES, INC. | ITT SERVICE INDUSTRIES CORPORATION<br>RULE INDUSTRIES, INC.<br>GOULDS PUMPS, INCORPORATED<br>GOULDS PUMPS (IPG), INC.<br>A-C PUMP<br>AQUIOUS ADVANCED LIQUID<br>  SEPARATIONS |

11
COMPLAINT FOR PERSONAL INJURY – ASBESTOS

| | |
|---|---|
| 1 | BELL & GOSSETT |
| | DOMESTIC PUMP |
| 2 | ENGINEERED PROCESS SOLUTIONS |
| | GROUP |
| 3 | FLOWTRONEX PSI INC. |
| | ITT FLYGT |
| 4 | HOFFMAN SPECIALTY |
| | LOWARA |
| 5 | MARLOW PUMPS |
| | McDONNELL & MILLER |
| 6 | ITT RICHTER CHEMIE-TECHNIK GmbH |
| | SANITAIRE |
| 7 | ITT STANDARD |
| | VOGEL PUMPS |
| 8 | WEDECO INDUSTRIES, INC. |
| | BARTON INSTRUMENTS DIVISION a/k/a |
| 9 | PRIME MEASUREMENT PRODUCTS, LLC |
| | NU-FLO MEASUREMENT SYSTEMS |
| 10 | BRANOM INSTRUMENT COMPANY |
| | BARTON INSTRUMENTS DIVISION a/k/a |
| 11 | PRIME MEASUREMENT PRODUCTS, LLC |
| | NU-FLO MEASUREMENT SYSTEMS |
| 12 | BRANOM INSTRUMENT COMPANY |
| 13 | JOHN CRANE, INC.　　　　JOHN CRANE-HOUDAILLE, INC. |
| | HOUDAILLE JOHN CRANE, INC. |
| 14 | |
| 15 | |
| 16 | LESLIE CONTROLS, INC.　　CIRCOR INTERNATIONAL, INC. |
| | KIELEY & MUELLER, INC. |
| 17 | MCNALLY INDUSTRIES, INC.　NORTHERN PUMP |
| | FMC CORPORATION |
| 18 | |
| 19 | NORTHERN PUMP COMPANY　NORTHERN PUMP MANUFACTURING |
| | CORPORATION |
| 20 | NORTHERN FIRE APPARATUS COMPANY |
| | NORTHERN PUMP, INCORPORATED |
| 21 | PARKER-HANNIFIN CORPORATION　SACOMO SIERRA |
| 22 | SACOMO MANUFACTURING CO. |
| | BERTEA CORPORATION |
| 23 | SEITZ INDUSTRIAL PRODUCTS, INC. |
| | AREMAC ASSOCIATES |
| 24 | SPIROL INTERNATIONAL CORPORATION　UNITED STATES GASKET CO. |
| 25 | THE WILLIAM POWELL COMPANY　POWELL VALVES |
| 26 | TYCO FLOW CONTROL, INC.　THE LUNKENHEIMER COMPANY |
| 27 | CINCINNATI BRASS WORKS |
| | LUNKENHEIMER BRASS WORKS |
| 28 | COMPANY |
| | GIMPEL VALVES |
| | HANCOCK VALVES |

12

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

| | |
|---|---|
| 1 | CROSBY VALVE & GAGE COMPANY |
| 2 | WEIR VALVE & CONTROLS USA, INC. ATWOOD & MORRILL CO.,INC. |
| 3 | THE WEIR GROUP PLC<br>WEIR MINERALS |
| | WEIR CLEAR LIQUID |
| 4 | WEIR VALVES & CONTROLS<br>WEIR SERVICES |
| 5 | WEIR TECHNA |
| | A & M VALVE |
| 6 | HOPHOLD A & M, INC. |
| 7 | YARWAY CORP. GIMPEL CORP. |

8

7.     At all times herein mentioned, defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos, asbestos products and/or products designed to cut, saw or otherwise manipulate products containing asbestos (hereinafter Defendants' Products).

8.     At all times herein mentioned, defendants, their "alternate entities", and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, rented offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised Defendants' Products, including but not limited to those products identified in paragraph 3 above, in that the Defendants' Products were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to users, consumers, workers, bystanders, and others, including Plaintiff DAVID KELEMEN herein (hereinafter collectively called "exposed person"). Said products were used at all times in a manner that was reasonably foreseeable to defendants, their "alternate entities," and each of them, thereby rendering said products unsafe and dangerous for use by "exposed person". Plaintiffs herein allege that DAVID KELEMEN was exposed to asbestos that was caused to be released as a result of exposures to

13

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

Defendants' Products, including but not limited to those products identified in paragraph 3 above (hereinafter referred to as "defendants' products" or "defendants' asbestos and asbestos-containing products"), were a substantial contributing factor in the development of his malignant mesothelioma, and therefore proximately caused Plaintiff DAVID KELEMEN's injuries.

9. Defendants, their "alternate entities," and each of them, had a duty to exercise reasonable care while engaging in the activities mentioned above and each defendants breached said duty of reasonable care in that defendants, and each of them, failed to safely and adequately design, manufacture and/or sell defendants' products; failed to test said products; failed to investigate the hazards of said products; failed to warn "exposed person", including Plaintiff DAVID KELEMEN, of the health hazards of using defendants' products; failed to disclose the known or knowable dangers of using defendants' products; failed to warn of the harmful exposures caused by use of said products to cut, saw or otherwise manipulate asbestos containing products; failed to obtain suitable alternative materials to asbestos when such alternatives were available; and as otherwise stated herein.

10. The defendants' products were and are hazardous to the health and safety of Plaintiff, and others in Plaintiff's position working with and in close proximity to such products, and since on or before 1930, the hazards and dangerous propensities of the defendants' products were both known and knowable to the defendants, their "alternate entities", and each of them, through the use of medical and/or scientific data and other knowledge available to defendants, their "alternate entities", and each of them at the time of defendants' manufacture, distribution, sale, research, study, fabrication, design, modification, labeling, assembly, leasing, buying, offering for sale, supply, inspection, service, installation, contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for others, packaging and advertising, of those products, which clearly indicated the hazards and dangerous propensities of asbestos presented a substantial danger to users, including Plaintiff, DAVID KELEMEN, of Defendants' Products through the intended and reasonably foreseeable use of those products.

11. Defendants, their "alternate entities", and each of them, knew, or reasonably should have known, that Defendants' Products were dangerous and were likely to be dangerous when used in their intended and reasonably foreseeable manner.

12. Defendants, their "alternate entities", and each of them, knew, or reasonably should have

14

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

known, that Defendants' Products would be installed, repaired, maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, removed with compressed air, arched, swept, broken, "ripped out," and/or used to cut, saw or otherwise manipulate products containing asbestos, or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the release of airborne hazardous and dangerous asbestos fibers, and that through such activity, "exposed person," including Plaintiff DAVID KELEMEN herein, would be exposed to said hazardous and dangerous asbestos fibers. Defendants, their "alternate entities", and each of them, knew or reasonably should have known that users, such as Plaintiff DAVID KELEMEN and others in his position, working with and in close proximity to Defendants' Products would not realize or know the danger. Defendants, their "alternate entities," and each of them negligently failed to adequately warn or instruct of the dangers of the products. A reasonable designer, manufacturer, distributor, seller, installer, buyer or supplier, under the same or similar circumstances, would have warned of the dangers to avoid exposing others to a foreseeable risk of harm. The negligent failure of defendants, their "alternate entities," and each of them to warn was a substantial factor in causing harm to Plaintiff DAVID KELEMEN.

13. Plaintiff DAVID KELEMEN used, handled, or was otherwise exposed to asbestos from Defendants' Products referred to herein in a manner that was reasonably foreseeable to defendants and each of them. Plaintiff's exposure to Defendants' Products occurred at various locations set forth in **Exhibit "A"**, which is attached hereto and incorporated by reference herein.

14. As a direct and proximate result of the conduct of the defendants, their "alternate entities", and each of them, as aforesaid, Plaintiff DAVID KELEMEN's exposure to asbestos from use of Defendants' Products caused severe and permanent injury to the Plaintiff, the nature of which, along with the date of Plaintiff's diagnosis and the date he learned such injuries were attributable to exposure to Defendants' Products, are set forth in **Exhibit "B"**, which is attached hereto and incorporated by reference herein. Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to Defendants' Products over a period of time.

15. Plaintiff DAVID KELEMEN suffers from malignant pleural mesothelioma, caused by exposure to asbestos from Defendants' Products and/or from the use of Defendants' Products to cut, saw

15

**COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

or otherwise manipulate products containing asbestos including those products identified in paragraph 3 above. Plaintiff DAVID KELEMEN was not aware at the time of exposure that Defendants' Products presented any risk of injury and/or disease.

16.     As a direct and proximate result of the aforesaid conduct of defendants, their "alternate entities," and each of them, Plaintiff DAVID KELEMEN has suffered and will continue to suffer permanent injuries and future injuries to his person, body and health, including, but not limited to, pain, discomfort, loss of weight, loss of appetite, fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and emotional distress attendant thereto, as Plaintiff's malignant mesothelioma progresses, all to his general damage in a sum in excess of the jurisdictional limit of a limited civil case.

17.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities", and each of them, Plaintiff DAVID KELEMEN has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

18.     As a further direct and proximate result of the said conduct of the defendants, their "alternate entities", and each of them, Plaintiffs have incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

19.     Plaintiffs further allege that defendants, their "alternate entities", and each of them, also engaged in the following wrongful acts:

(a)     Defendants, their "alternate entities", and each of them, suppressed from all consumers, including Plaintiff DAVID KELEMEN, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom. Although defendants, and each of them, knew of the substantial risks associated with exposure to asbestos, they willfully and knowingly concealed such information from the users of their asbestos and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of "exposed person", including Plaintiff DAVID KELEMEN.

16

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

(b)     Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported industry organizations, including but not limited to the Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf of defendants, their "alternate entities", and each of them, actively promoted the suppression of information about the dangers of asbestos to users of the aforementioned products and materials, thereby misleading Plaintiff DAVID KELEMEN as to the safety of their products. Through their participation and association with such industry organizations, defendants and each of them knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users of Defendants' Products a false security about the safety of their products. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff DAVID KELEMEN at this time;

(c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, their "alternate entities", and each of them, herein. Between 1942 and 1950, the defendants, their "alternate entities", and each of them, failed to provide this information to consumers;

(d)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiff DAVID KELEMEN and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(e)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiff

17

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

DAVID KELEMEN with information concerning adequate protective masks and other equipment devised to be used when applying, mixing, sawing, cutting, installing and sanding the products of the defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff DAVID KELEMEN and others applying and installing such material;

(f)    Defendants, their "alternate entities", and each of them, knew and failed to disclose that Plaintiff DAVID KELEMEN and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g)    Defendants, their "alternate entities", and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff DAVID KELEMEN so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure was misleading.

20.    Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Defendants, their "alternate entities", and each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

21.    The herein-described conduct of said defendants, their "alternate entities", and each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff DAVID KELEMEN, in that defendants, and each of them, continued to manufacture, market and/or sell dangerous products known to cause asbestos to be released, and to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially

18

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

therefrom. Defendants, their "alternate entities", and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

22.    Defendants and each of them engaged in conduct which was intended by defendants and each of them to cause injury to the plaintiffs, and despicable conduct which was carried on by the defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiff DAVID KELEMEN.

23.    Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff DAVID KELEMEN, to cruel and unjust hardship in the form of sever, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

24.    As a direct and proximate result of such intentional conduct by defendants, their "alternate entities" and each of them, Plaintiff DAVID KELEMEN sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

25.    Plaintiffs incorporate herein by reference, as though fully set forth therein, each and every one of the general allegations and the allegations contained in the First Cause of Action herein.

26.    Defendants, their "alternate entities", and each of them, sold the aforementioned Defendants' Products and failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary, intended, and foreseeable use of their products, which dangers and risks would not have been, and were not, recognized by ordinary consumers of the products, including Plaintiff, DAVID

19

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  KELEMEN, and the lack of sufficient instructions and/or warnings was a substantial factor in causing
2  harm to Plaintiff DAVID KELEMEN and others in Plaintiff's position working with and in close
3  proximity to such products.

4      27.    Defendants' Products were defective and unsafe for their intended purpose and
5  foreseeable use in that, when used, handled, installed, repaired, maintained, overhauled, removed,
6  sawed, chipped, hammered, mixed, scraped, sanded, removed with compressed air, arched, swept,
7  broken, "ripped out," cut, sawed, installed, and/or used as intended, or used to cut, saw or manipulate
8  products containing asbestos or otherwise disturbed, said products would result in the release, and
9  therefore inhalation of, hazardous and dangerous asbestos fibers by exposed person, including Plaintiff
10 DAVID KELEMEN. The defect existed in all of said products when they left the possession of the
11 defendants, their "alternate entities," and each of them. At the time Defendants' Products were used by
12 Plaintiff, and others in Plaintiff's position working with and in close proximity to such products, the
13 products were substantially the same as when they left the possession of the defendants, their "alternate
14 entities," and each of them and/or any changes made to the products after they left the possession of
15 defendants, their "alternate entities", and each of them were reasonably foreseeable to defendants, their
16 "alternate entities", and each of them. Defendants' asbestos and asbestos products were used by
17 Plaintiff DAVID KELEMEN, and others in Plaintiff's position working with and in close proximity to
18 such products, in a way that was reasonably foreseeable to defendants, and each of them. The defect in
19 said products was a substantial factor in causing harm and personal injuries to Plaintiff DAVID
20 KELEMEN, including malignant mesothelioma, while being used in a reasonably foreseeable manner,
21 thereby rendering said products defective, unsafe, and unreasonably dangerous for their ordinary and
22 intended use.

23      28.    As a direct and proximate result of the actions and conduct outlined herein, Defendants'
24 Products failed to perform as safely as an ordinary consumer would have expected in that defendants'
25 products, and each of them, caused respirable asbestos fibers to be released from asbestos products
26 during their ordinary and intended use, and such hazardous exposures lacked any perceptible qualities to
27 the human body, yet they cause severe and fatal diseases, including asbestosis, lung cancer,
28 mesothelioma and other cancers in humans. Plaintiffs further allege that "exposed person", including

20

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

Plaintiff DAVID KELEMEN, were unaware of the harmful effects of asbestos and further unaware of the harmful exposures to Defendants' Products when such exposures occurred, and thus the failure of defendants' products to perform as safely as Plaintiff DAVID KELEMEN had reason to expect was a substantial factor in causing his injuries.

29.    As a direct and proximate result of the actions and conduct outlined herein, Plaintiff DAVID KELEMEN has suffered the injuries and damages alleged herein.

30.    Plaintiffs further allege that defendants, their "alternate entities", and each of them, also engaged in the following wrongful acts:

(a)    Defendants, their "alternate entities", and each of them, suppressed from all consumers, including Plaintiff DAVID KELEMEN, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom. Although defendants, and each of them, knew of the substantial risks associated with exposure to asbestos, they willfully and knowingly concealed such information from the users of their asbestos and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of "exposed person", including Plaintiff DAVID KELEMEN.

(b)    Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported industry organizations, including but not limited to the Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf of defendants, their "alternate entities", and each of them, actively promoted the suppression of information about the dangers of asbestos to users of the aforementioned products and materials, thereby misleading Plaintiff DAVID KELEMEN as to the safety of their products. Through their participation and association with such industry organizations, defendants and each of them knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users of Defendants' Products a false security about the safety of their products. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from

21

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

public dissemination from 1946 to a date unknown to Plaintiff DAVID KELEMEN at this time;

(c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, their "alternate entities", and each of them, herein. Between 1942 and 1950, the defendants, their "alternate entities", and each of them, failed to provide this information to consumers;

(d)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiff DAVID KELEMEN and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(e)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiff DAVID KELEMEN with information concerning adequate protective masks and other equipment devised to be used when applying, mixing, sawing, cutting, installing and sanding the products of the defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff DAVID KELEMEN and others applying and installing such material;

(f)     Defendants, their "alternate entities", and each of them, knew and failed to disclose that Plaintiff DAVID KELEMEN and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g)     Defendants, their "alternate entities", and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff DAVID KELEMEN so that said physicians could not examine, diagnose, and

22

treat Plaintiff and others who were exposed to asbestos, despite the fact that defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure was misleading; and

31.     Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Defendants, their "alternate entities", and each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

32.     The herein-described conduct of said defendants, their "alternate entities", and each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiff DAVID KELEMEN, in that defendants, and each of them, continued to manufacture, market and/or sell dangerous products known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom. Defendants, their "alternate entities", and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294. Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

33.     Defendants and each of them engaged in conduct which was intended by defendants and each of them to cause injury to the plaintiffs, and despicable conduct which was carried on by the defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiff DAVID KELEMEN.

34.     Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff DAVID KELEMEN, to cruel and unjust hardship in the form of sever, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

35.     As a direct and proximate result of such intentional conduct by defendants, their

23

"alternate entities" and each of them, Plaintiff DAVID KELEMEN sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against defendants, and their "alternate entities", and each of them, as hereinafter set forth.

## THIRD CAUSE OF ACTION

(Loss of Consortium)

AS AND FOR A FURTHER FOURTH SEPARATE, AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF PAULA KELEMEN COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

40.     Plaintiff PAULA KELEMEN incorporates by reference, each and every allegation contained in the general allegations and in the First, and Second Causes of Action herein.

41.     Plaintiffs DAVID KELEMEN and PAULA KELEMEN were married on October 25, 1969, and at all times relevant to this action were, and are now, husband and wife.

42.     Prior to Plaintiff DAVID KELEMEN's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, plaintiff DAVID KELEMEN has been unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and he will be unable to perform such work, service and duties in the future. As a proximate result thereof, PAULA KELEMEN has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

43.     Plaintiff PAULA KELEMEN's discovery of this cause of her loss of consortium, as herein alleged, first occurred within one year of the date this Complaint was filed.

44.     As a direct and proximate result of the acts of defendants, their "alternate entities", and each of them, and the severe injuries caused thereby to plaintiff DAVID KELEMEN as set forth in this complaint, plaintiff PAULA KELEMEN has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress

24

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1   and general nervousness as a result thereof.

2       44.     WHEREFORE, plaintiffs pray for judgment against defendants, their "alternate entities",

3   and each of them, in an amount to be proved at trial in each individual case, as follows:

4           Plaintiff DAVID KELEMEN:

5           1.      For plaintiff's general damages according to proof;

6           2.      For plaintiff's loss of income, wages, and earning potential according to proof;

7           3.      For plaintiff's medical and related expenses according to proof;

8           Plaintiff PAULA KELEMEN:

9           4.      For plaintiff's damages for loss of consortium and/or society according to proof;

10          Plaintiffs DAVID KELEMEN and PAULA KELEMEN:

11          5.      For plaintiffs' cost of suit herein;

12          6.      For exemplary or punitive damages according to proof;

13          7.      For such other and further relief as the Court may deem just and proper, including

14  costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related

15  provisions of law.

16  DATED: January 24, 2008              SIMON, EDDINS & GREENSTONE, LLP

17

18                                       By: _____
                                             JENNIFER L. BARTLETT
19                                           Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

25

**COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues so triable.

DATED: January 24, 2008

**SIMON, EDDINS & GREENSTONE, LLP**

By: _____
JENNIFER L. BARTLETT
Attorneys for Plaintiffs

26

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

# EXHIBIT "A"

Plaintiff DAVID KELEMEN's exposure to asbestos and asbestos-containing products occurred at various locations within the States of California, Connecticut, Idaho, and New Hampshire, including, but not limited to:

| Employer | Location of Exposure | Job Title | Exposure Date(s) |
|---|---|---|---|
| U.S. Navy | USS SPERRY (AS-12) USS SAM RAYBURN (SSBN-635) USS BEN FRANKLIN (SSBN-640) San Francisco, CA | Fireman, Machinist Mate | 1967-1975 |
| Con Edison/San Onofre Nuclear Power Plant | San Onofre, CA | Machinist, Nuclear Power Plant Operator | 1977-1978 |
| Self | Norwich, CT | Remodeling of personal residence | Early 1970's |
| Self | California, Connecticut, Idaho, New Hampshire | Maintenance work on personal vehicles | Mid 1960's to early 1980's |

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

## EXHIBIT "B"

Plaintiff DAVID KELEMEN's exposure to Defendants' Products caused severe and permanent injury to Plaintiff DAVID KELEMEN including, but not limited to, mesothelioma. Plaintiff was diagnosed with ▮▮▮▮▮▮ on or about ▮▮▮▮▮▮▮.

28
COMPLAINT FOR PERSONAL INJURY – ASBESTOS

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Jennifer L. Bartlett, ▮
SIMON, EDDINS & GREENSTONE, LLP
301 East Ocean Blvd., Suite 1950
Long Beach, CA 90802

TELEPHONE NO.:        FAX NO.:
ATTORNEY FOR (Name): **Plaintiffs, DAVID AND PAULA KELEMEN**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: CENTRAL DISTRICT

CASE NAME: DAVID KELEMEN vs. ALFA LAVAL, INC., et al.

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 24 2008

John A. Clarke, Executive Officer/Clerk

BY MARY GARCIA, Deputy

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | BC384281 <br> JUDGE: <br> DEPT: |

Items 1-5 below must be completed (see Instructions on page 2).

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[X] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve          in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision
3. Type of remedies sought (check all that apply):
   a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action (specify): THREE
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: January 24, 2008

Jennifer L. Bartlett
(TYPE OR PRINT NAME)                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions ⊕ Plus

Cal. Rules of Court, rules 3.220, 3.400-3.403;
Standards of Judicial Administration, § 19